```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------- x
PUBLIC EMPLOYEES' RETIREMENT SYSTEM      :
OF MISSISSIPPI et al.,                   :
                                         :
                Plaintiffs,              :
                                         :
          -v-                            :    08 Civ. 10841 (JSR)
                                         :
MERRILL LYNCH & CO. INC. et al.,         :
                                         :    OPINION AND ORDER
                Defendants.              :
---------------------------------------- x
```

JED S. RAKOFF, U.S.D.J.

This purported class action, consolidating four cases, asserts claims for violations of Sections 11, 12(a)(2), and 15 of the Securities Act of 1933 (the "1933 Act"), 15 U.S.C. §§ 77k, 77l(a)(2), 77o, in connection with the sale of mortgage pass-through certificates ("certificates") that were offered for sale by means of documents that allegedly contained untrue statements and material omissions. The first of the cases was filed by plaintiffs Connecticut Carpenters Pension Fund and Connecticut Carpenters Annuity Fund (collectively "Connecticut Carpenters") on December 5, 2008. Plaintiffs Iron Workers Local No. 25 Pension Fund ("Iron Workers"), Public Employees' Retirement System of Mississippi ("MissPERS"), and Wyoming State Treasurer filed actions on December 12, 2008, February 17, 2009, and March 27, 2009 respectively. On April 23, 2009, the Court selected MissPERS as lead plaintiff. See 4/23/09 Order. After the cases were consolidated under the Iron Workers docket number (08 Civ. 10841), a consolidated Class Action Complaint ("Complaint") was filed on May 20,

2009, using that number but altering the order of the parties in the caption,[1] and naming the Los Angeles County Employees Retirement Association as an additional plaintiff.

According to the Complaint, the certificates were issued by Merrill Lynch Mortgage Investors, Inc. ("Merrill Depositor"), a subsidiary of Merrill Lynch & Co., Inc. ("Merrill").  See Compl. ¶¶ 18, 20.  Matthew Whalen, Paul Park, Brian T. Sullivan, Michael M. McGovern, Donald J. Puglisi, and Donald C. Han (collectively the "individual defendants") were officers or directors of Merrill Depositor who signed allegedly false registration statements for the certificates.  Id. ¶¶ 30-35.  Several other Merrill subsidiaries -- Merrill Lynch Mortgage Lending, Inc. ("Merrill Sponsor"), First Franklin Financial Corporation ("First Franklin"), and Merrill Lynch, Pierce, Fenner & Smith Inc. ("Merrill PFS") -- served as sponsors or underwriters of the issue, id. at ¶¶ 19, 21-22, as did non-Merrill co-defendants Credit-Based Asset Servicing and Securitization LLC ("C-BASS"), J.P. Morgan Securities, Inc. ("J.P. Morgan"), and ABN AMRO Inc. ("ABN AMRO"), id. ¶¶ 23-25.  McGraw-Hill Companies, the parent company of Standard & Poor's, and Moody's Investors Service, Inc. (collectively, the "ratings agencies") provided ratings of the securities.  Id. ¶¶ 26-27.

---

[1] The Court now adopts the new caption, as set out in the caption of this Opinion and Order, and directs the Clerk of the Court to note the change in the 08 Civ 10841 docket.

All defendants filed motions to dismiss on June 17, 2009. Thereafter, the Court received extensive briefing, including voluminous exhibits, and heard oral argument on August 18, 2009, followed by still further briefing. On March 31, 2010, the Court issued a "bottom line" Order resolving these motions in the manner set forth below.[2] See 3/31/10 Order. This Opinion and Order gives the reasons for those rulings and schedules a conference call to plan further proceedings.

Defendants first contend that, as a global matter, all of plaintiffs' claims are time-barred. Under Section 13 of the 1933 Act, claims under Sections 11 or 12(a)(2) are subject to a one year statute of limitations, which begins to runs upon "the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence." 15 U.S.C. § 77m.[3] Defendants do not contend that plaintiffs are barred under the first clause (so-called "actual notice"), but rather under the second clause (so-called "inquiry notice"), that is, when "circumstances would suggest to an investor of ordinary intelligence the probability that she has been defrauded." Staehr v. The Hartford Fin. Serv. Group, Inc., 547 F.3d 406, 411 (2d Cir. 2008) (quoting Dodds v. Cigna Sec.,

---

[2] The bottom line Order mistakenly stated that the Section 15 claim against Merrill PFS was dismissed without prejudice, whereas, as clarified below, that dismissal is with prejudice.

[3] As for the Section 15 ("control person") claims, these are derivative of the other claims and thus subject to the same time limitation.

3

12 F.3d 346, 350 (2d Cir. 1993)). Defendants contend that such inquiry notice arose prior to December 5, 2007, that is, a year before the filing of the first of the cases here consolidated, and was even more evident before March 27, 2008, that is, a year before the filing of the last of the cases here consolidated.

Inquiry notice is assessed under an objective standard, evaluated on a "totality-of-the-circumstances analysis." Staehr, 547 F.3d at 427; see also Shah v. Meeker, 435 F.3d 244, 249 (2d Cir. 2006). However, "[i]nquiry notice may be found as a matter of law only when uncontroverted evidence clearly demonstrates when the plaintiff should have discovered the fraudulent conduct." Staehr, 547 F.3d at 427. Thus, while defendants have proffered substantial evidence that prior to December 2007, let alone prior to March 27, 2008, questions about the bona fides of mortgage-backed securities were the subject of news reports, government investigations, public hearings, and civil complaints, plaintiffs argue that virtually none of this evidence references Merrill or the certificates at issue here and that statements made by the defendants in contemporaneous and subsequent documents would reasonably have had the effect of reassuring an investor that the doubts raised about other companies' offerings were not applicable here. See Pl. Opp. to Merrill Defs. et al. at 65-68, ECF No. 81. Tellingly, the certificates at issue were not downgraded below investment grade until April 2008, that is, after the March 27, 2008 limitation date, and, even then, the downgrade was

4

not premised on the discovery of fraud but only on a perceived increase in risk. See Transcript 8/18/09 ("Tr.") at 29; Pl. Opp. to Merrill Defs. et al. at 55.

Although extraneous evidence from both sides may be considered on a motion to dismiss that is premised on statute of limitations grounds, see, e.g., Staehr, 547 F.3d at 425, nonetheless, where there are plausible inferences to be drawn in either direction, the issue of "whether a plaintiff had sufficient facts to place it on inquiry notice is 'often inappropriate for resolution on a motion to dismiss under Rule 12(b)(6),'" LC Capital Partners, LP v. Frontier Ins. Group, Inc., 318 F.3d 148, 156 (2d Cir. 2003) (quoting Marks v. CDW Computer Centers, Inc., 122 F.3d 363, 367 (7th Cir. 1997)). The competing materials referenced above show that this is such a case, and the Court therefore denies defendants' motion to dismiss on the basis of statute of limitations.

It should also be noted that the Supreme Court, in very recently construing 28 U.S.C. § 1658(b), a statute of limitations applicable to the Securities Exchange Act of 1934, was critical of the use of "inquiry notice" as a basis for determining when a reasonably diligent plaintiff should have discovered the facts constituting a violation. See Merck & Co., Inc. v. Reynolds, -- S. Ct. --, No. 08-905, 2010 WL 1655827, at *13 (Apr. 27, 2010). Although the Second Circuit has not yet had occasion to determine whether Merck requires a change in how the Circuit interprets Section 13 of the 1933 Act,

Merck, if anything, favors the plaintiffs here. Indeed, in Merck, the Court rejected arguments of the defendants quite similar to the arguments made by defendants here and held, in effect, that even if a plaintiff had "inquiry notice" sufficient to warrant beginning to investigate, a plaintiff would not be barred by the statute of limitations unless a reasonably diligent plaintiff similarly situated would have actually discovered the facts showing the violations alleged in the plaintiff's complaint. See Merck, 2010 WL 1655827, at *15.

Defendants next contend, with more force, that while plaintiffs assert claims based on eighty-four offerings, they lack standing to sue on all but the nineteen offerings in which the named plaintiffs purchased securities. See Compl. ¶¶ 13-17, 42-44. Plaintiffs contend that because "at least one named plaintiff . . . can assert a claim directly against each defendant," id. ¶ 179, and because they seek to bring a class action under Federal Rule of Civil Procedure 23, therefore, if the class is certified, they can bring claims on behalf of those who purchased certificates in every one of the defendants' similar eighty-four offerings. Tr. at 73; Pl. Opp. to Merrill Defs. et al. at 14-19. But it is black letter law that a rule of procedure cannot create standing. See 28 U.S.C. § 2072(b) (procedural rules "shall not abridge, enlarge or modify any substantive right"). As the Supreme Court stated in Lewis v. Casey, 518 U.S. 343 (1996), "[t]hat a suit may be a class action . . . adds

6

nothing to the question of standing, for even named plaintiffs who represent a class 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.'" 518 U.S. at 357 (quoting Simon v. Eastern Ky. Welfare Rights Org., 426 U.S. 26, 40 n.20 (1976) (internal quotation marks omitted)). Standing therefore is a threshold question -- antecedent to class certification -- that requires plaintiffs to have been personally injured, and plaintiffs thus have no standing to assert claims in relation to "funds in which [plaintiffs] did not personally invest." Hoffman v. UBS-AG, 591 F. Supp.2d 522, 532 (S.D.N.Y. 2008).

Here, therefore, because the named plaintiffs only purchased securities in nineteen offerings, any claim based on the other sixty-five offerings must be dismissed with prejudice. Nor will leave be granted for plaintiffs to add additional, as yet unnamed plaintiffs who purchased certificates related to the additional sixty-five offerings; this addition would at this point be futile, since plaintiffs themselves concede that the one-year limitations period began to run at some point in 2008 (i.e., more than a year ago), see Tr. at 29, and so the claims of any such new plaintiffs would be time-barred.

With these threshold matters resolved, the Court turns to the portions of defendants' motions to dismiss addressed to particular claims, beginning with the claims brought under Section 11 of the 1933

Act.  Section 11 provides that a person acquiring a security may sue if the registration statement "contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading."  15 U.S.C. § 77k(a).  Liability under Section 11 is strict liability, but this is tempered, not only by the short statute of limitations, but also by the fact that such liability is limited to a defendant who (1) signed the statement at issue; (2) was a director, person performing similar functions, or partner in the issuer at the time the statement was issued; (3) was named in the statement, with that party's consent, as being or about to become a director, person performing similar functions, or partner; (4) was an expert whose involvement was, with that party's consent, listed in the statement; or (5) was a statutory underwriter of the security.  Id. § 77k(a)(1)-(5).

Despite plaintiffs' allegations that the ratings agencies were generally complicit in creating the "bubble" in mortgage-backed certificates that subsequently burst, the only claims here asserted against the ratings agencies are Section 11 claims, based on the allegation that such agencies served as statutory underwriters of the offerings here in issue.  "Underwriter" is statutorily defined in the 1933 Act as one "who has purchased from an issuer with a view to, or offers or sells for an issuer in connection with, the distribution of any security, or participates or has a direct or indirect

8

participation in any such undertaking." Id. § 77b(a)(11). Plaintiffs argue that the ratings agencies effectively functioned as underwriters here because their evaluations and ratings of the securities here in issue were "steps necessary to the distribution of [the] securit[ies]." SEC v. Kern, 425 F.3d 143, 152 (2d Cir. 2005) (quoting SEC v. Chinese Consol. Benevolent Ass'n, Inc., 120 F.2d 738, 741 (2d Cir. 1941) (internal quotation marks omitted)).

This extremely broad view of what constitutes an underwriter is contradicted both by the interpretation of "underwriter" espoused by the Securities and Exchange Commission ("SEC") and by the statutory definition itself. SEC Rule 436(g)(1) states that "the security rating assigned . . . by a nationally recognized statistical rating organization . . . shall not be considered a part of the registration statement prepared or certified by a person within the meaning of Sections 7 and 11 of the Act." 17 C.F.R. § 230.436(g)(1). As the SEC has stated, the rule was intended to "exclude any nationally recognized statistical rating organization whose security rating is disclosed in a registration statement from civil liability under Section 11." SEC Release No. 33-6336, 46 Fed. Reg. 42024-01, 42024 (Aug. 18, 1981). This Rule and Release, which are entitled to considerable deference, see Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 844-45 (1984), would be rendered effectually nugatory if ratings agencies were considered statutory underwriters.

9

As for the statute itself, this Court is fully persuaded by Judge Kaplan's reasoning in In re Lehman Brothers Securities & ERISA Litigation, 681 F. Supp. 2d 495 (S.D.N.Y. 2010), which in turn built on Judge Lynch's analysis in In re Refco, Inc. Securities Litigation, No. 05 Civ. 8626(GEL), 2008 WL 3843343 (S.D.N.Y. Aug. 14, 2008), that "[t]he 'participation' in question [in the § 77b(a)(11) definition of "underwriter" quoted above] is participation in the 'undertaking' referred to immediately before: that of purchasing securities from an issuer with a view to their resale -- that is, the underwriting of a securities offering as commonly understood."  681 F. Supp. 2d at 499 (quoting 2008 WL 3843343, at *4).  Here, as in Lehman Brothers, "there is nothing in the complaint to suggest that [the ratings agencies] participated in the relevant 'undertaking' -- that of purchasing the securities here at issue, the Certificates -- 'from the issuer with a view to their resale.'" Lehman Brothers, 681 F. Supp. 2d at 499; accord N.J. Carpenters Vacation Fund v. Royal Bank of Scotland Group, PLC, No. 08 CV 5093(HB), 2010 WL 1172694, at *6 (S.D.N.Y. Mar. 26, 2010).  Accordingly, the claims against the ratings agencies must be dismissed with prejudice.

Similar reasoning precludes Section 11 liability with respect to the three defendants -- C-BASS, Merrill Sponsor, and First Franklin -- who are alleged in the Complaint to have acted only as "sponsors" of the offerings.  As the Complaint itself alleges, a "sponsor" is simply someone "who either originated the [underlying mortgage] loans

or acquired the loans from other loan originators, in exchange for cash." Compl. ¶ 38. While plaintiffs contend that such activity qualifies the sponsors as statutory underwriters, the sponsors had no participation in the relevant "undertaking" -- the purchasing of the securities from the issuer for the purpose of resale -- and thus do not qualify as statutory underwriters for the reasons already elaborated in the case of the ratings agencies. Moreover, SEC statements provide further support for the conclusion that such sponsors do not fall within the definition of statutory underwriter within Section 11. See, e.g., SEC Release Nos. 33-6513 & 34-50905, Asset-Backed Securities, 70 Fed. Reg. 1506-01, 1511, 1516 (Jan. 7, 2005) (distinguishing for these purposes the "sponsor" from the "depositor" in the kind of two-step transfers here alleged in the Complaint).[4] Therefore, the Court dismisses the Section 11 claims against defendants C-BASS, Merrill Sponsor, and First Franklin.

As for the Merrill parent company, the Complaint simply alleges that Merrill was an underwriter, but offers no factual allegations in support of this assertion beyond the allegations that at some unspecified point in time, Merrill created the subsidiaries Merrill Sponsor and Merrill Depositor, and that in some unspecified

---

[4] Although plaintiffs argued in their papers that the sponsors were, in the alternative, liable under Section 11 as "experts" under § 77k(a)(4), at oral argument plaintiffs' counsel expressly withdrew this dubious contention as to C-BASS, Tr. at 104, and there is no reason to believe this necessary concession is not equally applicable to the other sponsors.

11

way Merrill "participated in the drafting and dissemination of the Prospectus Supplements." Compl. ¶ 18. These bare-bones allegations are insufficient to plead a plausible Section 11 claim against Merrill under any theory. Nonetheless, given the parent-subsidiary relationship between Merrill and Merrill Depositor (the issuer), as well as between Merrill and Merrill PFS (an underwriter), it is possible that plaintiffs may be able to fill in the missing blanks, and consequently Merrill is dismissed without prejudice to plaintiffs' making one last stab at pleading a Section 11 claim against Merrill.

Turning to the remaining defendants, it is not disputed that Merrill Depositor, the three acknowledged underwriters (Merrill PFS, J.P. Morgan, and ABN AMRO), and the individual defendants fall within the categories of liable persons under Section 11. Defendants urge, however, that the Section 11 claims against these defendants be dismissed for failure to adequately allege any material untrue statement or omission in the registration statements. But while it may be true that the Complaint is more rambling than precise, it still manages, in the Court's view, to adequately plead plausible Section 11 violations. For example, the Complaint alleges that, contrary to the representations in the registration statements that the certificates "were originated generally in accordance with the underwriting guidelines," the applicable underwriting standards were "systematically disregarded" in ways detailed in the Complaint. See Compl. ¶¶ 60-64, 67, 84-87. While defendants argue that underwriting

standards are "not strict rules" and that, even if there were deviations from the underwriting standards, the registration statements only promised that underwriting "guidelines" would be "generally" followed, the alleged repeated deviation from established underwriting standards is enough to render misleading the assertion in the registration statements that underwriting guidelines were generally followed. Without multiplying examples, the Court concludes that the Complaint's allegations of how the registration statements were false or misleading are sufficient to escape dismissal.

However, the Complaint's conclusory allegations that most of the misleading statements were contained in each of the offering statements is not sufficient to maintain the Section 11 claims against J.P. Morgan and ABN AMRO, which were only involved with the 2007-CB4 Trust offering. The Complaint makes no specific allegations about the offering documents for the 2007-CB4 Trust, and a review of that offering's registration statements shows that many of plaintiffs' generalized allegations about the offerings are inapplicable to this trust. For example, the 2007-CB4 Trust's prospectus supplement does not contain the aforementioned representations about underwriting guidelines. See ABN AMRO & J.P. Morgan Mem. at 17, ECF No. 58. Given these two defendants' limited participation in a single offering and the absence of specific allegations in the Complaint applicable to that offering, the Court concludes that plaintiffs have failed to sufficiently plead a Section 11 claim against either J.P. Morgan or

13

ABN AMRO.  Therefore the Section 11 claims against these two defendants are dismissed, without prejudice to plaintiffs' making one more attempt to adequately plead such violations.

Turning to the alleged violations of Section 12(a)(2) of the 1933 Act, these claims are brought only against defendants Merrill PFS, J.P. Morgan, and ABN AMRO, that is, the three acknowledged underwriters.  Section 12(a)(2) imposes liability on anyone who "offers or sells a security . . . by means of a prospectus or oral communication, which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading . . . to the person purchasing such security from him."  15 U.S.C. § 77l(a)(2).  As with Section 11, liability under Section 12(a)(2) is strict liability, but once again this is offset by the short statute of limitations and by limiting standing to bring a Section 12(a)(2) claim to persons who have directly purchased the securities from the underwriting defendants in the subject public offering(s), and not in the secondary market.  See, e.g., Gustafson v. Alloyd Co., Inc., 513 U.S. 561, 578 (1995).

Here, the Complaint does not expressly allege such standing. Instead, rather coyly, the Complaint makes such allegations as that "[p]laintiffs and other Class members purchased or otherwise acquired Certificates pursuant and/or traceable to the defective Prospectus Supplements."  Compl. ¶ 199; see also, e.g., id. ¶¶ 13-17.  Even under

14

the modest requirements of Rule 8(a) of the Federal Rules of Civil Procedure, this is insufficient to allege standing for purposes of a Section 12(a)(2) claim. See, e.g., In re Cosi, Inc. Sec. Litig., 379 F. Supp. 2d 580, 589 (S.D.N.Y. 2005) (dismissing where plaintiffs alleged only "that they bought their shares 'pursuant to or traceable to' the Prospectus"); accord In re Sterling Foster & Co., Inc., Sec. Litig., 222 F. Supp. 2d 216, 245-46 (E.D.N.Y. 2002). While, once again, plaintiffs will be given a last chance to try to cure this deficiency through an amended pleading, for now the Section 12(a)(2) claims are dismissed without prejudice.[5]

Plaintiffs' third claim is that defendants Merrill, Merrill Sponsor, Merrill PFS, First Franklin, C-BASS, and the individual defendants had, pursuant to Section 15 of the 1933 Act, "control person" liability for the Section 11 and Section 12 claims brought against the issuer, Merrill Depositor. Compl. ¶ 204. Section 15 creates liability for "[e]very person who, by or through stock ownership, agency, or otherwise, or who, pursuant to or in connection with an agreement or understanding with one or more other persons by or through stock ownership, agency, or otherwise, controls any person liable under Sections 77k or 77l of this title . . . ." 15 U.S.C. § 77o. A control person must have "the power, directly or indirectly,

---

[5] Because, given the wording of the initial Complaint, the Court has doubts that plaintiffs will be able to cure this deficiency, the Court does not reach defendants' other arguments as to why the Section 12 claims should be dismissed.

'to direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities, by contract, or otherwise.'" In re Deutsche Telekom AG Sec. Litig., 2002 WL 244597, at *6 (S.D.N.Y. Feb. 20, 2002) (quoting 17 C.F.R. § 230.405)).

   Defendant C-BASS argues that the claim that it controlled Merrill Depositor is an "extraordinary proposition" that is unsupported by the allegations of the Complaint. C-BASS Mem. at 16, ECF No. 69. Moreover, C-BASS points to the allegations of the complaint that indicate that it is a wholly separate corporate entity from Merrill Depositor and from any other Merrill-related company. See Compl. ¶¶ 20, 23. The Court agrees that plaintiffs have failed to allege more than "a formulaic recitation of the elements" of control person liability with regard to C-BASS. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)) (internal quotation mark omitted). Because plaintiffs point to no factual allegations that could be added to remedy this defect, and the Court perceives none, the Section 15 claim against C-BASS must be dismissed with prejudice. Because, moreover, as previously discussed, the direct Section 11 claim against C-BASS must be dismissed with prejudice as well, that defendant is accordingly dismissed with prejudice from this entire action.

   Similarly, plaintiffs have failed to allege beyond "formulaic recitation" how Merrill, Merrill Sponsor, Merrill PFS, or First

Franklin exercised control over Merrill Depositor.  They merely allege that Merrill Depositor, Merrill Sponsor, Merrill PFS, and First Franklin were Merrill subsidiaries and affiliates of each other.  See Compl. ¶¶ 18-22.  The parent/subsidiary relationship is an insufficient "basis from which to infer control . . . [because] 'a parent corporation and its subsidiary are regarded as legally distinct entities.'"  In re WorldCom, Inc. Sec. Litig., No. 02 Civ. 3288(DLC), 2004 WL 1097786, at *3 (S.D.N.Y. May 18, 2004) (quoting Carte Blanche (Singapore) Pte., Ltd. v. Diners Club Int'l, Inc., 2 F.3d 24, 26 (2d Cir. 1993)).  Nevertheless, it is possible, as discussed earlier, that plaintiffs may be able to plead a closer connection between Merrill and Merrill Depositor, and consequently the Section 15 claim as to Merrill is dismissed without prejudice.  By contrast, the Complaint does not even hint at how the other Merrill subsidiaries might have had control over Merrill Depositor, and mere allegations of a corporate affiliation between defendants are insufficient to indicate control by one over another.  See Suez Equity Investors, L.P. v. Toronto-Dominion Bank, 250 F.3d 87, 102 (2d Cir. 2001).  Therefore, the Section 15 claims against Merrill PFS, Merrill Sponsor, and First Franklin are dismissed with prejudice.  Because the Section 11 claims against Merrill Sponsor and First Franklin were also dismissed with prejudice, those defendants are dismissed from the suit in its entirety.

As to the Section 15 claims against the individual defendants, it not sufficient, in the Court's view, to simply allege, as the Complaint does allege, that they were all either officers or directors of Merrill Depositor at relevant times. See Compl. ¶¶ 30-35. Rather, to make out a Section 15 "control person" claim (as opposed to a strict liability claim under Section 11 for someone who signed the relevant regulation statements or was a director or officer at the time), plaintiffs must also allege, to make out a Section 15 claim, "meaningful culpable conduct [by an individual defendant] beyond mere status as a director or officer." P. Stolz Family P'ship, L.P. v. Daum, 166 F. Supp. 2d 871, 873 (S.D.N.Y. 2001) (quoting Kane v. Wichita Oil Income Fund, No. 90 Civ. 5714 (PKL), 1991 WL 233266, at *7 (S.D.N.Y. Oct. 29, 1991)). Contra, e.g., Dorchester Investors v. Peak Int'l Ltd., 134 F. Supp. 2d 569, 581 (S.D.N.Y. 2001). Although plaintiffs have failed to allege such culpable conduct on the part of the individual defendants, yet once again they will be given a final opportunity to try to repair this deficiency through repleading. Accordingly, the Court dismisses the Section 15 claims against the individual defendants without prejudice.

For the foregoing reasons, the Court reaffirms its rulings as follows:

(1) all claims based on the 65 offerings from which no named plaintiff purchased securities are dismissed with prejudice;

(2) all claims against the ratings agencies are dismissed with prejudice;

(3) all claims against C-BASS, Merrill Sponsor and First Franklin are dismissed with prejudice;

(4) all claims against Merrill, J.P. Morgan, and ABN AMRO are dismissed without prejudice;

(5) the Section 12(a)(2) claim against Merrill PFS is dismissed without prejudice, but the Section 15 claim against Merrill PFS is dismissed with prejudice;

(6) the Section 15 claims against the individual defendants are dismissed without prejudice; and

(7) the defendants' motions to dismiss are in all other respects denied, meaning that the Section 11 claims against Merrill Depositor, Merrill PFS, and the individual defendants survive the instant motions.

Counsel for all parties not dismissed with prejudice should convene a conference call with the Court on June 3, 2010 at 12:30 p.m. to schedule dates for any proposed repleading and further proceedings.

SO ORDERED.

_____
JED S. RAKOFF, U.S.D.J.

Dated: New York, New York
       June 1, 2010