```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------
PUBLIC EMPLOYEES' RETIREMENT SYSTEM
OF MISSISSIPPI et al.,

                    Plaintiffs,

        -v-                                 08 Civ. 10841 (JSR)

MERRILL LYNCH & CO. INC. et al.,
                                            MEMORANDUM
                    Defendants.
------------------------------------ x
```



JED S. RAKOFF, U.S.D.J.

On May 20, 2009, plaintiffs[1] filed a consolidated Class Action Complaint ("Complaint") asserting claims for violations of Sections 11, 12(a)(2), and 15 of the Securities Act of 1933 (the "1933 Act"), 15 U.S.C. §§ 77k, 77l(a)(2), 77o, in connection with the sale of mortgage pass-through certificates that were offered for sale by means of documents that allegedly contained untrue statements and material omissions. All defendants filed motions to dismiss, and the Court resolved the motions by an Opinion and Order issued on June 1,

---

[1] The instant case is a consolidation of four separate actions. The Connecticut Carpenters Pension Fund and Connecticut Carpenters Annuity Fund ("Connecticut Carpenters) filed on December 5, 2008; the Iron Workers Local No. 25 Pension Fund ("Iron Workers") filed on December 12, 2008; the Wyoming State Treasurer filed on February 17, 2009; and the Public Employees' Retirement System of Mississippi ("MissPERS") filed on March 27, 2009. This Court selected MissPERS as lead plaintiff by an April 23, 2009 order, and the cases were consolidated under the Iron Workers docket number of 08 Civ. 10841. The Los Angeles County Employees Retirement Association ("LACERA") was subsequently named as an additional plaintiff. These five parties will be referred to collectively as "plaintiffs."

2010. See Public Employees' Retirement System of Mississippi v. Merrill Lynch & Co. Inc., 714 F. Supp. 2d 475 (S.D.N.Y. 2010). The Court dismissed several claims with prejudice,[2] held that certain claims survived the motions to dismiss,[3] and dismissed the remaining claims without prejudice to giving plaintiffs one more chance to adequately plead the asserted violations.

On July 6, 2010, plaintiffs filed an Amended Class Action Complaint ("Amended Complaint") in which they reasserted the surviving claims and attempted to replead most of the claims the Court dismissed without prejudice in its June 1, 2010 Opinion and Order.[4] In response, motions to dismiss were filed on August 6, 2010 by all the defendants remaining in the case, namely Merrill Lynch & Co., Inc. ("Merrill"), Merrill Lynch Mortgage Investors, Inc. (the "Merrill

---

[2] As summarized in the Court's Opinion and Order, the Court dismissed with prejudice: (1) all claims based on the 65 offerings from which no named plaintiff purchased securities; (2) all claims against the rating agencies; (3) all claims against C-Bass, Merrill Sponsor and First Franklin; and (4) the Section 15 claim against Merrill PFS. Public Employees' Retirement System of Mississippi, 714 F. Supp. 2d at 485-86.

[3] The Court held that "the Section 11 claims against Merrill Depositor, Merrill PFS, and the individual defendants survive the instant motions." Public Employees' Retirement System of Mississippi, 714 F. Supp. 2d at 486.

[4] Plaintiffs did not attempt to plead several of the claims dismissed without prejudice, however, and these claims were consequently dismissed. These claims were: (1) that Merrill was liable as an underwriter for the purpose of Section 11 liability; (2) that the "Junior Underwriters" committed violations of Section 12(a)(2); and (3) that the individual defendants had "control person liability" pursuant to Section 15.

2

Depositor"), and Merrill Lynch, Pierce, Fenner & Smith Incorporated ("Merrill Lynch PFS") (collectively, the "Merrill Lynch Defendants"); Matthew Whalen, Paul Park, Brian T. Sullivan, Michael M. McGovern, Donald J. Puglisi and Donald C. Han (collectively, the "Individual Defendants"); and J.P. Morgan Securities, Inc. ("J.P. Morgan") and ABN AMRO, Incorporated ("ABN AMRO") (collectively, the "Junior Underwriters").

Following full briefing and oral argument on the motions to dismiss, the Court issued a "bottom line" Order on November 8, 2010 (the "November 8 Order") resolving the motions in the manner set forth below. See 11/08/10 Order. This Memorandum gives the reasons for those rulings.

By way of background, plaintiffs purchased asset-backed pass-through certificates (also known as mortgage pass-through certificates) from the defendants in 19 separate offerings during the period of February 2006 through September 2007. Asset-backed pass-through certificates are securities entitling the holder to income payments from pools of loans and/or asset-backed or mortgage-backed securities. Am. Compl. ¶ 4. For each offering, the "sponsor" - in this case, Merrill Lynch Mortgage Lending, Inc. (the "Merrill Sponsor"), First Franklin Financial Corporation ("First Franklin"), or Credit-Based Asset Servicing Securitization LLC ("C-BASS") - either originated the loans, or, in most cases, purchased

them from one or more loan originators.[5]  Memorandum of Law in Support of the Motion of the Merrill Lynch and Defendants and Individual Defendants to Dismiss the Amended Class Action Complaint ("Merrill Mem.") at 6.  The sponsor in turn transferred the loans to the "depositor," in this case the Merrill Depositor, which deposited the loans into the issuing trust.  Id.  The issuing trust, in turn, sold the certificates to underwriters for sale to investors.  Id.  The underwriter defendants in this case are Merrill Lynch, PFS, J.P. Morgan, and ABN AMRO.  Am. Compl. ¶ 24.

The Merrill Depositor registered the certificates pursuant to three shelf registration statements filed with the Securities and Exchange Commission ("SEC") on August 5, 2005, December 21, 2005, and February 2, 2007, respectively.  Merril Mem. at 6.  Individual defendants Matthew Whalen, Paul Park, Brian T. Sullivan, Michael M. McGovern, Donald J. Puglisi, and Donald C. Han were the officers or directors of Merrill Depositor who signed these allegedly false registration statements.  Am. Compl. ¶¶ 25-31.  Specifically, "Offering Documents," including a base prospectus and a prospectus supplement, were presented with each offering.  Merrill Mem. at 6.

---

[5] These mortgage originators included, among others, Country Wide Home Loans, Inc. ("Countrywide"), American Home Mortgage Corp. ("American Home Mortgage"), Ownit Mortgage Solutions, Inc. ("Ownit"), New Century Mortgage Corporation ("New Century"), IndyMac Bank, F.S.B. ("IndyMac"), WMC Mortgage Corporation ("WMC"), ResMAE Mortage Corporation ("ResMAE") and Fremont Investment & Loan ("Fremont").  Am. Compl. ¶ 5.

4

Plaintiffs generally allege that "[these] Offering Documents contained untrue statements of material fact, or omitted to state material facts necessary to make the statements therein not misleading, regarding: (1) the underwriting standards purportedly used in connection with the origination of the underlying mortgages; (2) the maximum loan-to-value ratios used to qualify borrowers; (3) the appraisals of the properties underlying the mortgages; (4) the debt-to-income ratios permitted on the loans; and (5) the ratings of the Certificates." Am. Compl. 7. These alleged material omissions and untrue statements form the basis of plaintiffs' claims under Sections 11, 12(a)(2), and 15 of the 1933 Act.

In its earlier Opinion and Order, the Court concluded that the original complaint failed to adequately plead a Section 11 claim against the Junior Underwriters ABN AMRO and J.P. Morgan. Section 11 of the 1933 Act provides that a person acquiring a security may sue if the registration statement "contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading." 15 U.S.C. § 77k(a). The conclusory allegations contained in the original complaint, however, were insufficient to survive a motion to dismiss.

The Amended Complaint did not cure this deficiency. The Junior Underwriters participated in a single mortgage-backed securities offering for which, unlike all of the other offerings at

5

issue in this case, Credit-Based Asset Servicing and Securitization LLC ("C-BASS") was the sponsor. Memorandum of Law in Support of the motion to Dismiss of Defendants ABN AMRO, Inc. and J.P. Morgan Securities, Inc. ("Junior UW Mem.") at 1. The one C-BASS offering underwritten by the Junior Underwriters was issued from the C-BASS "2007-CB4 Trust." Id. at 3. That offering differed materially from the others at issue in that no loan originator contributed more than 20% of the loans to the C-BASS offering pool. Id. Accordingly, no disclosures about the underwriting practices of any loan originator were required, and no such disclosures were included in the Offering Documents. Id. Moreover, plaintiffs' vague allegation that C-BASS's due diligence review was "ineffective" does not amount to a claim that any specific disclosure in the Offering Documents was untrue or misleading. See Amended Compl. ¶ 140. Since plaintiffs have failed to challenge any of the statements made in the Offering Documents for the 2007-CB4 Trust as materially false or misleading, their Section 11 claim must fail.

Moreover, even assuming, arguendo, that plaintiffs adequately pled a Section 11 claim against these defendants, the Junior Underwriters must nevertheless be dismissed from the action because plaintiffs' claims are time-barred under the one-year statute of limitations provided by 15 U.S.C. § 77m. The sole plaintiff with standing to pursue a Section 11 claim as to the C-BASS offering, plaintiff Iron Workers, asserted the same allegations in In re Radian

Sec. Litig., No. 07-3375, 2010 WL 1767195 (E.D. Pa. April 30, 2010), more than one year before filing its initial complaint in this action. Thus, Iron Workers had actual notice of the facts giving rise to its claim more than one year before filing suit, and its claim is therefore barred by the statute of limitations.

Accordingly, the November 8 Order dismissed with prejudice all claims against the Junior Underwriters and all claims against the other defendants related to the sole offering in which the Junior Underwriters were involved.

In its prior Opinion and Order, the Court also dismissed without prejudice the claims premised on alleged violations of Section 12(a)(2) of the 1933 Act.[6] See Public Employees' Retirement System of Mississippi, 714 F. Supp. 2d at 483-84. Section 12(a)(2) imposes liability on anyone who "offers or sells a security . . . by means of a prospectus or oral communication, which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading . . . to the person purchasing such security from him." 15 U.S.C. § 77l(a)(2). Standing under Section 12(a)(2) is limited to persons who have directly purchased the

---

[6] The original complaint asserted that defendants Merrill PFS, J.P. Morgan, and ABN AMRO committed violations of Section 12(a)(2). Public Employees' Retirement System of Mississippi, 714 F. Supp. 2d at 484. The Amended Complaint, however, brings this claim only against defendant Merrill PFS. See Am. Compl. 469.

securities from the underwriting defendants in the subject public offering(s), and not in the secondary market. See, e.g., Gustafson v. Alloyd Co., Inc., 513 U.S. 561, 578, 115 S. Ct. 1061, 131 L. Ed. 2d 1 (1995).

The Court determined that the original complaint failed to allege such standing, as it only vaguely asserted that plaintiffs "purchased or otherwise acquired Certificates pursuant and/or traceable to the defective Prospectus Supplements." Public Employees' Retirement System of Mississippi, 714 F. Supp. 2d at 484. However, the Amended Complaint cured this deficiency. Count XX of the Amended Complaint, the only count alleging a violation of Section 12(a)(2), states that "Lead Plaintiff and Plaintiffs LACERA, Iron Workers and Wyoming bring this count against Merrill Lynch PFS on behalf of investors who *purchased or acquired Certificates in the offerings directly from Merrill Lynch PFS*, as reflected in ¶ 18." Am. Compl. ¶ 467 (emphasis added). A few paragraphs later, Plaintiffs again allege that they "*purchased Certificates in the Offerings directly from Merrill Lynch PFS* pursuant to the Offering Documents which contained untrue statements and omissions, as reflected in ¶ 207." Id. ¶ 470. The Court finds that these allegations adequately plead standing, and that plaintiff's Section 12(a)(2) claim against Merrill Lynch PFS

8

therefore survives the motion to dismiss brought by the Merrill Defendants and the Individual Defendants.[7]

The last claim the Court previously dismissed without prejudice concerns Section 15 of the 1933 Act. Section 15 creates liability for "[e]very person who, by or through stock ownership, agency, or otherwise, or who, pursuant to or in connection with an agreement or understanding with one or more other persons by or through stock ownership, agency, or otherwise, controls any person liable under Sections 77k or 77l of this title . . . ." 15 U.S.C. § 77o(a). A control person must have "the power, directly or indirectly, 'to direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities, by contract, or otherwise.'" In re Deutsche Telekom AG Sec. Litig., No. 00 CIV 9475 SHS, 2002 WL 244597, at * 6 (S.D.N.Y. Feb. 20, 2002) (quoting 17 C.F.R. § 230.405)).

The Court previously found that plaintiffs had failed to adequately allege that Merrill had "control person" liability pursuant to Section 15 of the 1933 Act.[8] Public Employees' Retirement System of Mississippi, 714 F. Supp. 2d at 484-85. The Amended Complaint,

---

[7] The defendants do not appear to dispute this conclusion in their written submissions.

[8] The Court also found that plaintiffs had failed to allege that the Merrill Sponsor, Merrill PFS, First Franklin, C-BASS, and the individual defendants had "control person" liability, but, as explained above, these claims are no longer at issue. Public Employees' Retirement System of Mississippi, 714 F. Supp. 2d at 484.

9

however, alleged "a closer connection between Merrill and Merrill Depositor" sufficient to survive a motion to dismiss. Id. at 485. The Amended Complaint alleges the following:

> Defendant Merrill Lynch controlled all aspects of the management and policies of the Merrill Depositor. Merrill Lynch controlled the Merrill Depositor by virtue of the following: (i) Merrill Lynch created the Merrill Depositor as its SPE [Special Purpose Entity] for the Certificates; (ii) revenue from the Merrill Depositor's securitizations inured exclusively to Merrill Lynch's benefit; (iii) statements in Merrill Lynch's SEC filings shows [sic] control through comprehensive involvement with the Merrill Depositor's operations; (iv) Merrill Lynch directly participated in the Merrill Depositor's issuance of the Certificates, including prominently featuring "Merrill Lynch & Co." on the front page of each Prospectus and Prospectus Supplement; and (v) Merrill Lynch's managing partner and director and senior counsel signed the Merrill Depositor's registration statements.

Am. Compl. ¶ 479. Although the defendants argue that these allegations are "part and parcel of a pedestrian parent/wholly-owned subsidiary relationship" and are therefore insufficient to evince control, Merrill Mem. at 35, the Court disagrees. The allegations suggest that Merrill exercised greater control over the Merrill Depositor than that inherent in a typical parent-subsidiary relationship, and this claim is therefore sufficient to survive a motion to dismiss.

Of the other arguments raised by the defendants, none warrants further discussion here. However, the Court does note that since the original Opinion and Order was issued on June 1, 2010, several new Southern District of New York cases have suggested that appraisals do not constitute false statements of fact. However, the Amended

10

Complaint adequately alleges other false statements that would, in any event, survive. Accordingly, in issuing its November 8 Order, the Court did not reach the appraisal issue. For the foregoing reasons, the November 8 Order is hereby reaffirmed.

                                           _____
                                           JED S. RAKOFF, U.S.D.J.

Dated: New York, New York
        November 30, 2010

11