UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PUBLIC EMPLOYEES' RETIREMENT SYSTEM OF MISSISSIPPI, et al., | No. 08-CV-10841 (JSR) |
| Plaintiffs | ECF CASE |
| v. | ORAL ARGUMENT REQUESTED |
| MERRILL LYNCH & CO., INC., et al., | |
| Defendants | |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR CLASS CERTIFICATION AND APPOINTMENT OF CLASS REPRESENTATIVES AND CLASS COUNSEL**

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................. ii

I.    PRELIMINARY STATEMENT ................................................................................. 1

II.   STATEMENT OF FACTS ......................................................................................... 4

    A.    Merrill Lynch's Securitization Practices ................................................. 4

    B.    The Proposed Class Representatives ....................................................... 6

III.   ARGUMENT ............................................................................................................ 8

    A.    The Class Meets the Requirements of Rule 23(a) ................................. 10

        1.    Rule 23(a): the Class Is Sufficiently Numerous ....................... 10

        2.    Rule 23(a): There Are Questions of Law and Fact Common to the Class ................................................................................ 11

        3.    Rule 23(a): Plaintiffs' Claims Are Typical of the Class ........... 13

        4.    Rule 23(a): the Representative Parties Will Fairly and Adequately Protect the Interests of the Class ............................. 15

    B.    The Class Meets the Requirements of Rule 23(b)(3) ............................ 17

        1.    Common Questions of Law and Fact Predominate Over Individual Questions ............................................................... 17

        2.    A Class Action is Superior to Alternative Methods For Resolving This Dispute ............................................................. 21

IV.   CONCLUSION ........................................................................................................ 25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Allstate et al. v. Merrill Lynch & Co. et al.*,
  No. 650559/2011, (N.Y. Sup. Ct. Mar. 1, 2011) ....................................................24

*Amchem Products, Inc. v. Windsor*,
  521 U.S. 591 (1997)................................................................................................17, 18

*In re Arakis Energy Corp. Sec. Litig.*,
  No. 95-cv-3431, 1999 WL 1021819 (E.D.N.Y. April 27, 1999)........................12, 18

*In re Bank One Sec. Litig./First Chicago S'holder Claims*,
  No. 00CV0767, 2002 WL 989454 (N.D. Ill. May 14, 2002)....................................8

*Banyai v. Mazar*,
  205 F.R.D. 160 (S.D.N.Y. 2002) ............................................................................10

*Board of Tr. of AFTRA Ret. Fund v. JPMorgan Chase Bank, N.A.*,
  269 F.R.D. 340 (S.D.N.Y. 2010) ........................................................................... 23

*Consol. Rail Corp. v. Hyde Park*,
  47 F.3d 473 (2d. Cir. 1995)......................................................................................10

*In re Constar, Int'l Inc. Sec. Litig.*,
  585 F.3d 774 (3d Cir. 2009)..................................................................................8, 19

*Damassia v. Duane Reade, Inc.*
  250 F.R.D. 152 (S.D.N.Y. 2008) ...................................................................11, 12, 16

*In re Dreyfus Aggressive Growth Mut. Fund Litig.*,
  No.98-cv-4318, 2000 WL 1357509 (S.D.N.Y. Sept. 20, 2000) .........................8, 18

*In re Dynex Capital, Inc. Sec. Litig.*
  No. 05-cv-1897, 2011 WL 781215 (S.D.N.Y. Mar. 7, 2011)...........................12, 14

*Dura-Bilt Corp. v. Chase Manhattan Corp.*,
  89 F.R.D. 87 (S.D.N.Y. 1981) ...........................................................................18, 20

*In re EVCI Career Coll. Holding Corp. Sec. Litig.*,
  No. 05-cv-10240, 2007 WL 2230177 (S.D.N.Y. July 27, 2007)........................24, 25

*In re Flag Telecom Holdings Ltd Sec. Litig.*,
  574 F.3d 29 (2d. Cir. 2009)..............................................................13, 15, 16, 25

ii

*Herman & MacLean v.* Huddleston, 459 U.S. 375 (1983). ...........................................................18

*Hicks v. Morgan Stanley & Co.*, No. 01Civ.10071,
2003 WL 21672085 (S.D.N.Y. July 16, 2003) ...............................................................16, 18

*In re Interpublic Sec. Litig.*,
No. 02-cv-6527, 2003 WL 22509414 (S.D.N.Y. Nov. 6, 2003)........................................8, 18

*In re IPO Sec. Litig.*, 243 F.R.D. 79 (S.D.N.Y. 2007) .................................................................. 12

*In re IPO Sec. Litig.*,
471 F.3d 24 (2d. Cir. 2006), *rehearing denied*, 483 F.3d 70 (2d Cir. 2007) .........................10

*In re K-Dur Antitrust Litig.*,
No. 01-cv-1652, 2008 WL 2699390 (D.N.J. Apr. 14, 2008)..................................................23

*Katz v. Image Innovations Holdings, Inc.*,
No. 06-cv-3707, 2010 WL 2926196 (S.D.N.Y. July 22, 2010)........................................11, 14

*Korn v. Franchard Corp.*,
456 F.2d 1206 (2d Cir. 1972)................................................................................................12

*Lapin v. Goldman Sachs & Co.*,
254 F.R.D. 168 (S.D.N.Y. 2008) .................................................................10, 19, 20, 21, 22

*In re Livent, Inc. Noteholders Sec. Litig.*,
210 F.R.D. 512 (S.D.N.Y. 2002) .......................................................................................8, 18

*Marisol A.  v. Giuliani*,
126 F.3d 372 (2d. Cir. 1997)............................................................................................10, 11

*In re Marsh & McLennan Cos. Inc. Securities Litig.*,
No. 04 Civ 8144, 2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009)................................14, 20, 24

*Maywalt v. Parker & Parsley Petroleum Co.*,
147 F.R.D. 51 (S.D.N.Y. 1993), *aff'd,* 67 F.3d 1072 (2d Cir. 1995).......................................8

*McLaughlin v. Am. Tobacco Co.*,
522 F.3d 215 (2d. Cir. 2008).................................................................................................21

*Menkes v. Stolt-Nielsen, S.A.*,
270 F.R.D. 80 (D. Conn. 2010)..............................................................................................20

*In re Merrill Lynch Tyco Research Sec. Litig.*, 249 F.R.D. 124, 132 (S.D.N.Y. 2008) ...............22

*In re Monster Worldwide, Inc. Sec. Litig.*,
251 F.R.D. 132 (S.D.N.Y. 2008) ................................................................................. *passim*

*Moore v. PaineWebber, Inc.*,
  306 F.3d 1247 (2d. Cir. 2002)............................................................................18

*N.J. Carpenters Health Fund v. Residential Capital, LLC*,
  No. 08cv5093, 2011 WL 147735 (S.D.N.Y. Jan. 18, 2011).............................................20

*New Castle v. Yonkers Contracting Co.*,
  131 F.R.D. 38 (S.D.N.Y. 1990) ...........................................................................11

*In re NYSE Specialists Sec. Litig.*,
  260 F.R.D. 55 (S.D.N.Y. 2009) ......................................................................14, 18

*In re PE Corp. Sec. Litig.*,
  228 F.R.D. 102 (D. Conn. 2005).........................................................................11

*In re Pilgrim Sec. Litig.*,
  No. CV 94-8491, 1996 WL 742448 (C.D. Cal. 1996)...........................................................12

*In re Prestige Brands Holdings, Inc. Sec. Litig.*,
  No. 05-cv-6924, 2007 WL 2585088 (S.D.N.Y. Sept. 5, 2007) ...............................................12

*In re Revco Sec. Litig.*,
  142 F.R.D. 659 (N.D. Ohio 1992) .......................................................................22

*Robidoux v. Celani*,
  987 F.2d 931 (2d. Cir. 1993)......................................................................10, 11, 14

*Rombach v. Chang*,
  355 F.3d 164 (2d. Cir. 2004)...........................................................................20

*Trautz v. Weisman*,
  846 F. Supp. 1160 (S.D.N.Y. 1994).......................................................................14

*In re Visa Check/Master Money Antitrust Litig.*,
  280 F.3d 124 (2d. Cir. 2001), *cert denied,*536 U.S. 917 (2002)............................................21

*In re. Vivendi Universal S.A. Sec. Litig.*,
  242 F.R.D. 76 (S.D.N.Y. 2007) ................................................................... *passim*

*In re WorldCom, Inc. Sec.Litig.*,
  219 F.R.D. 267 (S.D.N.Y. 2003) ..............................................................16, 24, 25

## STATUTES

15 U.S.C. §77k......................................................................................18

15 U.S.C. §77k(e)...................................................................................21

iv

15 U.S.C. §77l(a)(2)................................................................................................19

15 U.S.C. §77o................................................................................................1

**OTHER AUTHORITIES**

Fed. R. Civ. P. 23 ........................................................................... *passim*

## I.    PRELIMINARY STATEMENT

Court-appointed Lead Plaintiff the Public Employees' Retirement System of Mississippi ("MissPERS") and additional named plaintiffs Los Angeles County Employees Retirement Association ("LACERA"), Wyoming State Treasurer ("Wyoming"), and Connecticut Carpenters Pension Fund and Connecticut Carpenters Annuity Fund ("Connecticut Carpenters," and collectively "Plaintiffs") respectfully move pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3) for the following: (i) to certify a class of all persons and entities that purchased or acquired one or more Merrill Lynch Certificates and who were damaged thereby (the "Class");[1] and (ii) to appoint Plaintiffs as Class Representatives with Bernstein Litowitz Berger & Grossmann LLP ("BLB&G") as Class Counsel.  Plaintiffs request that the following Class be certified:

> All persons or entities who purchased or otherwise acquired Merrill Lynch Alternative Note Asset Trust Series 2007-A3, 2007-AF1, 2007-F1, Merrill Lynch First Franklin Mortgage Loan Trust Series 2007-2, 2007-3, 2007-4, 2007-A, Merrill Lynch Mortgage Investors Trust Series 2006-MLN1, 2006-FM1, 2006-FF1, 2006-RM5, MLCC 2006-2, 2006-AHL1, 2006-RM3, 2006-WMC1, 2006-WMC2, 2006-A1, Ownit Mortgage Loan Trust Series 2006-2 and who were damaged thereby. Excluded from the Class are Defendants and their respective officers, affiliates and directors at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

This securities class action arises out the Defendants' sale of approximately $16.5 billion of Certificates derived from pools of securitized home mortgages.  The Amended Complaint asserts that the Defendants issued Offering Documents for the Certificates that contained untrue statements and omitted material facts in violation of Sections 11, 12(a)(2) and 15 of the

---

[1] Each Certificate is traceable to Merrill Lynch's registration statements dated August 5, 2005 (as amended), December 21, 2005 (as amended), or February 2, 2007 (as amended) (the "Registration Statements"), and to the Prospectuses and Prospectus Supplements that were used to offer or sell each Certificate (together with the Registration Statements, the "Offering Documents").   Attached as Exhibit 1 to the March 22, 2011 Declaration of David Wales ("Wales Decl.") is a chart setting forth the 18 Offerings, the Offering Documents, the claims brought and the Defendants for each Offering.

Securities Act of 1933 ("Securities Act"), 15 U.S.C. §§77k, 77l(a)(2) and 77o.

Plaintiffs allege that the Merrill Lynch Defendants[2] bundled and securitized mortgages into Certificates and sold them to investors pursuant to Offering Documents that contained untrue statements of fact and/or omissions. Specifically, the Offering Documents for each Offering made representations that the mortgages supporting the Certificates (i) complied with stated underwriting guidelines, when in fact they did not, (ii) were based on appraisals that conformed to the standards of the Uniform Standards of Professional Appraisal Practice ("USPAP"), Fannie Mae or Freddie Mac, when in fact the appraisals did not and the appraisal amounts were inflated, and (iii) had accurate credit ratings, when in fact the ratings were overstated because they were based on faulty data and unreliable methodologies.

For each Offering, the Merrill Lynch Defendants represented that they conducted "a review of the mortgage loan origination processes and systems," a "quality control review of a sample of these mortgage loans within 45 days after the origination or purchase of such mortgage or loan" to make sure that "each mortgage loan was underwritten to be eligible to be sold in the secondary market," and due diligence on the acquired mortgage loans. The Offering Documents for each Offering represented that the mortgage originators whose loans Merrill Lynch was repackaging and selling to the public would "assess the ability and willingness of the borrower to repay the debt and to evaluate the adequacy of the mortgaged property as collateral for the mortgage loan," and that appraisals conformed to the standards of USPAP, Fannie Mae or

---

[2] The Defendants are Merrill Lynch & Co., Inc. ("Merrill Lynch"), Merrill Lynch Mortgage Investors, Inc. (the "Merrill Depositor"), and Merrill Lynch, Pierce, Fenner & Smith Inc. ("Merrill Lynch PFS") (collectively, the "Merrill Lynch Defendants"); Matthew Whalen, Paul Park, Brian T. Sullivan, Michael M. McGovern, Donald J. Puglisi and Donald C. Han (collectively, the "Individual Defendants").

Freddie Mac.  ¶¶53-60, 173-186.[3]

As detailed in the Complaint, however, the loan originators in each Offering did not follow their stated underwriting standards and used improper appraisals overstating the value of the collateral.  Moreover, Merrill Lynch failed to follow its loan purchasing guidelines when acquiring many of the underlying loans.  Consequently, the statements in the Offering Documents concerning compliance with underwriting and appraisal standards were materially untrue when they were made.  ¶207.  As a result, Plaintiffs and the Class purchased Certificates that were far riskier than represented.  Indeed, the credit ratings on nearly all of the Certificates have been downgraded significantly, many to "below investment-grade" instruments.  Plaintiffs and the Class have suffered damages.  ¶¶208-209.

This action is ideally suited for class treatment under Fed. R. Civ. P. 23 ("Rule 23").  All plaintiffs share the same claims against Defendants for violating the Securities Act, and the legal standards governing these claims are virtually identical.  The claims of the Class will be proven with common evidence regarding Defendants' material misrepresentations concerning the quality of the loans underlying the Certificates, and common measures of damages for all plaintiffs.  Plaintiffs are typical of the Class because all class members' claims arise from the same course of events and each class member makes similar legal arguments to prove the Merrill Defendants' liability in this action.  The proposed class representatives will assert common claims of liability and damages, and generalized proof in support of those claims, with respect to the entire Class.  The Merrill Defendants' defenses will also be virtually uniform as to the Class.

In support of this Motion, Plaintiffs submit the accompanying expert report of Joseph R. Mason, Ph.D, dated March 22, 2011 ("Mason Report").  *See* Wales Decl., Ex. 2.  Dr. Mason is

---

[3] References to "¶__" are to the corresponding paragraph in the operative Complaint.

the Hermann Moyse Jr./Louisiana Bankers Association Chair of Banking at the Ourso School of Business, Louisiana State University, a Fellow at the Wharton School, and Senior Consultant at Precision Economics, LLC.  The Mason Report and additional materials show the number of Class members easily exceeds 1,600 investors.  Accordingly, numerosity is established and joinder is impractical.

Certification will enable the Plaintiffs to prosecute these claims efficiently and effectively.  A class action is therefore superior to any other method for adjudicating this controversy, and the Court should certify the requested Class pursuant to Rule 23(a) and (b)(3). *See, e.g., In re Monster Worldwide, Inc. Sec. Litig.*, 251 F.R.D. 132 (S.D.N.Y. 2008).

## II.    STATEMENT OF FACTS

### A.    Merrill Lynch's Securitization Practices

Merrill Lynch sold over $16.5 billion of Certificates to investors, such as the Plaintiffs here, in 18 offerings.  As detailed in the Amended Complaint, the Offering Documents for each Offering contained untrue statements of material fact, or omitted to state material facts necessary to make the statements not misleading, regarding the underwriting standards and appraisals purportedly used in connection with the origination of the underlying mortgages, as well as the credit ratings for the Certificates.  This Court has sustained the Securities Act claims against the Defendants.  *See* Opinion, Docket No. 102, at 19; Order, Docket No. 115, at 2.

The traditional mortgage model involved a bank lending money to a borrower while retaining the risk of default.  ¶150.  The bank therefore had a financial incentive to use prudent underwriting practices and insist on quality appraisals of the collateral for the loan.  *Id*.  With the proliferation of "loan securitization," however, the traditional model gave way to the "originate to distribute" model, whereby the loan originator would sell the mortgages into the secondary market.  ¶151.  Merrill Lynch and other investment banks active in the secondary market would

4

pool and securitize the loans, and sell them to investors in the form of mortgage backed securities.  *Id.*  Securitization meant that loan originators would no longer bear the financial risk of default and had a financial incentive to sell as many mortgages as possible, rather than insisting on careful underwriting.  *Id.*  Under this new model, Merrill Lynch was therefore supposed to act as a gatekeeper for the loans it securitized and sold to the public, including by making sure that the originators would abide by their stated underwriting and appraisal guidelines.  ¶¶53-206.  Although Merrill Lynch represented in the Offering Documents that it was fulfilling this critical role in the process, Merrill Lynch failed to do so.  ¶207.

Merrill Lynch controlled the securitization process for each Offering.  Specifically, the Merrill Defendants acquired the mortgages, securitized the mortgages, prepared and issued the Offering Documents, including the representations contained in the Offering Documents, conducted due diligence regarding the acquired mortgage loans and the originators' compliance with the stated underwriting guidelines, and underwrote and sold the Certificates to Plaintiffs and the Class.  Each of the Certificates purchased by the Plaintiffs and the Class were created and issued pursuant to this same process by the same Defendants.

Merrill Lynch established the Merrill Depositor, which packaged and securitized all of the mortgages supporting all of the Certificates in each Offering in this case. ¶210.  Merrill Lynch PFS, an affiliate of the Merrill Depositor, was an underwriter for all of the Certificates in this case. ¶21.   Merrill Lynch controlled the Merrill Depositor and revenues from the securitizations inured exclusively to Merrill Lynch's benefit.  As explained in the Amended Complaint (¶212):[4]

Publicly, Merrill Lynch represented that it (not the Merrill Depositor or its other

---

[4] This Court has sustained the control person liability claim against Merrill Lynch.  Order, Docket No. 115, at 2; Opinion, Docket No. 117, at 10.

SPEs) controlled Merrill Lynch's securitization business.  According to Merrill Lynch's Form 10-Ks for the years ended December 29, 2006 ("2006 Form 10-K") and December 28, 2007 ("2007 Form 10-K"), "[i]n the normal course of business, Merrill Lynch securitizes . . . residential mortgage loans."  Merrill Lynch described its comprehensive involvement with the operations of its SPEs, such as the Merrill Depositor.  Merrill Lynch's "involvement with SPEs used to securitize financial assets includes: structuring and/or establishing SPEs; selling assets to SPEs; managing or servicing assets held by SPEs; underwriting, distributing, and making loans to SPEs; making markets in securities issued by SPEs; engaging in derivative transactions with SPEs; owning notes or certificates issued by SPEs; and/or providing liquidity facilities and other guarantees to, or for the benefit of, SPEs."

The Merrill Defendants securitized the mortgages in each Offering into "tranches."  The "tranche" reflects the order in which investors in each Offering get paid.  The Offering Documents for each Offering contain representations about the underwriting and appraisal standards purportedly used for originating the underlying mortgages, and Merrill Lynch's due diligence with respect to the acquired mortgage loans and compliance with the stated underwriting and appraisal guidelines.  The representations in each Offering apply equally to all tranches within that Offering.  The tranches for each Offering were interrelated and uniformly affected by Merrill Lynch's systemic departure from the stated underwriting and appraisal standards.  As Dr. Mason explains, "all the securities in an offering are interrelated and untrue statements and material omissions in the Offering Documents similarly affect the securities in each offering."  Mason Report, ¶6.

B.    The Proposed Class Representatives

Plaintiffs, like all proposed Class members, purchased one or more of the Certificates. Lead Plaintiff, MissPERS, is a governmental defined benefit pension plan for nearly all non-federal public employees in the State of Mississippi.  MissPERS provides benefits to over 75,000 retirees and future benefits to more than 250,000 current and former public employees.  ¶13. MissPERS purchased Series 2007-A Certificates issued by the Merrill Lynch First Franklin Mortgage Loan Trust, Series MLCC 2006-2 and 2006-A1 Certificates issued by the Merrill

Lynch Mortgage Investors Trust, and Series 2007-F1 Certificates issued by the Merrill Lynch Alternative Note Asset Trust.  *See* Wales Decl. Ex. 3.[5]

Plaintiff LACERA administers defined retirement plan benefits for the employees of Los Angeles County and participating agencies.  As of June 30, 2008, LACERA had 158,000 members, including more than 52,000 benefit recipients and maintained over $38 billion in net assets.  LACERA purchased Series 2006-WMC2, 2006-A1, and 2006-FF1 Certificates issued by Merrill Lynch Mortgage Investors Trust, as well as Series 2007-A3 and 2007-AF1 Certificates issued by Merrill Lynch Alternative Note Asset Trust.  *See* Wales Decl. Ex. 4.

Plaintiff Wyoming manages and invests all funds of the State of Wyoming (with the exception of the State Retirement Fund).  Wyoming currently manages over $10 billion in non-pension funds.  Wyoming purchased Series 2006-WMC1, 2006-A1, 2006-WMC2, 2006-AHL1, 2006-MLN1, 2006-RM3, 2006-FM1, and 2006-RM5 Certificates issued by Merrill Lynch Mortgage Investors Trust, as well as Series 2007-2, 2007-3, and 2007-4 Certificates issued by Merrill Lynch First Franklin Mortgage Loan Trust.  *See* Wales Decl. Ex. 5.

Plaintiff Connecticut Carpenters consists of two Taft-Hartley pension fund systems. Connecticut Carpenters purchased Series 2006-2 Certificates issued by Ownit Mortgage Loan Trust.  *See* Wales Decl. Exs. 6 and 7.

 Plaintiffs are fiduciaries for their beneficiaries, and understand the responsibilities of

---

[5] Due to a calculation error, the par values reported for certain transactions identified in Lead Plaintiff's certification are incorrect.   The correct par value for the 9/6/06 purchase of MLMI Series MLCC 2006-2 was $99.4219 and, for the 7/30/08 sale, was $88.6250.  For MLMI Series 2006-A1, the correct par values for the 6/15/06 and 10/18/06 purchases were $99.7530 and $100.3281, respectively, with par values for the sale of such security on 11/27/06 and 2/12/07 of  $100.6992 and $100.5000.  This does not affect Plaintiffs' motion for class certification.  Lead Plaintiff suffered losses on its investments in MLMI Series MLCC 2006-2.  Plaintiff LACERA also purchased Certificates from MLMI Series 2006-A1, held through the filing of the lawsuit, and claims losses.

acting as class representatives in this action.  Plaintiffs have supervised this litigation by, among other things, reviewing draft pleadings, receiving regular status reports, and communicating regularly with counsel regarding significant developments.  Each Plaintiff has produced documents and is scheduled to be deposed in this case, demonstrating Plaintiffs' active participation in this litigation.

## III.   ARGUMENT

The class action mechanism is well-suited for pursuing securities actions.  *See Maywalt v. Parker & Parsley Petroleum Co.*, 147 F.R.D. 51, 54 (S.D.N.Y. 1993) (Sweet, J.) (explaining that the Second Circuit "has explicitly noted its preference for class certification in securities cases and the importance of such certification for small securities holders located throughout the country"), *aff'd.* 67 F. 3d 1072 (2d. Cir. 1995).  Courts in this district thus routinely certify class actions asserting claims under Section 11 of the Securities Act.  *See In re Livent, Inc. Noteholders Sec. Litig.*, 210 F.R.D. 512, 517 (S.D.N.Y. 2002); *In re Interpublic Sec. Litig.*, 2003 WL 22509414, at *4 (S.D.N.Y. Nov. 6, 2003); *In re Dreyfus Aggressive Growth Mut. Fund Litig.*, 2000 WL 1357509, at *11 (S.D.N.Y. Sept. 20, 2000).  Indeed, Section 11 and 12(a)(2) claims are particularly well-suited for class action certification.  As the Third Circuit Court of Appeals recently explained, "a [Section] 11 case will never demand individualized proof as to an investor's reliance or knowledge," and this "formulaic nature" of Section 11 claims leaves defendants with little room to maneuver at the class certification stage.  *In re Constar, Int'l Inc. Sec. Litig.*, 585 F.3d 774, 784-85 (3d Cir. 2009).  *See also In re Bank One Sec. Litig./First Chicago S'holder Claims*, 2002 WL 989454, at *4 (N.D. Ill. May 14, 2002) (Section 11 claims are "particularly well-suited to class treatment … because Section 11 claims require only a material misstatement or omission in a Registration Statement to prove liability").

To be certified as a class action, the plaintiff must satisfy the requirements of Fed. R. Civ.

P. 23(a) that:

    (1)      the class is so numerous that joinder of all members is impracticable;

    (2)      there are questions of law or fact common to the class;

    (3)      the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

    (4)      the representative parties will fairly and adequately protect the interests of the class.

In addition, plaintiffs must establish that one of the requirements of Fed. R. Civ. P. 23(b) is satisfied, in this case by demonstrating under Rule 23(b)(3) that (1) "questions of law or fact common to class members predominate over any questions affecting only individual members," and (2) "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

Here, Plaintiffs have provided sufficient evidence to establish, by a preponderance, that this action should be certified as a class action.  Plaintiffs' evidence includes the Complaint, other pleadings on file, documents produced by Merrill Lynch and by third parties, the supporting declaration of Lead Counsel (with exhibits), and the expert report of Joseph R. Mason, PhD, filed with Plaintiffs' motion for class certification.  The class is so numerous that joinder of all members is impracticable, there are common questions of law and fact stemming from the Merrill Defendants' common course of conduct, the claims and defenses of the representative parties are typical of the claims and defenses of the class, and the class representative will fairly and adequately protect the interests of the class.  The common issues in this case predominate over any issues affecting individual class members, and a class action is superior to all other mechanisms, including individual actions, which would be inefficient and impractical.  In short, the numerosity, commonality, typicality and adequacy of representation requirements of Rule 23(a) and the superiority requirement of Rule 23(b)(3) are met.

In reviewing the Rule 23 criteria, the Court should resolve factual disputes relevant to a

particular Rule 23 requirement, but not resolve any unrelated aspects of the merits of the case. *See In re. Vivendi Universal S.A. Sec. Litig.*, 242 F.R.D. 76, 83 (S.D.N.Y. 2007) (citing *In re IPO Sec. Litig.*, 471 F.3d 24, 41 (2d. Cir. 2006)). The Court has ample discretion "to assure that a class certification motion does not become a pretext for a partial trial of the merits." *Id.* Moreover, "Rule 23 is given a liberal rather than restrictive construction, and courts are to adopt a standard of flexibility." *Marisol A. v. Giuliani*, 126 F.3d 372, 377 (2d. Cir. 1997).

### A.      The Class Meets the Requirements of Rule 23(a)

#### 1.      Rule 23(a): the Class Is Sufficiently Numerous

Rule 23 permits class certification if "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Certification is appropriate when "the number of class members is sufficiently large so that joinder of all members would make litigation needlessly complicated and inefficient." *Banyai v. Mazar*, 205 F.R.D. 160, 163 (S.D.N.Y. 2002). *See also Lapin v. Goldman Sachs & Co.*, 254 F.R.D. 168, 174-75 (S.D.N.Y. 2008) (explaining that the numerosity requirement "does not mandate that joinder of all parties be impossible – only that the difficulty or inconvenience of joining all members of the class make use of the class action appropriate").

In this Circuit, "numerosity is presumed at a level of 40 members." *Consol. Rail Corp. v. Hyde Park*, 47 F.3d 473, 483 (2d. Cir. 1995). However, "the determination of practicability depends on all the circumstances surrounding the case, not on mere numbers." *Robidoux v. Celani*, 987 F.2d 931, 936 (2d. Cir. 1993). *See also In re Vivendi*, 242 F.R.D. at 83 ("Precise quantification of the class members is not necessary because a court may make common sense assumptions regarding numerosity") (citations omitted). Here, using a conservative method of counting investors based on currently available discovery, there are at least 1,600 unique investors who purchased or otherwise acquired Certificates in the 18 Offerings. Indeed, each

Offering has at least 40 distinct investors – except for the MANA Series 2007-3 Offering, which has, at a minimum, 36 distinct investors and likely many more.  Mason Report, ¶95.  *See New Castle v. Yonkers Contracting Co.*, 131 F.R.D. 38, 41 (S.D.N.Y. 1990) (certifying class with 36 potential members).[6]

Class certification will also promote judicial economy and uniformity of decision by concentrating these claims in this forum.  *See Robidoux*, 987 F.2d at 936 ("Relevant considerations include judicial economy arising from the avoidance of a multiplicity of actions, geographic dispersion of class members […] and requests for prospective injunctive relief which would involve future class members").  Here, the investors are geographically dispersed institutions and individuals with a wide range in the size of transactions, from 10,000 units to hundreds of millions units.  *See* Mason Report, ¶97.  Rule 23(a) numerosity is satisfied.

        2.      <u>Rule 23(a): There Are Questions of Law and Fact Common to the Class</u>

The "commonality" requirement of Fed. R. Civ. P. 23(a)(2) is satisfied if "plaintiffs' grievances share a common question of law or fact."  *Giuliani*, 126 F.3d at 376.  *See also In re PE Corp. Sec. Litig.*, 228 F.R.D. 102, 108 (D. Conn. 2005) (explaining that "the test for commonality is not demanding and is met so long as there is at least one issue common to the class")*.*  Courts liberally construe the Rule 23(a) commonality requirement.  *Damassia v. Duane Reade, Inc.* 250 F.R.D. 152, 156 (S.D.N.Y. 2008).  Therefore, commonality "does not mean that all issues must be identical to each member." *Damassia*, 250 F.R.D. at 156.  *See also Katz v.*

---

[6] Discovery continues from large institutional clearing firms including J.P. Morgan Securities, Inc. and Credit Suisse Securities (USA) LLC.  Based on discovery received to date from Defendants and third party Depository Trust & Clearing Corporation ("DTC"), among others, Plaintiffs believe that they may be able to identify a significant number of additional unique investors who purchased Certificates, including investors who purchased the MANA, Series 2007-A3 Certificates.

*Image Innovations Holdings, Inc.*, 2010 WL 2926196, at *3 (S.D.N.Y. July 22, 2010) (commonality does not require identical claims and arguments).  The party seeking class certification is merely required to "identify some unifying thread among the members' claims that warrant class treatment."  *Damassia*, 250 F.R.D. at 156; *In re Vivendi*, 242 F.R.D. at 84.

In securities actions, the commonality requirement is typically satisfied "where putative class members have been injured by similar material misrepresentations and omissions."  *In re IPO*, 243 F.R.D. 79, 85 (S.D.N.Y 2007).  Thus, the requirement is "plainly satisfied" where "the alleged misrepresentations in the prospectus relate to all investors, and the existence and materiality of such misrepresentations obviously present important common issues."  *Korn v. Franchard Corp.*, 456 F.2d 1206, 1210 (2d Cir. 1972); *In re Prestige Brands Holdings, Inc. Sec. Litig.*, 2007 WL 2585088, at *2 (S.D.N.Y. Sept. 5, 2007).  *See also In re Dynex Capital, Inc. Sec. Litig.¸* 2011 WL 781215, at *2 (S.D.N.Y. Mar. 7, 2011) (finding commonality for mortgage-backed bonds collateralized by impaired loans, because class members "are alleged to have been impacted by the same misrepresentations and omissions"); *In re Arakis Energy Corp. Sec. Litig.*, No. 95-cv-3431, 1999 WL 1021819, at *5 (E.D.N.Y. April 27, 1999) ("where all the class claims arise out of publicly announced, allegedly false statements, common questions of law and fact are virtually assured"); *In re Pilgrim Sec. Litig.*, 1996 WL 742448, at *4 (C.D. Cal. 1996) (finding commonality based on "misrepresentations and omissions contained in registration statements and prospectuses about the contents of the Trusts' portfolios, their illiquidity, and sensitivity to interest rate increases," despite the fact that "the proposed class members may have been exposed to different representations").

Here, the claims arise out of statements in each Offering Document that were used to sell Certificates to the Class.  Moreover, as discussed in the expert report of Dr. Mason, the

Certificates in each Offering are interrelated, and any material untrue statement or omission in each Offering Document would therefore similarly affect investors in all Certificates issued pursuant to those Offering Documents.  *See* Mason Report, ¶¶6, 70-88.  Questions of law and fact common to the class therefore include:

    (1)    Whether Defendants violated the Securities Act by the acts and conduct alleged in the Complaint;

    (2)    Whether Defendants made materially false and misleading statements in the Registration Statements, Prospectuses and Prospectus Supplements regarding the underwriting and appraisal practices of the loan originators selected by Merrill and/or Defendants' review of those practices, and the accuracy of the ratings for the Certificates;

    (3)    Whether Defendants omitted material information from the Registration Statements, Prospectuses and Prospectus Supplements regarding the underwriting and appraisal practices of the loan originators selected by Merrill and/or Defendants' review of those practices, and information about the accuracy of the ratings for the Certificates;

    (4)    Whether the Individual Defendants participated in the course of conduct alleged in the Complaint;

    (5)    Whether the challenged representations are subject to any common affirmative defenses, including Defendants' claim that they were non-actionable "forward looking statements";

    (6)    Whether Merrill controls its subsidiary, the Merrill Depositor; and

    (7)    The damages sustained by class members and the appropriate measure of damages.

Accordingly, Rule 23(a)(2)'s requirement of a common question of law or fact is plainly satisfied.  *See* Mason Report, ¶¶6, 70-88.

### 3.    Rule 23(a): Plaintiffs' Claims Are Typical of the Class

"While the commonality inquiry establishes the existence of a certifiable class, the typicality inquiry focuses on whether the claims of the putative class representatives are typical of the class sharing common questions."  *Vivendi*, 242 F.R.D. at 84-85.  To establish typicality, plaintiffs must show that "each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability."  *In re Flag Telecom Holdings Ltd Sec. Litig.*, 574 F.3d 29, 35 (2d. Cir. 2009) (citation omitted).

The typicality requirement is not demanding. "When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims." *Robidoux*, 987 F.2d at 936-37. *See also In re Vivendi*, 242 F.R.D. at 85 (same). A difference in damages among class members does not prevent a finding of typicality. S*ee Trautz v. Weisman*, 846 F. Supp. 1160, 1167 (S.D.N.Y. 1994)

Here, the claims of the proposed class representatives are typical of the claims of the class. Like other members of the Class, Plaintiffs purchased Certificates in each of the 18 Offerings pursuant to Offering Documents that contained untrue representations and omissions concerning the loan originators' underwriting and appraisal practices. *Dynex*, 2011 WL 781215, at *8 (finding claims to be typical because legal theories and proof would be the same for plaintiffs' claims alleging violations of underwriting and origination guidelines in the offerings). Thus, Plaintiffs' claims arise from the same course of conduct that gives rise to the claims of every other class member who purchased Certificates in each of the 18 Offerings, and they will focus on the same misrepresentations and omissions, and assert the same legal theories, in proving the Merrill Defendants' liability. *See Katz*, 2010 WL 2926196, at *4. Nor do differences in purchase dates or damages render a claim atypical. *See In re Marsh & McLennan Cos. Inc. Sec. Litig.*, 2009 WL 5178546, at *10 (S.D.N.Y. Dec. 23, 2009) ("Factual differences involving the date of acquisition, type of securities purchased and manner by which the investor acquired the securities will not destroy typicality if each class member was the victim of the same material misstatements and the same fraudulent course of conduct"); *In re NYSE Specialists Sec. Litig.*, 260 F.R.D. 55, 72-73 (S.D.N.Y. 2009) ("As long as plaintiffs assert, as they do here, that defendants committed the same wrongful acts in the same manner, against all

14

members of the class, they establish [the] necessary typicality.") (citations omitted).

Typicality is readily established here. The nature of mortgage-backed securities, generally, and the Merrill Offerings, specifically, is that each of the securities within an Offering represents a claim on the cash flows of the underlying collateral. Mason Report, ¶¶4, 70. Thus, all cash flows to the different securities in each Offering are based on the performance of the same underlying collateral. *Id*. at ¶73. And, to the extent there are untrue statements and/or material omissions in the Offering Documents, all securities in each of the Offerings will be adversely affected. *Id*. at ¶¶73, 75. Plaintiffs and the absent class members all assert the same claims under the Securities Act. They all base their claims on misstatements and omissions in each of the Offering Documents and on the same allegations of "control person" liability. Their claims are predicated on the Merrill Defendants' same wrongful conduct. Nor are there unique defenses that will become the focus of the litigation, and as such, Plaintiffs satisfy the typicality requirement. *See In re Monster*, 251 F.R.D. at 134-35.

4.     <u>Rule 23(a): the Representative Parties Will Fairly and Adequately Protect the Interests of the Class</u>

Rule 23(a) requires plaintiffs to establish that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "Adequacy entails inquiry as to whether: (1) plaintiffs' interests are antagonistic to the interest of other members of the class and (2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation." *Flag Telecom*, 574 F.3d at 35 (quotation marks omitted).

This requires plaintiffs to demonstrate that "the proposed class representatives have no interests [that] are antagonistic to the interests of the other members of the class." *Vivendi*, 242 F.R.D. at 85 (citation and quotation marks omitted). "[I]n order to defeat a motion for [class] certification, however, the conflict must be fundamental." *Flag Telecom*, 574 F.3d at 35.

15

A finding that a proposed class representative satisfies the typicality inquiry constitutes "strong evidence that [its] interests are not antagonistic to those of the class; the same strategies that will vindicate plaintiff['s] claims will vindicate those of the class." *Damassia*, 250 F.R.D. at 158. *See also In re Monster*, 251 F.R.D. at 134 (noting that "the third requirement of Rule 23(a) (that the claims of the putative class representatives are typical of the claims of the class) and fourth requirement (that the class representatives fairly and adequately protect the interests of the class) tend to merge") (citation omitted).

Indeed, no fundamental conflict exists here. Plaintiffs' interests are directly aligned with the interests of the Class who collectively purchased Certificates in each of the Offerings pursuant to the same material untrue statements and omissions in the Offering Documents. *See Hicks v. Morgan Stanley & Co.*, 2003 WL 21672085, at *3 (S.D.N.Y. July 16, 2003) (finding proposed class representative adequate where the complaint alleged "a common course of conduct and unitary legal theory for the entire class period – that is, Defendants issued prospectuses and registration statements that contained false statements about the Trust's NAV, because the loans were not properly valued…"); *In re WorldCom, Inc. Securities Litig.*, 219 F.R.D. 267, 282 (S.D.N.Y. 2003) (explaining that "named plaintiffs' interests are directly aligned with those of the absent class members; they are purchasers of WorldCom equity and debt securities who suffered significant losses as a result of the investments.")

Plaintiffs have also demonstrated their commitment to monitor and supervise the prosecution of this action on behalf of the interests of the putative Class. Plaintiffs have retained experienced counsel, receive regular status updates, participate in strategic decisions, and are actively participating in discovery. Plaintiffs are precisely the type of institutional investors Congress sought to empower when passing the Private Securities Litigation Reform Act of 1995

("PSLRA").  Congress enacted the PSLRA in large part to encourage sophisticated institutional investors to take control of securities class actions and "increase the likelihood that parties with significant holdings in issuers, whose interests are more strongly aligned with the class of shareholders, will participate in the litigation and exercise control over the selection and actions of plaintiff's counsel."   H.R. Conf. Rep. No. 104-369, at 32 (1995).   Plaintiffs, who have considerable interest in ensuring the Class attains a recovery, satisfy the adequacy requirement of Rule 23(a)(4).   There is also no doubt that Plaintiffs' counsel is qualified and capable of prosecuting this action.  Bernstein Litowitz has been prosecuting securities class actions for over 25 years and has a proven track record of success in complex cases such as this one.  *See* Firm Resume, Wales Decl., Ex. 8.

In sum, the requirements of Rule 23(a) are satisfied.

**B.      The Class Meets the Requirements of Rule 23(b)(3)**

Plaintiffs seek class certification under Rule 23(b)(3) because "questions of law or fact common to class members predominate over any questions affecting only individual members" and "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

1.      Common Questions of Law and Fact Predominate Over Individual Questions

Certification under Rule 23(b)(3) is appropriate where the proposed class is "sufficiently cohesive to warrant adjudication by representation."  *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623 (1997).   This inquiry is more demanding than the commonality determination required by Rule 23(a) and requires that "issues that are subject to generalized proof outweigh those subject to individualized proof."  *In re NYSE Specialists*, 260 F.R.D. at 75 (citations omitted).  *See also Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1252 (2d. Cir. 2002) (same).

"At the same time, predominance does not require a plaintiff to show that there are no individual issues" and "to allow various secondary issues of plaintiff's claim to preclude certification of a class would render the rule an impotent tool for private enforcement of the securities laws." *In re NYSE Specialists*, 260 F.R.D. at 75 (quoting *Dura-Bilt Corp. v. Chase Manhattan Corp.*, 89 F.R.D. 87, 99 (S.D.N.Y. 1981)).  Indeed, the United States Supreme Court has recognized that "[p]redominance is a test readily met in certain cases alleging consumer or securities fraud." *Amchem*, 521 U.S. at 625.

Courts in this Circuit routinely find that common issues about the falsity and materiality of statements in offering documents predominate over individual questions.  *See Livent,* 210 F.R.D. at 517; *Interpublic*, 2003 WL 22509414, at *4; *Dreyfus*, 2000 WL 1357509, at *11; and *Arakis*, 1999 WL 1021819, at *10 ("In securities fraud class actions in which the fraud is alleged to have been carried out through public communications to a wide variety of market participants common issues of law and fact will generally predominate over individual issues").

Here, common legal and factual issues predominate over any individual ones.  Plaintiffs allege violations of Section 11, 12(a)(2) and 15 of the Securities Act.[7]  Section 11 of the Securities Act allows purchasers of a registered security to sue certain enumerated parties when false or misleading information is included in a registration statement.  *See* 15 U.S.C. §77k.  If a plaintiff purchased a security issued pursuant to a registration statement, "he need only show a material misstatement or omission to establish a prima facie case." *Herman & MacLean v. Huddleston*, 459 U.S. 375, 382 (1983).  Section 12(a)(2) of the Securities Act allows a purchaser of a security to bring an action against a seller who "offers or sells a securities … by means of a prospectus or oral communication, which includes an untrue statement of material fact or omits

---

[7] The Section 15 claim is derivative of the Section 11 and 12(a)(2) claims and therefore does not warrant separate discussion.  *See Morgan Stanley*, 2003 WL 21672085, at *1 n.6.

to state a material fact necessary in order to make the statements … not misleading."  15 U.S.C. §77l(a)(2).    Thus, to establish the Merrill Defendants' liability under Section 11 and 12(a)(2), Plaintiffs and the class must prove that the Merrill Defendants made untrue statements of material fact or omitted material facts from the Offering Documents.  These issues predominate in this case and can be established through common proof on a class-wide basis.

Courts and commentators alike have recognized that, for Section 11 claims, "[a] court can usually find that common factual and legal issues will predominate."  J. William Hicks, 17 CIVIL LIABILITIES: ENFORCEMENT & LITIGATION UNDER THE 1933 ACT § 4:43 (citing cases). Because such claims focus on the contents of the Offering Documents – with no requirement to show reliance, materiality, knowledge or causation – they are particularly suited for class treatment.  As the Third Circuit recently explained in certifying a Section 11 class:

> The crucial questions are: 'was there a misrepresentation? And, if so, was it objectively material?'  Since reliance is irrelevant in a §11 case, a § 11 case will never demand individualized proof as to an investor's reliance or knowledge …. Further, because a misrepresentation is material if a reasonable investor would have considered a fact important, the effect of a material misrepresentation is felt uniformly across the class of investors, regardless of whether the market is efficient.  Since this is an objective standard, *materiality is not determined … by the 'mix of information' available to each individual plaintiff* ….  We also note that, although loss causation is an affirmative defense in a § 11 case, *this defense would not defeat predominance* . . . .  Any affirmative defense on this ground would present a *common* issue, not an individual one.

*In re Constar Int'l Inc. Sec. Litig.*, 585 F.3d 774, 784-85 (3d Cir. 2009) (emphasis added).

The same is true here.[8]  *First*, Plaintiffs can demonstrate that Defendants made untrue statements and omissions with generalized proof.  *See Lapin*, 254 F.R.D. at 181 (proof of misrepresentation susceptible to generalized proof); *Marsh & McLennan*, 2009 WL 5178546, at

---

[8] The common questions of law and fact are listed in Section III.B.2, above.

\*11 (same).[9]

*Second*, materiality is also subject to generalized proof.  The materiality test for misleading statements is identical for Section 11 and 12(a)(2) claims: "whether representations, viewed as a whole, would have misled a reasonable investor."  *Rombach v. Chang*, 355 F.3d 164, 178, n11 (2d. Cir. 2004).  Because this standard is objective, the materiality of Defendants' misrepresentations – which are substantially similar in each of the Offerings – can be proven class-wide.  *See Dura-Bilt*, 89 F.R.D. at 94 ("The question of materiality, rather than being an individual issue, is in fact a common issue").

*Third*, control person liability is a common question that may be established through generalized proof.  Defendants have denied Plaintiffs' control person claims under Section 15 of the Securities Act, and the question of whether Merrill Lynch had the power to direct or to cause the direction of Merrill Lynch Mortgage Investors, Inc.'s management and policies will be identical for all class members and across all of the Certificates.  ¶214.  *See Menkes v. Stolt-Nielsen, S.A.*, 270 F.R.D. 80, 91 (D. Conn. 2010) ("each class member's control person claim should be identical given that Defendant's conduct alone is relevant to satisfying the applicable standard").

*Fourth*, Defendants' defenses themselves present common questions subject to

---

[9] The Court should not adopt the reasoning of the court in *N.J. Carpenters Health Fund v. Residential Capital, LLC*, 2011 WL 147735 (S.D.N.Y. Jan. 18, 2011), *petition for appellate review pending*.  There, the Honorable Harold Baer, Jr. denied class certification in action asserting claims under the Securities Act based on a finding of "sufficient differences in the knowledge of putative class members for me to conclude that individual issues predominate" over other common issues of law and fact.  *Id.* at \*10.  Judge Baer's decision is in direct conflict with other decisions in this district, including at least one decision of this Court.  *See In re Monster,* 251 F.R.D. at 137 (a defendant's mere assertion of a knowledge defense does not undermine the predominance of common issues absent "direct evidence that any putative class member ***actually knew about***" the alleged misconduct by the defendant); and *Lapin*, 254 F.R.D. at 184 (S.D.N.Y. 2008) (Sullivan, J.) (same).

generalized proof.  In their Answer, Defendants deny Plaintiffs' allegations about, *inter alia*, the falsity of the statements in the Offering Documents (Eleventh Defense), whether such statements are "forward looking" (Fourth Defense), the duty to disclose omitted information (Twenty-First Defense), and control person allegations (Thirty-Third Defense).  Just as Plaintiff's allegations of falsity on each of these points are susceptible to common proof, so are Defendants' defenses.

*Fifth*, the statute provides a damages formula that is common for the class.  15 U.S.C. §77k(e).  Dr. Mason's expert report discusses the common methodology for establishing the damages of individual class members.  *See* Mason Report, ¶¶99-102.  Although specific damages may vary for each class member, this "does not defeat certification if the method of calculating damages is common to the class."  *Lapin*, 254 F.R.D. at 181.  *See also McLaughlin v. Am. Tobacco Co.*, 522 F.3d 215, 231 (2d. Cir. 2008) (fact that damages will be ascertained on an individual basis, standing alone, is not a sufficient basis to defeat class certification).  Moreover, "[t]here are a number of management tools available to a district court to address any individualized damages issues that might arise in a class action."  *In re Visa Check/Master Money Antitrust Litig.*, 280 F.3d 124, 141 (2d. Cir. 2001).

Plaintiffs can demonstrate Defendants' liability using generalized proof on a class-wide basis.  Because these core issues predominate in this case, the predominance requirement of Rule 23(b)(3) is satisfied.

## 2.  A Class Action is Superior to Alternative Methods For Resolving This Dispute

Rule 23(b)(3) requires that a class action also be "superior to other available methods for fairly and efficiently adjudicating the controversy."  As a general matter, "securities suits … easily satisfy the superiority requirement of Rule 23."  *Lapin*, 254 F.R.D. at 186, *quoted by Monster*, 251 F.R.D. at 139 ("as a general rule, securities fraud cases 'easily satisfy the

superiority requirement'"").  As a Court in this District recently explained:

> [m]ost violations of the federal securities laws … inflict economic injury on large numbers of geographically dispersed persons such that the cost of pursuing individual litigation to seek recovery is often not feasible.  Multiple lawsuits would be costly and inefficient, and the exclusion of class members who cannot afford separate representation would neither be "fair" nor an adjudication of their claims.  Moreover, although a large number of individuals may have been injured, no one person may have been damaged to a degree which would induce him to institute litigation solely on his own behalf.

*Lapin*, 254 F.R.D. at 187 (quoting *In re Merrill Lynch Tyco Research Sec. Litig.*, 249 F.R.D. 124, 132 (S.D.N.Y. 2008)).

The Rule provides four factors for courts to consider in evaluating the superiority requirement:

> (A)    The class members' interests in individually controlling the prosecution or defense of separate actions;
> (B)    The extent and nature of any litigation concerning the controversy already brought by or against class members;
> (C)    The desirability of concentrating the litigation of the claims in the particular forum;
> (D)    The likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3)(A)-(D).  *Vivendi*, 242 F.R.D. at 91.  "[T]he purposes of Rule 23 should weigh heavily in this determination."

Each of these factors and the purposes of Rule 23 weigh in favor of certifying the Class.

*First*, there is no overwhelming interest by class members to proceed individually.  To Lead Plaintiff's knowledge, only one absent class member has brought an individual action based on any of the Offerings at issue here – and it only covers 3 of the 18 offerings – thereby demonstrating that "the class members have no great interest in controlling the prosecution of the litigation."  *In re Revco Sec. Litig.*, 142 F.R.D. 659, 669 (N.D. Ohio 1992).  This is unsurprising because multiple litigations by multiple plaintiffs could significantly reduce the prospects for recovery. *See Board of Tr. of AFTRA Ret. Fund v. JPMorgan Chase Bank, N.A.*, 269 F.R.D. 340,

355 (S.D.N.Y. 2010) (noting that "multiple lawsuits would be costly and inefficient" in support of a finding of superiority).

The investors in the Offerings include institutions and individuals with investments ranging in size from ten thousand units to hundreds of millions.  Mason Report, ¶97.  Although some absent class members may be able to fund individual lawsuits – a theoretical possibility present in virtually all securities class actions – there is no reason to believe that ***all*** or even most of the absent class members have sufficient resources or economic incentives to do so.  *See JPMorgan Chase*, 269 F.R.D. at 355 (even "smaller institutional investors may not be willing and able to hire counsel to battle against the collective resources of the nation's largest financial industry firms") (internal quotations omitted).  This is not a case where liability is undisputed.  Rather, Defendants vigorously contest liability and damages.  *See* Defendants' Answer, ECF No. 118, at 55 and 60.

Even assuming *arguendo* that all members of the class had sufficient economic incentives to litigate their claims individually (which is not the case), proceeding as a class would still be superior to individual actions of greater than 1,600 investors.  *See* Mason Report, ¶¶95-96.  Courts have repeatedly held that "the existence of large individual claims that are sufficient for individual suits is no bar to a class," particularly where, as here, "the advantages of unitary adjudication exist to determine the defendant's liability."  *JPMorgan Chase*, 269 F.R.D. at 355 (quotations omitted); *see also In re K-Dur Antitrust Litig.*, 2008 WL 2699390, at *20 (D.N.J. Apr. 14, 2008) ("As other courts have noted, Rule 23(b)(3) 'does not exclude from certification cases in which individual damages run high.'") (citation omitted).

*Second*¸ Plaintiffs are aware of only a single pending individual action that involves claims that overlap with this case, *Allstate et al. v. Merrill Lynch & Co. et al.*, No. 650559/2011,

N.Y. Sup. Ct.  (Mar. 1, 2011), and this recently filed case would not interfere with the efficient resolution of the instant class action.  The *Allstate* complaint, which is pending in New York State Supreme Court, involves allegations of Section 11 liability against Merrill Lynch for three of the same offerings at issue here, as well as for numerous other certificates not included in this case.  *See Allstate* Complaint, Wales Decl., Ex. 9.  This action is unlikely to have a material impact on the current litigation.  That a single plaintiff here has chosen to pursue its claims on three of the eighteen offerings on an individual basis should not have any bearing on the superiority analysis under Rule 23(b)(3).  *See In re WorldCom,* 219 F.R.D. 267, 304 (S.D.N.Y. 2003) (finding a class action to be superior where related individual actions represented "just a fraction of investors"); *In re EVCI Career College Holding Corp. Sec. Litig.*, 2007 WL 2230177, *14 (S.D.N.Y. July 27, 2007) (finding superiority where the court was "unaware of any class action litigation concerning the false statements at issue" and noting that any class members who "would prefer to individually control the prosecution of their claims … have the opportunity to opt out or be represented by counsel of their own choice").

*Third*, it is desirable to concentrate this litigation in this forum.  This action has been pending in this forum since December 2008.  The Court has ruled on two motions to dismiss and is familiar with the claims and defenses.  It is desirable for all Class members that their claims be resolved in a court that is familiar with the issues and has a record of efficiently adjudicating complex litigation.  *See Marsh & McLennan*, 2009 WL 5178546, at *12 ("concentrating litigation in a single forum plainly has a number of benefits, including eliminating the risk of inconsistent adjudications and promoting the fair and efficient use of the judicial system, and the Southern District of New York is well known to have expertise in securities law").  Moreover, the conservative number of Class members in this case exceeds 1,600, with the majority of

offerings having in excess of 80 investors, and likely many more.  *See* Mason Report, ¶¶95-96.  *See also supra* n.8.   These distinct investors are dispersed throughout the country.   Mason Report, ¶97.  Certifying a class is "clearly desirable." *EVCI*, 2007 WL 2230177, at *14.

 *Fourth*, this Court is unlikely to face unusual manageability difficulties with the class action "apart from those inherent in any hard fought battle where substantial sums are at issue and all active parties are represented by able counsel."  *WorldCom*, 219 F.R.D. at 305.   A number of courts have recognized that class actions predicated on Section 11 claims are relatively easy to manage because Section 11 includes a statutory damages formula and does not require a plaintiff to establish scienter, reliance, or loss causation.  Moreover, to the extent any management issues arise, this Court has case management tools "to see that all members of the class are protected, including but not limited to the authority to alter or amend the class certification order pursuant to Rule 23(c)(1)(C), to certify subclasses pursuant to Rule 23(c)(5), and the authority under Rule 23(d) to issue an order ensuring the fair and efficient conduct of the action."  *Flag Telecom*, 574 F.3d at 37 (citations and quotation marks omitted).

 Accordingly, this case and the proposed class satisfy the requirements of Rule 23(b)(3).

## IV. CONCLUSION

 For the foregoing reasons, Plaintiffs respectfully request that the Court: (i) certify this Action as a class action pursuant to Rule 23(a) and 23(b)(3); and (ii) appoint Plaintiffs as representatives of the proposed class and  BLB&G as class counsel.

Dated:  New York, New York
        March 22, 2011

                          **BERNSTEIN LITOWITZ BERGER
                            & GROSSMANN LLP**

                          By: _____s/ David L. Wales_____
                                   David L. Wales

                          DAVID L. WALES
                          JEROEN VAN KWAWEGEN
                          SEAN K. O'DOWD
                          1285 Avenue of the Americas, 38th Floor
                          New York, NY 10019
                          Tel:  (212) 554-1400
                          Fax:  (212) 554-1444
                          dwales@blbglaw.com
                          jeroen@blbglaw.com
                          seano@blbglaw.com

                          -and-

                          DAVID R. STICKNEY
                          TIMOTHY A. DeLANGE
                          MATTHEW P. JUBENVILLE
                          TAKEO A. KELLAR
                          12481 High Bluff Drive, Suite 300
                          San Diego, CA 92130
                          Tel:  (858) 793-0070
                          Fax:  (858) 793-0323
                          davids@blbglaw.com
                          timothyd@blbglaw.com
                          matthewj@blbglaw.com
                          takeok@blbglaw.com

                          *Lead Counsel for the Class and Counsel for Lead
                          Plaintiff Public Employees' Retirement System of
                          Mississippi and Plaintiff Los Angeles County
                          Employees Retirement Association*


                          POND, GADOW & TYLER, P.A.
                          JOHN GADOW
                          BLAKE TYLER
                          502 South President Street
                          Jackson, MS 39201
                          johngadow@pgtlaw.com
                          btyler@pgtlaw.com

                          *Counsel for Plaintiff Public Employees' Retirement
                          System of Mississippi*

BERMAN DeVALERIO
JEFFREY C. BLOCK
One Liberty Square
Boston, MA 02109
Tel:   (617) 542-8300
Fax:  (617) 542-1194

 -and-

JOSEPH J. TABACCO, JR.
NICOLE LAVALLEE
One California Street, Suite 900
San Francisco, CA 94111
Tel:   (415) 433-3200
Fax:  (415) 433-6382

*Special Assistant Attorneys General
for the State of Wyoming*

BARROWAY TOPAZ KESSLER
MELTZER & CHECK, LLP
JOHN A. KEHOE
KAREN E. REILLY
280 King of Prussia Road
Radnor, PA 19087
Tel:   (610) 667-7706
Fax:  (610) 667-7056

*Counsel for Plaintiffs Connecticut
Carpenters Pension Fund and Connecticut
Carpenters Annuity Fund*