# Exhibit 3

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| PUBLIC EMPLOYEES' RETIREMENT SYSTEM OF MISSISSIPPI, et al.,<br><br>                    Plaintiffs,<br><br>    v.<br><br>MERRILL LYNCH & CO. INC., et al.,<br><br>                    Defendants. | Civil Action No. 08-cv-10841 (JSR)<br>ECF Case<br><br>DECLARATION OF BRETT BRANDENBERG IN SUPPORT OF PLAN OF ALLOCATION |

I, Brett Brandenberg, declare:

## I.     Background and Qualifications

1.     I am a Director in the professional services firm AlixPartners, LLP ("AlixPartners"). My professional experience covers broad types of litigation, valuation, and management consulting engagements, including breach of contract disputes, providing economic damage analysis, and evaluating the financial aspects of contract provisions resulting from various forms of transactions. In the Financial Services Industry, I have worked with banks, investors, brokers, and regulators on various issues including damages analyses, analysis of residential mortgage backed securities, and business and intangible asset valuation.

2.     Prior to joining AlixPartners, I was a Director and Practice Leader in the Financial Advisory Services Group of RSM McGladrey, Inc.  I hold a Bachelor of Science with a major in accounting from Truman State University and a Masters of Business Administration from Washington University in St. Louis.  I am a Certified Public Accountant and Accredited Senior Appraiser in Business Valuation, as well as a Chartered Financial Analyst credential holder.  I am a member of the American Society of Appraisers, the CFA Institute, the American Institute of Certified Public Accountants, and the Licensing Executives Society.  Attached as an exhibit to this Declaration is my most recent curriculum vitae.

## II.     Scope of Engagement

3.     I have been asked by counsel for Plaintiffs to examine the plan to allocate the settlement proceeds in this matter (the "Plan of Allocation") among persons and entities that purchased or otherwise acquired Merrill Lynch mortgage pass-through Certificates pursuant or traceable to Merrill Lynch Mortgage Investors, Inc.'s February 2, 2007 Registration Statement, as amended, December 21, 2005 Registration Statement, as amended, and August 5, 2005 Registration Statement, as amended, and the accompanying prospectuses and prospectus supplements in the following 18 offerings and were damaged thereby: Merrill Lynch Alternative Note Asset Trust Series 2007-A3,

2007-AF1, 2007-F1, Merrill Lynch First Franklin, Mortgage Loan Trust Series 2007-2, 2007-3, 2007-4, 2007-A, Merrill Lynch Mortgage Investors Trust Series, 2006-MLN1, 2006-FM1, 2006-FF1, 2006-RM5, MLCC 2006-2, 2006-AHL1, 2006-RM3, 2006-WMC1, 2006- WMC2, 2006-A1, Ownit Mortgage Loan Trust Series 2006-2 (the "Offerings").

4. It is my understanding that an Authorized Claimant (as defined in the Notice[1]) may be entitled to receive a distribution from the Net Settlement Fund (as defined in the Notice). It is my understanding that only those Class Members who purchased or otherwise acquired Merrill Lynch Certificates pursuant or traceable to the 18 offerings identified above and were damaged as a result of such acquisitions, are eligible to share in the distribution of the Net Settlement Fund.

### III. Basis for Recognized Claim Calculation

5. The objective of the Plan of Allocation is to distribute equitably the Net Settlement Fund to those Class Members who suffered economic losses as a result of the alleged misrepresentations and omissions. This Plan of Allocation concerns damages under Section 11 of the Securities Act. Section 11 concerns liability for untrue statements and omissions in a registration statement, under which losses are calculated as the "difference between the amount paid for the security (not exceeding the price at which the security was offered to the public) and (1) the value thereof as of the time such suit was brought, or (2) the price at which such security shall have been disposed of in the market before suit, or (3) the price at which such security shall have been disposed of after suit but before judgment if such damages shall be less than the damages representing the difference between the amount paid for the security (not exceeding the price at which the security was offered to the public) and the value thereof as of the time such suit was brought …"[2] In this case,

---

[1] Notice of Pendency of Class Action and Proposed Settlement, Settlement Fairness Hearing and Motion for Attorneys' Fees and Reimbursement of Litigation Expenses, dated December 14, 2011 (the "Notice").

[2] Securities Act of 1933, Sec. 11(e)

Plaintiffs allege that the Offering Documents for the 18 Offerings contained untrue statements and omissions.

### IV.     Plan of Allocation – Recognized Claim

6.      To share in the distribution of the Net Settlement Fund, an Authorized Claimant must have purchased or otherwise acquired a Merrill Lynch Certificate and must have suffered a loss. A "Recognized Loss or Gain Amount" should be calculated for each purchase or acquisition of a Certificate. The calculation of the Recognized Loss or Gain Amount will depend on several considerations, including: (i) when the Certificate was purchased or acquired; (ii) whether it was sold, and if so, when it was sold and for how much; and (iii) the value of the Certificate on its applicable "Date of First Suit" (as stated in Table A).[3] The "Recognized Loss or Gain Amount" will be calculated solely on the outstanding "Face Value" (*i.e.,* the principal amount) for each Certificate at the time of sale, or if not sold, the applicable Date of First Suit (*i.e.,* Authorized Claimants will not be allocated damages related to principal and interest payments they received). In each calculation of the Recognized Loss or Gain Amount, the Face Value Sold will be limited to 100% of the Face Value Purchased.

7.      The percentage of the original aggregate principal balance that remains to be distributed in a mortgage-backed security is known as the "Factor." A Certificate's Factor will be calculated as follows:

$$\text{Factor} = \frac{\text{outstanding aggregate principal balance}}{\text{original aggregate principal balance}}$$

8.      The Factor for each Certificate on the applicable Date of First Suit is stated in Table A attached to the Notice.

---

[3] As indicated in Table A of the Notice, complaints concerning certain of the Offerings were filed on December 5, 2008, February 17, 2009, and March 27, 2009. These are the relevant dates suit was brought under the statute.

9. For each calculation of the Recognized Loss or Gain Amount, the purchase price used for the calculation may not exceed the price at which the Eligible Certificate was offered to the public. Thus, if the actual purchase price exceeds the price at which the Eligible Certificate was offered to the public, the price at which it was offered to the public will be used as the purchase price. If the sales price or value at applicable Date of First Suit exceeds the purchase price, then the calculation will result in a Recognized Gain Amount for that Certificate.

**(a)     Calculation of Value on the applicable Date of First Suit**

10. Two principal valuation techniques were used to estimate the Value on the applicable Date of First Suit, as represented in Table A attached to the Notice. The preferred technique was to use a third-party pricing firm that is regularly used in the industry for prices where a price indication existed for the specific security being valued. Where available, such prices were used.

11. Where such price was not available for a specific Merrill Lynch Certificate, a discounted cash flow ("DCF") technique was used to estimate the relative value of the Certificate. A DCF reflects the discounting of the expected future cash flows of a particular asset by a discount rate, or alternatively, rate of return, that compensates the holder of the asset for the risks implicit in the realization of those cash flows. Specifically, the Intex modeling tool was used to formulate the expected future cash flows for each Merrill Lynch Certificate that was not reported to have a price described in paragraph 10 above. Final indications of price for such Certificates were estimated by discounting the projected cash flows while taking into account the subject Certificates' credit ratings and structural attributes, such as the relative values of other Certificates in the offering. Discount rates and other economic inputs used in the analysis were determined through the analysis of various public sources of information, such as Standard & Poor's and Bloomberg

### (b) Calculation of Recognized Loss or Gain Amount

12. The Recognized Loss or Gain Amount for each Merrill Lynch Certificate is to be calculated in a manner consistent with the calculation of losses embodied in Section 11 of the Securities Act:

(i) There will be a Recognized Gain rather than a Recognized Loss if the price at which the Certificate was sold or otherwise disposed is greater than the price at which the Certificate was offered to the public or the price at which it was purchased or acquired.

(ii) For Certificates sold prior to the applicable Date of First Suit, the Recognized Loss or Gain Amount is calculated as follows:

$$\text{Current Face Value sold} \times \left(\frac{\text{purchase price} - \text{sales price}}{100}\right)$$

If a sale did not result in a complete disposition of an investor's ownership in a particular Certificate (*i.e.,* only a portion of the Certificate was sold), a Recognized Loss or Gain Amount, if any, related to the remaining portion of the Certificate will be calculated separately.

(iii) For Certificates sold on or after the applicable Date of First Suit, the Recognized Loss or Gain Amount is calculated as follows:

$$\text{Current Face Value sold} \times \left(\frac{\text{purchase price} - \text{sales price}}{100}\right)$$

For Certificates sold on or after the applicable Date of First Suit, the sales price used to calculate the Recognized Loss or Gain Amount shall be the *greater* of: (i) the Eligible Certificate's value on the applicable Date of First Suit (as reflected in Table A attached to the Notice); or (ii) the actual sales price of the Eligible Certificate.

    (iv)    For Certificates that were not sold, (*i.e.,* the Certificate is still held by the Authorized Claimant), the Recognized Loss or Gain Amount is calculated as follows:

$$\text{Face Value at the applicable Date of First Suit} \times \left(\frac{\text{purchase price} - \text{value at applicable Date of First Suit}}{100}\right)$$

For Certificates that were not sold, the Face Value at the applicable Date of First Suit is calculated as follows:

**Face Value purchased   x   <u>Factor on the applicable Date of First Suit</u>**
**                              Factor on the purchase date**

    (v)    For Certificates purchased or acquired after the applicable Date of First Suit (as indicated in Table A of the Notice) the Recognized Loss or Gain Amount is zero.

13. In the event that a Certificate experienced collateral loss prior to the applicable Date of First Suit, investors may be eligible to recover a "Collateral Loss Amount." Collateral Loss Amount will be a function of the Certificate's Total Collateral Loss ("TCL") at the time of purchase and sale. TCL values for each eligible Certificate are listed in Table B of the Notice and were selected based on the latest available TCL value before the date for which a TCL value is being derived. TCL values for all dates prior to the initial TCL Date listed on Table B are zero. Collateral Loss Amount will be calculated as follows:

$$\text{Collateral Loss Amount} = \text{Original Face Amount Purchased} \times (\text{TCL at Sale} - \text{TCL at Purchase})$$

    **(c)    Calculation of Recognized Claim**

14. A "Total Recognized Loss By CUSIP" will be calculated for each Authorized Claimant on a CUSIP by CUSIP basis. Accordingly, multiple transactions by an Authorized Claimant in a single CUSIP will be netted; i.e., the total Recognized Gain or Loss Amounts for that CUSIP shall be calculated by (1) totaling all Recognized Loss Amounts for that CUSIP; (2) subtracting from that sum the total of all Recognized Gain Amounts for that CUSIP; and (3) adding any Collateral Loss Amount for that CUSIP. In order to be eligible for a recovery, the Total Recognized Loss or Gain Amount By

CUSIP must be greater than zero. The Total Recognized Loss or Gain Amount by CUSIP is limited to the Authorized Claimant's total initial investment in that CUSIP.

15. Each Authorized Claimant's "Recognized Claim" is the sum of all that Authorized Claimant's Total Recognized Loss or Gain Amount By CUSIPs.

## V. The Plan of Allocation is Fair and Reasonable

16. With respect to calculating Recognized Claims, it is my opinion that from a financial perspective the Plan of Allocation as described herein treats Class Members equitably, when taken as a whole, and in a manner reasonably consistent with my understanding of recoverable losses under Section 11 of the Securities Act as a result of the alleged untrue statements and omissions.

I declare, under penalty of perjury, that the foregoing facts are true and correct.

Executed this 14th day of February, 2012.

BRETT BRANDENBERG

**BRETT R. BRANDENBERG**
DIRECTOR

Brett R. Brandenberg is a Director in the firm's Financial Advisory Services group. With more than 16 years of experience, his past work reflects multiple areas of service, including intellectual property, dispute analysis, business and intangibles valuation, forensic examinations and transaction advisory. Similarly, the scope of his industry experience spans manufacturing, real estate, telecommunications, pharmaceutical/biotechnology, professional and financial services, consumer goods, distribution and health care.

Prior to joining AlixPartners, Mr. Brandenberg was the Practice Leader for the Financial Advisory Services group of RSM McGladrey's St. Louis office.  Additionally, he spent a number of years with Deloitte & Touche's financial advisory group providing similar services in its Washington, D.C., Dallas and St. Louis offices.

Mr. Brandenberg graduated with a Masters of Business Administration from Washington University in St. Louis and a Bachelor of Science in accounting from Truman State University.  He is a Certified Public Accountant, Accredited Senior Appraiser and holds the Chartered Financial Analyst designation.

Dispute Analysis

Mr. Brandenberg has significant experience in assisting companies and their counsel in the resolution of disputes.  These services have included consulting on a variety of valuation, financial and accounting issues in litigation and arbitration proceedings.  Mr. Brandenberg's litigation experience has encompassed matters involving contract disputes, corporate fraud, defective pricing, intellectual property infringement, business valuation, lost profits quantification, and purchase price disputes.

- Consulted multinational integrated oil & gas company in a purchase price dispute concerning its pro-forma accounting for fuel transportation costs at over 1,600 divested retail convenience locations

- Developed and supported settlement calculations for express freight client in their negotiations with the United States Postal Service concerning the alleged misreporting of mail volumes in the outsourcing of all USPS overnight package deliveries in the United States

- Valued mortgage backed securities issued as part of over 25 securitizations in which the residential mortgage loans underlying the securities were allegedly not underwritten according to the standards represented in their respective prospectuses

Intellectual Property Services

Mr. Brandenberg has provided assistance to clients in a number of areas concerning intellectual property. These experiences have included matters involving the provision of expert testimony in infringement suits, valuations, reasonable royalty rate studies and contractual compliance reviews of licensing relationships ("royalty audits").  The subject matter of his engagements has involved industries including pharmaceuticals, not-for-profits, and financial services, among others.

- Quantified profits earned by defendant due to sale of catalytic diffuser products infringing plaintiff trademarks

- Through consideration of the *Georgia-Pacific* factors, determined a reasonable royalty for the patented technology embodied in the market leading animal deshedding tool

- Assessed reasonable royalty rate for a professional photographer's portfolio of copyrighted works that were misappropriated and posted on Usenet, a worldwide Internet-based discussion system

- Investigated two firms contractual compliance with their licensing of select images from the world's largest art collection maintained by a global religious organization

Forensic Investigations

Mr. Brandenberg has assisted in the identification, recovery and analysis of historic accounting and financial records with the purpose of understanding the propriety, compliance or regularity of transactions and processes. These services have often been conducted in an active litigation environment.

- Led the electronic data recovery and analysis components of investigations into fraud, waste and abuse at the federally subsidized housing authorities in the U.S. Virgin Islands and Miami

- Investigated allegations of financial statement fraud concerning the valuation of vehicle and parts inventories at a nationwide dealer of commercial trucks

- Analyzed and quantified alleged fraud and false claims in a private insurer's administration of insurance policies reinsured through the Federal government's crop insurance program

Valuation Services

Mr. Brandenberg has provided valuation services to companies ranging in size from several billion dollars in sales to small, privately held and family owned operations. He has valued companies and intangible assets in numerous industries including manufacturing, distribution, consumer goods, restaurants, real estate, technology, telecommunications, pharmaceuticals, medical devices and financial services. Mr. Brandenberg has prepared valuations for purposes of financial reporting, litigation, management planning, merger and acquisition, bankruptcy, and gift and estate tax matters.

- Allocated the purchase price of all the U.S. operations of a food ingredients manufacturer acquired by a Danish multinational specialty food manufacturer

- Allocated purchase price to the acquired assets of the leading brand of shave preparation products in the United States

- Valued a controlling interest in an international air freight firm for gift and estate tax purposes

- Appraised the stock of a multi-billion dollar dermatological pharmaceuticals firm