# Exhibit 5A

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| PUBLIC EMPLOYEES' RETIREMENT SYSTEM OF MISSISSIPPI, et al., Individually and On Behalf of All Others Similarly Situated, <br><br>                   Plaintiffs, <br><br>       v. <br><br> MERRILL LYNCH & CO. INC., et al., <br><br>                   Defendants. | Civil Action No. 08-cv-10841-JSR-JLC <br> ECF case <br><br> <u>CLASS ACTIONS - CONSOLIDATED</u> |

**DECLARATION OF DAVID R. STICKNEY, IN SUPPORT OF LEAD COUNSEL'S**
**MOTION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF**
**LITIGATION EXPENSES FILED ON BEHALF OF**
**<u>BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP</u>**

David R. Stickney, declares as follows:

1.    I am a member of the law firm of Bernstein Litowitz Berger & Grossmann LLP. I submit this declaration in support of my firm's application for an award of attorneys' fees in connection with services rendered in the above-captioned action (the "Action"), as well as for reimbursement of expenses incurred by my firm in connection with the Action.

2.    My firm, which is the Court-appointed Lead Counsel in this Action, represents Lead Plaintiff Public Employees' Retirement System of Mississippi and Plaintiff Los Angeles County Employees Retirement Association. As Lead Counsel, my firm was responsible for the overall prosecution of the Action and was actively involved in all aspects of the litigation set forth in my declaration in support of Lead Plaintiff's motion for final approval of the settlement, approval of the plan of allocation and our motion for an award of attorneys' fees and litigation expenses.

3.    The schedule attached hereto as Exhibit 1 is a summary indicating the amount of

time spent by each attorney and professional support staff of my firm who was involved in litigating this Action, and the lodestar calculation based on my firm's current billing rates. For personnel who are no longer employed by my firm, the lodestar calculation is based upon the billing rates for such personnel in his or her final year of employment by my firm. The schedule was prepared from contemporaneous daily time records regularly prepared and maintained by my firm, which are available at the request of the Court. Time expended in preparing this application for fees and reimbursement of expenses has not been included in this request.

4.    The hourly rates for the attorneys and professional support staff in my firm included in Exhibit 1 are the same as the regular current rates charged for their services in non-contingent matters and/or which have been accepted in other securities or shareholder litigation.

5.    The total number of hours expended on this Action by my firm from its inception through February 14, 2012 is 47,573.75. The total lodestar for my firm is $19,103,151.25, consisting of $18,212,048.75 for attorneys' time and $891,102.50 for professional support staff time.

6.    My firm's lodestar figures are based upon the firm's billing rates, which rates do not include charges for expense items. Expense items are billed separately and such charges are not duplicated in my firm's billing rates.

7.    As detailed in the schedule attached hereto as Exhibit 2, my firm has incurred a total of $3,201,388.54 in unreimbursed expenses in connection with the prosecution of this Action from its inception through February 14, 2012.

8.    The expenses incurred in this Action are reflected on the books and records of my firm. These books and records are prepared from expense vouchers, check records and other source materials and are an accurate record of the expenses incurred.

9.      With respect to the standing of my firm, attached hereto as Exhibit 3 is a brief biography of my firm and attorneys in my firm who were principally involved in this Action.

I declare, under penalty of perjury, that the foregoing facts are true and correct.  Executed on February 15, 2012.

_____
David R. Stickney

# 619987

3

# Exhibit 1

**EXHIBIT 1**

*Public Employees' Retirement System of Mississippi, et al., v. Merrill Lynch & Co. Inc., et al.*
Civil Action No. 08-cv-10841-JSR-JLC

**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**

**TIME REPORT**

**Inception through February 14, 2012**

| NAME | HOURS | HOURLY RATE | LODESTAR |
|---|---|---|---|
| **Partners** | | | |
| Max Berger | 182.00 | 975.00 | $    177,450.00 |
| Timothy DeLange | 1,472.00 | 700.00 | 1,030,400.00 |
| Chad Johnson | 16.25 | 800.00 | 13,000.00 |
| Gerald Silk | 234.00 | 800.00 | 187,200.00 |
| David Stickney | 1,191.25 | 800.00 | 953,000.00 |
| David Wales | 1,032.75 | 750.00 | 774,562.50 |
| | | | |
| **Senior Counsel** | | | |
| Rochelle Hansen | 25.00 | 675.00 | 16,875.00 |
| Niki Mendoza | 104.50 | 600.00 | 62,700.00 |
| Amy Miller | 96.50 | 575.00 | 55,487.50 |
| | | | |
| **Associates** | | | |
| Ian Berg | 135.50 | 475.00 | 64,362.50 |
| David Duncan | 81.50 | 425.00 | 34,637.50 |
| Nick Goseland | 47.25 | 350.00 | 16,537.50 |
| Paul Jonna | 625.00 | 425.00 | 265,625.00 |
| Matthew Jubenville | 2,026.75 | 450.00 | 912,037.50 |
| Takeo Kellar | 1,025.50 | 475.00 | 487,112.50 |
| Ann Lipton | 229.75 | 490.00 | 112,577.50 |
| Sean O'Dowd | 1,045.00 | 475.00 | 496,375.00 |
| David Thorpe | 271.00 | 450.00 | 121,950.00 |
| Jeroen Van Kwawegen | 1,051.50 | 500.00 | 525,750.00 |
| | | | |
| **Staff Attorneys** | | | |
| Maria Alburquerque | 1,439.75 | 375.00 | 539,906.25 |
| Alex Bates | 41.50 | 395.00 | 16,392.50 |
| Brian Bault | 569.00 | 340.00 | 193,460.00 |
| Rafael Bonilla | 672.75 | 340.00 | 228,735.00 |
| Midwin Charles | 394.25 | 395.00 | 155,728.75 |
| Vidal Cordova | 420.75 | 375.00 | 157,781.25 |
| Michael Dallal | 1,000.25 | 375.00 | 375,093.75 |

| NAME | HOURS | HOURLY RATE | LODESTAR |
|---|---|---|---|
| Melodie Dan | 612.75 | 340.00 | 208,335.00 |
| Robert Dannhauser | 774.75 | 340.00 | 263,415.00 |
| Andrew Deddeh | 595.00 | 340.00 | 202,300.00 |
| Pete DeVolpi | 1,143.25 | 340.00 | 388,705.00 |
| Giovanni Diluca | 1,208.00 | 340.00 | 410,720.00 |
| Adam Donaton | 1,689.25 | 375.00 | 633,468.75 |
| Andria Eguia | 420.50 | 340.00 | 142,970.00 |
| Ashley Few | 1,862.00 | 340.00 | 633,080.00 |
| Amy Francisco | 755.50 | 375.00 | 283,312.50 |
| Alexander Guiha | 604.25 | 340.00 | 205,445.00 |
| Kevin Harrington | 97.25 | 340.00 | 33,065.00 |
| Elaine Ho | 793.75 | 340.00 | 269,875.00 |
| David Hollingsworth | 610.00 | 340.00 | 207,400.00 |
| Lindsay van Housen | 615.75 | 340.00 | 209,355.00 |
| Annie Hu | 88.00 | 340.00 | 29,920.00 |
| Jonathan Kaplan | 628.75 | 340.00 | 213,775.00 |
| Gina Kim | 1,457.75 | 375.00 | 546,656.25 |
| Andrew Kushnick | 1,035.00 | 375.00 | 388,125.00 |
| Charielou Legaspi | 196.50 | 340.00 | 66,810.00 |
| Cindy Levine | 274.25 | 375.00 | 102,843.75 |
| Steven McKany | 993.00 | 340.00 | 337,620.00 |
| Paula Miller | 1,316.00 | 395.00 | 519,820.00 |
| Joy A. Nesbitt-Sajous | 323.00 | 395.00 | 127,585.00 |
| Daniel Neustadt | 557.75 | 375.00 | 209,156.25 |
| Brian Nielsen | 321.00 | 340.00 | 109,140.00 |
| Anjula Prasad | 342.25 | 395.00 | 135,188.75 |
| Jacob Pyle | 598.00 | 340.00 | 203,320.00 |
| Deborah Resnicov | 302.75 | 340.00 | 102,935.00 |
| Danielle Restiaux | 39.25 | 395.00 | 15,503.75 |
| Michelle Samuels | 1,422.25 | 340.00 | 483,565.00 |
| Ian Schuler | 524.25 | 340.00 | 178,245.00 |
| Elsie Secoquian | 672.50 | 375.00 | 252,187.50 |
| Nathan Shultz | 1,035.00 | 375.00 | 388,125.00 |
| Andrew Tolan | 76.00 | 395.00 | 30,020.00 |
| Alina Tsirkin | 994.00 | 375.00 | 372,750.00 |
| Douglas Upton | 992.75 | 340.00 | 337,535.00 |
| Garrett Wait | 660.50 | 340.00 | 224,570.00 |
| Anting Wang | 384.75 | 375.00 | 144,281.25 |
| Mark Weaver | 978.50 | 375.00 | 366,937.50 |
| Brandon Zapf | 762.50 | 340.00 | 259,250.00 |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

| NAME | HOURS | HOURLY RATE | LODESTAR |
|---|---|---|---|
| **Investigators** | | | |
| Amy Bitkower | 14.25 | 465.00 | 6,626.25 |
| Joelle (Sfeir) Landino | 35.75 | 265.00 | 9,473.75 |
| | | | |
| **Litigation Support** | | | |
| Jesse Baidoe | 35.75 | 260.00 | 9,295.00 |
| Michael Hartling | 27.50 | 225.00 | 6,187.50 |
| Fred Reyes | 123.50 | 260.00 | 32,110.00 |
| Andrea R. Webster | 294.75 | 290.00 | 85,477.50 |
| | | | |
| **Law Clerk** | | | |
| Reza Wrathall | 27.50 | 325.00 | 8,937.50 |
| | | | |
| **Paralegals** | | | |
| Ricia Augusty | 701.00 | 290.00 | 203,290.00 |
| Yvette Badillo | 26.00 | 290.00 | 7,540.00 |
| Maureen Duncan | 12.25 | 290.00 | 3,552.50 |
| Larry Silvestro | 18.50 | 290.00 | 5,365.00 |
| Gary Weston | 37.00 | 290.00 | 10,730.00 |
| Lisa Cox | 126.50 | 265.00 | 33,522.50 |
| Virginia Gonzales | 27.25 | 250.00 | 6,812.50 |
| Sam Jones | 356.25 | 245.00 | 87,281.25 |
| Kaye A. Martin | 827.75 | 265.00 | 219,353.75 |
| Aaron McNaughton | 14.00 | 245.00 | 3,430.00 |
| Ruben Montilla | 20.50 | 225.00 | 4,612.50 |
| Kelly Nester | 93.00 | 225.00 | 20,925.00 |
| Kristina Sousek | 50.75 | 245.00 | 12,433.75 |
| | | | |
| **Financial Analysts** | | | |
| Adam Weinschel | 13.00 | 375.00 | 4,875.00 |
| Amanda Beth Hollis | 14.50 | 295.00 | 4,277.50 |
| Sharon Safran | 48.00 | 295.00 | 14,160.00 |
| Ryan S. Ting | 41.50 | 235.00 | 9,752.50 |
| | | | |
| **Case Analyst** | | | |
| Clayton Ramsey | 158.75 | 225.00 | 35,718.75 |
| | | | |
| **Document Clerks** | | | |
| Michael Andres | 104.50 | 190.00 | 19,855.00 |
| Kevin Kazules | 134.25 | 190.00 | 25,507.50 |
| | | | |
| **TOTAL LODESTAR** | **47,573.75** | | **$19,103,151.25** |

# Exhibit 2

**EXHIBIT 2**

*Public Employees' Retirement System of Mississippi, et al., v. Merrill Lynch & Co. Inc., et al.*
Civil Action No. 08-cv-10841-JSR-JLC

**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**

**EXPENSE REPORT**

**Inception through February 14, 2012**

| CATEGORY | AMOUNT |
|---|---|
| Court Fees | $ 1,041.00 |
| Service of Process | 13,791.43 |
| On-Line Legal Research | 53,388.38 |
| On-Line Factual Research | 10,046.33 |
| Telephones | 721.32 |
| Postage & Express Mail | 8,259.53 |
| Hand Delivery Charges | 1,855.36 |
| Local Transportation | 10,590.68 |
| Internal Copying | 38,104.75 |
| Outside Copying | 41,923.06 |
| Out of Town Travel | 57,983.78 |
| Working Meals | 15,326.66 |
| Court Reporting & Transcripts | 7,169.48 |
| Special Publications | 38.45 |
| Staff Overtime | 3,647.70 |
| Temporary Litigation Support | 13,411.66 |
| Experts/Consultants | 1,042,695.30 |
| Mediation Fees | 35,650.00 |
| **SUBTOTAL:** | **$1,355,644.87** |
| | |
| **Outstanding Invoices:** | |
| Experts/Consultants | 1,267,605.57 |
| Document Management/Litigation Support | 510,759.98 |
| Court Reporters and Transcripts | 64,763.45 |
| Outside Copying | 2,614.67 |
| | |
| **TOTAL EXPENSES:** | **$3,201,388.54** |

# Exhibit 3

# BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP

### ATTORNEYS AT LAW

### NEW YORK • CALIFORNIA • LOUISIANA

## FIRM RESUME

Visit our web site at www.blbglaw.com for the most up-to-date information on the firm, its lawyers and practice groups.

Bernstein Litowitz Berger & Grossmann LLP, a national law firm with offices located in New York, California and Louisiana, prosecutes class and private actions on behalf of individual and institutional clients. The firm's litigation practice areas include securities class and direct actions in federal and state courts; corporate governance and shareholder rights litigation, including claims for breach of fiduciary duty and proxy violations; mergers and acquisitions and transactional litigation; intellectual property; alternative dispute resolution; distressed debt and bankruptcy; civil rights and employment discrimination; consumer class actions and antitrust. We also handle, on behalf of major institutional clients and lenders, more general complex commercial litigation involving allegations of breach of contract, accountants' liability, breach of fiduciary duty, fraud, and negligence.

We are the nation's leading firm in representing institutional investors in securities fraud class action litigation. The firm's institutional client base includes the New York State Common Retirement Fund, the California Public Employees Retirement System (CalPERS), and the Ontario Teachers' Pension Plan Board, the largest public pension funds in North America, collectively managing nearly $500 billion in assets; the Los Angeles County Employees' Retirement Association (LACERA); the Chicago Municipal, Police and Labor Retirement Systems; the State of Wisconsin Investment Board; the Retirement Systems of Alabama; the Connecticut Retirement Plans and Trust Funds; the City of Detroit Pension Systems; the Houston Firefighters' and Municipal Employees' Pension Funds; the Louisiana School, State, Teachers and Municipal Police Retirement Systems; the Public School Teachers' Pension and Retirement Fund of Chicago; the New Jersey Division of Investment of the Department of the Treasury; TIAA-CREF and other private institutions; as well as numerous other public and Taft-Hartley pension entities.

Since its founding in 1983, Bernstein Litowitz Berger & Grossmann LLP has litigated some of the most complex cases in history and has obtained over $20 billion on behalf of investors. Unique among its peers, the firm has negotiated the largest settlements ever agreed to by public companies related to securities fraud, and obtained four of the ten largest securities recoveries in history.

As Co-Lead Counsel for the Class representing Lead Plaintiff the New York State Common Retirement Fund in *In re WorldCom, Inc. Securities Litigation*, arising from the financial fraud and subsequent bankruptcy at WorldCom, Inc., we obtained unprecedented settlements totaling more than $6 billion from the investment bank defendants who underwrote WorldCom bonds, the second largest securities recovery in history. Additionally, the former WorldCom Director Defendants agreed to pay over $60 million to settle the claims against them. An unprecedented first for outside directors, $24.75 million of that amount is coming out of the pockets of the individuals – 20% of their collective net worth. Also, after four weeks of trial, Arthur Andersen, WorldCom's former auditor, settled for $65 million. In July 2005, settlements were reached with the former executives of WorldCom, bringing the total obtained for the Class to over $6.15 billion.

The firm was also Co-Lead Counsel in *In re Cendant Corporation Securities Litigation*, which settled for more than $3 billion in cash. This settlement, the largest sums ever recovered from a public company and a public accounting firm, includes some of the most significant corporate governance changes ever achieved through securities class action litigation. The firm represented Lead Plaintiffs CalPERS, the New York State Common Retirement Fund, and the New York City Pension Funds on behalf of all purchasers of Cendant securities during the Class Period. The firm also recovered over $1.3 billion for investors in Nortel Networks, and the settlements in *In re McKesson HBOC Inc. Securities Litigation* totaled over $1 billion in monies recovered for investors. Additionally, the firm was lead counsel in the celebrated *In re Washington Public Power Supply System Litigation*, which, after seven years of litigation and three months of jury trial, resulted in what was then the largest securities fraud recovery ever – over $750 million.

A leader in representing institutional shareholders in litigation arising from the widespread stock options backdating scandals of recent years, the firm recovered nearly $920 million in ill-gotten compensation directly from former officers and directors in the *UnitedHealth Group, Inc. Shareholder Derivative Litigation*. The largest derivative recovery in history, the settlement is notable for holding individual wrongdoers accountable for their role in illegally backdating stock options, as well as for the company's agreement to far-reaching reforms to curb future executive compensation abuses. (Court approval of the recovery is pending.)

The firm's prosecution of Arthur Andersen LLP, for Andersen's role in the 1999 collapse of the Baptist Foundation of Arizona ("BFA"), received intense national and international media attention. As lead trial counsel for the defrauded BFA investors, the firm obtained a cash settlement of $217 million from Andersen in May 2002, after six days of what was scheduled to be a three month trial. The case was covered in great detail by *The Wall Street Journal, The New York Times, The Washington Post*, "60 Minutes II," National Public Radio, and the BBC, as well as various other international news outlets.

The firm is also a recognized leader in representing the interests of shareholders in M&A litigation arising from transactions that are structured to unfairly benefit the company's management or directors at the shareholder's expense. For example, in the high-profile *Caremark Takeover Litigation,* the firm obtained a landmark ruling from the Delaware Court of Chancery ordering Caremark's board to disclose previously withheld information, enjoin a shareholder vote on CVS' merger offer, and grant statutory appraisal rights to Caremark shareholders. CVS was ultimately forced to raise its offer by $7.50 per share, equal to more than $3 billion in additional consideration to Caremark shareholders.

Equally important, Bernstein Litowitz Berger & Grossmann LLP has successfully advanced novel and socially beneficial principles by developing important new law in the areas in which we litigate.

The firm served as co-lead counsel on behalf of Texaco's African-American employees in *Roberts v. Texaco Inc*., which similarly resulted in a recovery of $176 million, the largest settlement ever in a race discrimination case. The creation of a Task Force to oversee Texaco's human resources activities for five years was unprecedented and served as a model for public companies going forward.

More recently, BLB&G prosecuted the *In re Pfizer, Inc. Derivative Litigation*, which resulted in a historic $75 million dedicated fund to be used solely to support the activities of an unprecedented Regulatory and Compliance Committee created in the settlement, which not only materially enhances the Pfizer board's oversight but may set a new benchmark of good corporate governance for all highly regulated companies. The action arose from Pfizer's illegal marketing of prescription drugs which resulted in one of the largest health care frauds in history.

In addition, on behalf of twelve public pension funds, including the New York State Common Retirement Fund, CalPERS, LACERA, and other institutional investors, the firm successfully prosecuted *McCall v. Scott*, a derivative suit filed against the directors and officers of Columbia/HCA Healthcare Corporation, the subject of the largest health care fraud investigation in history. This settlement included a landmark corporate governance plan which went well beyond all recently enacted regulatory reforms, greatly enhancing the corporate governance structure in place at HCA.

The firm also represents intellectual property holders who are victims of infringement in litigation against some of the largest companies in the world. Our areas of specialty practice include patents, copyrights, trademarks, trade dress, and trade-secret litigation, and our attorneys are recognized by industry observers for their excellence.

In the consumer field, the firm has gained a nationwide reputation for vigorously protecting the rights of individuals and for achieving exceptional settlements. In several instances, the firm has obtained recoveries for consumer classes that represented the entirety of the class' losses – an extraordinary result in consumer class cases.

Our firm is dedicated to litigating with the highest level of professional competence, striving to secure the maximum possible recovery for our clients in the most efficient and professionally responsible manner. In those cases where we have served as either lead counsel or as a member of plaintiffs' executive committee, the firm has recovered billions of dollars for our clients.

# THE FIRM'S PRACTICE AREAS

## Securities Fraud Litigation

Securities fraud litigation is the cornerstone of the firm's litigation practice. Since its founding, the firm has tried and settled many high profile securities fraud class actions and continues to play a leading role in major securities litigation pending in federal and state courts. Moreover, since passage of the Private Securities Litigation Reform Act of 1995, which sought to encourage institutional investors to become more pro-active in securities fraud class action litigation, the firm has become the nation's leader in representing institutional investors in securities fraud and derivative litigation. The firm has the distinction of having prosecuted many of the most complex and high-profile cases in securities law history, recovering billions of dollars and obtaining unprecedented corporate governance reforms on behalf of our clients.

The firm also pursues direct actions in securities fraud cases when appropriate. By selectively opting-out of certain securities class actions we seek to resolve our clients' claims efficiently and for substantial multiples of what they might otherwise recover from related class action settlements.

The attorneys in the securities fraud litigation practice group have extensive experience in the laws that regulate the securities markets and in the disclosure requirements of corporations that issue publicly traded securities. Many of the attorneys in this practice group also have accounting backgrounds. The group has access to state-of-the-art, online financial wire services and databases, which enables it to instantaneously investigate any potential securities fraud action involving a public company's debt and equity securities.

## Corporate Governance and Shareholders' Rights

The corporate governance and shareholders' rights practice group prosecutes derivative actions, claims for breach of fiduciary duty and proxy violations on behalf of individual and institutional investors in state and federal courts throughout the country. The group has prosecuted actions challenging numerous highly publicized corporate transactions which violated fair process and fair price, and the applicability of the business judgment rule. The group has also addressed issues of corporate waste, shareholder voting rights claims, and executive compensation. As a result of the firm's high profile and widely recognized capabilities, the corporate governance practice group is increasingly in demand by institutional investors who are exercising a more assertive voice with corporate boards regarding corporate governance issues and the board's accountability to shareholders.

The firm is actively involved in litigating numerous cases in this area of law, an area that has become increasingly important in light of efforts by various market participants to buy companies from their public shareholders "on the cheap."

## Employment Discrimination and Civil Rights

The employment discrimination and civil rights practice group prosecutes class and multi-plaintiff actions, and other high impact litigation against employers and other societal institutions that violate federal or state employment, anti-discrimination, and civil rights laws. The practice group represents diverse clients on a wide range of issues including Title VII actions, race, gender, sexual orientation and age discrimination suits, sexual harassment and "glass ceiling" cases in which otherwise qualified employees are passed over for promotions to managerial or executive positions.

Bernstein Litowitz Berger & Grossmann LLP is committed to effecting positive social change in the workplace and in society. The practice group has the necessary financial and human resources to ensure that the class action approach to discrimination and civil rights issues is successful. This litigation method serves to empower employees and other civil rights victims, who are usually discouraged from pursuing litigation because of personal financial

limitations, and offers the potential for effecting the greatest positive change for the greatest number of people affected by discriminatory practice in the workplace.

## Intellectual Property

BLB&G's Intellectual Property Litigation practice group is dedicated to protecting the creativity and innovation of individuals and firms. Patent cases exemplify the type of complex, high-stakes litigation in which we specialize. Our areas of concentration include patent, trademark, false advertising, copyright, and trade-secret litigation. We have successfully prosecuted these actions against infringers in both federal and state courts across the country, in foreign courts and before administrative bodies. The firm is currently prosecuting patent cases on behalf of inventors in a variety of industries including electronics, liquid crystal display ("LCD") panels, and computer technology.

## General Commercial Litigation and Alternative Dispute Resolution

The General Commercial Litigation practice group provides contingency fee representation in complex business litigation and has obtained substantial recoveries on behalf of investors, corporations, bankruptcy trustees, creditor committees and other business entities. We have faced down powerful and well-funded law firms and defendants — and consistently prevailed.

However, not every dispute is best resolved through the courts. In such cases, BLB&G Alternative Dispute practitioners offer clients an accomplished team and a creative venue in which to resolve conflicts outside of the litigation process. BLB&G has extensive experience — and a marked record of successes — in ADR practice. For example, in the wake of the credit crisis, we successfully represented numerous former executives of a major financial institution in arbitrations relating to claims for compensation. Our attorneys have led complex business-to-business arbitrations and mediations domestically and abroad representing clients before all the major arbitration tribunals, including the American Arbitration Association (AAA), FINRA, JAMS, International Chamber of Commerce (ICC) and the London Court of International Arbitration.

## Distressed Debt and Bankruptcy Creditor Negotiation

BLB&G Distressed Debt and Bankruptcy Creditor Negotiation group has obtained billions of dollars through litigation on behalf of bondholders and creditors of distressed and bankrupt companies, as well as through third party litigation brought by bankruptcy trustees and creditor's committees against auditors, appraisers, lawyers, officers and directors, and others defendant who may have contributed to a clients' losses. As counsel, we advise institutions and individuals nationwide in developing strategies and tactics to recover assets presumed lost as a result of bankruptcy. Our record in this practice area is characterized by extensive trial experience in addition to completion of successful settlements.

## Consumer Advocacy

The consumer advocacy practice group at Bernstein Litowitz Berger & Grossmann LLP prosecutes cases across the entire spectrum of consumer rights, consumer fraud, and consumer protection issues. The firm represents victimized consumers in state and federal courts nationwide in individual and class action lawsuits that seek to provide consumers and purchasers of defective products with a means to recover their damages. The attorneys in this group are well versed in the vast array of laws and regulations that govern consumer interests and are aggressive, effective, court-tested litigators. The consumer practice advocacy group has recovered hundreds of millions of dollars for millions of consumers throughout the country. Most notably, in a number of cases, the firm has obtained recoveries for the class that were the entirety of the potential damages suffered by the consumer. For example, in actions against MCI and Empire Blue Cross, the firm recovered all of the damages suffered by the class. The group achieved its successes by advancing innovative claims and theories of liabilities, such as obtaining decisions in Pennsylvania and Illinois appellate courts that adopted a new theory of consumer damages in mass marketing cases. Bernstein Litowitz Berger & Grossmann LLP is, thus, able to lead the way in protecting the rights of consumers.

4

# THE COURTS SPEAK

Throughout the firm's history, many courts have recognized the professional competence and diligence of the firm and its members.  A few examples are set forth below.

Judge Denise Cote (United States District Court for the Southern District of New York) has noted, several times on the record, the quality of BLB&G's representation of the Class in *In re WorldCom, Inc. Securities Litigation*.  Judge Cote on December 16, 2003:

> "I have the utmost confidence in plaintiffs' counsel . . . they have been doing a superb
> job. . . .  The Class is extraordinarily well represented in this litigation."

In granting final approval of the $2.575 billion settlement obtained from the Citigroup Defendants, Judge Cote again praised BLB&G's efforts:

> "The magnitude of this settlement is attributable in significant part to Lead Counsel's
> advocacy and energy....The quality of the representation given by Lead Counsel...has
> been superb...and is unsurpassed in this Court's experience with plaintiffs' counsel in
> securities litigation. Lead Counsel has been energetic and creative…. Its negotiations
> with the Citigroup Defendants have resulted in a settlement of historic proportions."

*   *   *

In February 2005, at the conclusion of trial of *In re Clarent Corporation Securities Litigation*, The Honorable Charles R. Breyer of the United States District Court for the Northern District of California praised the efforts of counsel: "It was the best tried case I've witnessed in my years on the bench….[A]n extraordinarily civilized way of presenting the issues to you [the jury]….We've all been treated to great civility and the highest professional ethics in the presentation of the case…. The evidence was carefully presented to you….They got dry subject matter and made it interesting… [brought] the material alive… good trial lawyers can do that…. I've had fascinating criminal trials that were far less interesting than this case. [I]t's a great thing to be able to see another aspect of life… It keeps you young…vibrant… [and] involved in things… These trial lawyers are some of the best I've ever seen."

*   *   *

"I do want to make a comment again about the excellent efforts…[these] firms put into this case and achieved. Earlier this year, I wrote a decision in *Revlon* where I actually replaced plaintiff's counsel because they hadn't seemed to do the work, or do a good job…In doing so, what I said and what I meant was that I think class and derivative litigation is important; that I am not at all critical of class and derivative litigation, and that I think it has significant benefits in terms of what it achieves for stockholders, or it can.  It doesn't have to act as a general tax for the sale of indulgences for deals.  This case, I think, shows precisely the type of benefits that you can achieve for stockholders and how representative litigation can be a very important part of our corporate governance system.  So, if you had book ends, you would put the *Revlon* situation on one book end and you'd put this case on the other book end. You'd hold up the one as an example of what not to do, and you hold up this case as an example of what to do."

Vice Chancellor J. Travis Laster, Delaware Court of Chancery praising the firm's work in the *Landry's Restaurants, Inc. Shareholder Litigation* on October 6, 2010

*   *   *

In granting the Court's approval of the resolution and prosecution of *McCall v. Scott*, a shareholder derivative lawsuit against certain former senior executives of HCA Healthcare (formerly Columbia/HCA), Senior Judge Thomas A. Higgins (United States District Court, Middle District of Tennessee) said that the settlement "confers an

5

exceptional benefit upon the company and the shareholders by way of the corporate governance plan. . . . Counsel's excellent qualifications and reputations are well documented in the record, and they have litigated this complex case adeptly and tenaciously throughout the six years it has been pending. They assumed an enormous risk and have shown great patience by taking this case on a contingent basis, and despite an early setback they have persevered and brought about not only a large cash settlement but sweeping corporate reforms that may be invaluable to the beneficiaries."

\*   \*   \*

Judge Walls (District of New Jersey), in approving the $3.2 billion *Cendant* settlement, said that the recovery from all defendants, which represents a 37% recovery to the Class, "far exceeds recovery rates of any case cited by the parties." The Court also held that the $335 million separate recovery from E&Y is "large" when "[v]iewed in light of recoveries against accounting firms for securities damages." In granting Lead Counsel's fee request, the Court determined that "there is no other catalyst for the present settlement than the work of Lead Counsel. . . . This Court, and no other judicial officer, has maintained direct supervision over the parties from the outset of litigation to the present time. In addition to necessary motion practice, the parties regularly met with and reported to the Court every five or six weeks during this period about the status of negotiations between them. . . . [T]he Court has no reason to attribute a portion of the Cendant settlement to others' efforts; Lead Counsel were the only relevant material factors for the settlement they directly negotiated." The Court found that "[t]he quality of result, measured by the size of settlement, is very high. . . . The Cendant settlement amount alone is over three times larger than the next largest recovery achieved to date in a class action case for violations of the securities laws, and approximately ten times greater than any recovery in a class action case involving fraudulent financial statements. . . The E&Y settlement is the largest amount ever paid by an accounting firm in a securities class action." The Court went on to observe that "the standing, experience and expertise of the counsel, the skill and professionalism with which counsel prosecuted the case and the performance and quality of opposing counsel were high in this action. Lead Counsel are experienced securities litigators who ably prosecuted the action." The Court concluded that this Action resulted in "excellent settlements of uncommon amount engineered by highly skilled counsel with reasonable cost to the class."

\*   \*   \*

After approving the settlement in *Alexander v. Pennzoil Company*, the Honorable Vanessa D. Gilmore of the United States District Court for the Southern District of Texas ended the settlement hearing by praising our firm for the quality of the settlement and our commitment to effectuating change in the workplace.   "... the lawyers for the plaintiffs ... did a tremendous, tremendous job. ... not only in the monetary result obtained, but the substantial and very innovative programmatic relief that the plaintiffs have obtained in this case ... treating people fairly and with respect can only inure to the benefit of everybody concerned.  I think all these lawyers did an outstanding job trying to make sure that that's the kind of thing that this case left behind."

\*   \*   \*

On February 23, 2001, the United States District Court for the Northern District of California granted final approval of the $259 million cash settlement in *In re 3Com Securities Litigation*, the largest settlement of a securities class action in the Ninth Circuit since the Private Securities Litigation Reform Act was passed in 1995, and the fourth largest recovery ever obtained in a securities class action.  The district court, in an Order entered on March 9, 2001, specifically commented on the quality of counsel's efforts and the settlement, holding that "counsel's representation [of the class] was excellent, and ... the results they achieved were substantial and extraordinary."  The Court described our firm as "among the most experienced and well qualified in this country in [securities fraud] litigation."

\*   \*   \*

United States District Judge Todd J. Campbell of the Middle District of Tennessee heard arguments on Plaintiffs' Motion for Preliminary Injunction in *Cason v. Nissan Motor Acceptance Corporation Litigation*, the highly publicized discriminatory lending class action, on September 5, 2001. He exhibited his own brand of candor in commenting on the excellent work of counsel in this matter: "In fact, the lawyering in this case... is as good as I've seen in any case. So y'all are to be commended for that."

6

\*   \*   \*

In approving the $30 million settlement in the *Assisted Living Concepts, Inc. Securities Litigation*, the Honorable Ann L. Aiken of the Federal District Court in Oregon, praised the recovery and the work of counsel. She stated that, "...without a doubt...this is a...tremendous result as a result of very fine work...by the...attorneys in this case."

\*   \*   \*

The Honorable Judge Edward A. Infante of the United States District Court for the Northern District of California expressed high praise for the settlement and the expertise of plaintiffs' counsel when he approved the final settlement in the *Wright v. MCI Communications Corporation* consumer class action. "The settlement. . . . is a very favorable settlement to the class. . . . to get an 85% result was extraordinary, and plaintiffs' counsel should be complimented for it on this record. . . .  The recommendations of experienced counsel weigh heavily on the court. The lawyers before me are specialists in class action litigation.  They're well known to me, particularly Mr. Berger, and I have confidence that if Mr. Berger and the other plaintiffs' counsel think this is a good, well-negotiated settlement, I find it is."  The case was settled for $14.5 million.

\*   \*   \*

At the *In re Computron Software, Inc. Securities Litigation* settlement hearing, Judge Alfred J. Lechner, Jr. of the United States District Court for the District of New Jersey approved the final settlement and commended Bernstein Litowitz Berger & Grossmann's efforts on behalf of the Class.  "I think the job that was done here was simply outstanding.  I think all of you just did a superlative job and I'm appreciat[ive] not only for myself, but the court system and the plaintiffs themselves.  The class should be very, very pleased with the way this turned out, how expeditiously it's been moved."

\*   \*   \*

The *In re Louisiana-Pacific Corporation Securities Litigation*, filed in the United States District Court, District of Oregon, was a securities class action alleging fraud and misrepresentations in connection with the sale of defective building materials.  Our firm, together with co-lead counsel, negotiated a settlement of $65.1 million, the largest securities fraud settlement in Oregon history, which was approved by Judge Robert Jones on February 12, 1997. The Court there recognized that ". . . the work that is involved in this case could only be accomplished through the unique talents of plaintiffs' lawyers . . . which involved a talent that is not just simply available in the mainstream of litigators."

\*   \*   \*

Judge Kimba M. Wood of the United States District Court for the Southern District of New York, who presided over the six-week securities fraud class action jury trial in *In re ICN/Viratek Securities Litigation*, also recently praised our firm for the quality of the representation afforded to the class and the skill and expertise demonstrated throughout the litigation and trial especially.  The Court commented that ". . . plaintiffs' counsel did a superb job here on behalf of the class. . .  This was a very hard fought case.  You had very able, superb opponents, and they put you to your task. . .  The trial work was beautifully done and I believe very efficiently done. . ."

\*   \*   \*

Similarly, the Court in the *In re Prudential-Bache Energy Income Partnership Securities Litigation*, United States District Court, Eastern District of Louisiana, recognized Bernstein Litowitz Berger & Grossmann LLP's  ". . . professional standing among its peers."  In this case, which was settled for $120 million, our firm served as Chair of the Plaintiffs' Executive Committee.

\*   \*   \*

In the landmark securities fraud case,  *In re Washington Public Power Supply System Litigation* (United States District Court, District of Arizona), the district court called the quality of representation "exceptional," noting that "[t]his was a case of overwhelmingly unique proportions. . . a rare and exceptional case involving extraordinary services on behalf of Class plaintiffs."  The Court also observed that "[a] number of attorneys dedicated significant portions of their professional careers to this litigation, . . . champion[ing] the cause of Class members in the face of commanding and vastly outnumbering opposition. . . [and] in the face of uncertain victory. . . .  [T]hey succeeded admirably."

*    *    *

Likewise, in *In re Electro-Catheter Securities Litigation*, where our firm served as co-lead counsel, Judge Nicholas Politan of the United States District Court for New Jersey said, "Counsel in this case are highly competent, very skilled in this very specialized area and were at all times during the course of the litigation...always well prepared, well spoken, and knew their stuff and they were a credit to their profession.  They are the top of the line."

*    *    *

In our ongoing prosecution of the *In re Bennett Funding Group Securities Litigation*, the largest "Ponzi scheme" fraud in history, partial settlements totaling over $140 million have been negotiated for the class.  While the action continues to be prosecuted against other defendants, the United States District Court for the Southern District of New York has already found our firm to have been "extremely competent" and of "great skill" in representing the class.

*    *    *

Judge Sarokin of the United States District Court for the District of New Jersey, after approving the $30 million settlement in *In re First Fidelity Bancorporation Securities Litigation*, a case in which were lead counsel, praised the ". . . outstanding competence and performance" of the plaintiffs' counsel and expressed "admiration" for our work in the case.

## RECENT ACTIONS & SIGNIFICANT RECOVERIES

Bernstein Litowitz Berger & Grossmann LLP is counsel in many diverse nationwide class and individual actions and has obtained many of the largest and most significant recoveries in history.  Some examples from our practice groups include:

## Securities Class Actions

***In re WorldCom, Inc. Securities Litigation*** -- (United States District Court for the Southern District of New York) The largest securities fraud class action in history. The court appointed BLB&G client the **New York State Common Retirement Fund** as Lead Plaintiff and the firm as Lead Counsel for the class in this securities fraud action arising from the financial fraud and subsequent bankruptcy at WorldCom, Inc. The complaints in this litigation alleged that WorldCom and others disseminated false and misleading statements to the investing public regarding its earnings and financial condition in violation of the federal securities and other laws. As a result, investors suffered tens of billions of dollars in losses.  The Complaint further alleged a nefarious relationship between Citigroup subsidiary Salomon Smith Barney and WorldCom, carried out primarily by Salomon employees involved in providing investment banking services to WorldCom (most notably, Jack Grubman, Salomon's star telecommunications analyst), and by WorldCom's former CEO and CFO, Bernard J. Ebbers and Scott Sullivan, respectively. On November 5, 2004, the Court granted final approval of the $2.575 billion cash settlement to settle all claims against the Citigroup defendants.  In mid-March 2005, on the eve of trial, the 13 remaining "underwriter defendants," including J.P. Morgan Chase, Deutsche Bank and Bank of America, agreed to pay settlements totaling nearly $3.5 billion to resolve all claims against them, bringing the total over $6 billion.  Additionally, by March 21, 2005, the day before trial was scheduled to begin, all of the former WorldCom Director Defendants had agreed to pay over $60 million to settle the claims against them.  An unprecedented first for outside directors, $24.75 million of that amount came out of the pockets of the individuals – 20% of their collective net worth.  The case generated headlines across the country – and across the globe.  In the words of Lynn Turner, a former SEC chief accountant, the settlement sent a message to directors "that their own personal wealth is at risk if they're not diligent in their jobs." After four weeks of trial, Arthur Andersen, WorldCom's former auditor, settled for $65 million.  In July 2005, settlements were reached with the former executives of WorldCom, bringing the total obtained for the Class to over $6.15 billion.

***In re Cendant Corporation Securities Litigation*** -- (United States District Court, District of New Jersey) Securities class action filed against Cendant Corporation, its officers and directors and Ernst & Young (E&Y), its auditors. Cendant settled the action for $2.8 billion and E&Y settled for $335 million.  The settlements are the third largest in history in a securities fraud action.  Plaintiffs alleged that the company disseminated materially false and misleading financial statements concerning CUC's revenues, earnings and expenses for its 1997 fiscal year.  As a result of company-wide accounting irregularities, Cendant restated its financial results for its 1995, 1996 and 1997 fiscal years and all fiscal quarters therein.  A major component of the settlement was Cendant's agreement to adopt some of the most extensive corporate governance changes in history. The firm represented Lead Plaintiffs **CalPERS – the California Public Employees Retirement System**, the **New York State Common Retirement Fund** and the **New York City Pension Funds**, the three largest public pension funds in America, in this action.

***Baptist Foundation of Arizona v. Arthur Andersen, LLP*** -- (Superior Court of the State of Arizona in and for the County of Maricopa) Firm client, the **Baptist Foundation of Arizona Liquidation Trust** ("BFA") filed a lawsuit charging its former auditors, the "Big Five" accounting firm of Arthur Andersen LLP, with negligence in conducting its annual audits of BFA's financial statements for a 15-year period beginning in 1984, and culminating in BFA's bankruptcy in late 1999. Investors lost hundreds of millions of dollars as a result of BFA's demise. The lawsuit alleges that Andersen ignored evidence of corruption and mismanagement by BFA's former senior management team and failed to investigate suspicious transactions related to the mismanagement. These oversights of accounting work, which were improper under generally accepted accounting principles, allowed BFA's undisclosed losses to escalate to hundreds of millions of dollars, and ultimately resulted in its demise.  On May 6, 2002, after one week of trial, Andersen agreed to pay $217 million to settle the litigation.

9

***In re Nortel Networks Corporation Securities Litigation*** -- ("Nortel II") (United States District Court for the Southern District of New York)  Securities fraud class action on behalf of persons and entities who purchased or acquired the common stock of Nortel Networks Corporation.  The action charged Nortel, and certain of its officers and directors, with violations of the Securities Exchange Act of 1934, alleging that the defendants knowingly or, at a minimum, recklessly made false and misleading statements with respect to Nortel's financial results during the relevant period.  BLB&G clients the Ontario Teachers' Pension Plan Board and the Treasury of the State of New Jersey and its Division of Investment were appointed as Co-Lead Plaintiffs for the Class, and BLB&G was appointed Lead Counsel for the Class by the court in July 2004.  On February 8, 2006, BLB&G and Lead Plaintiffs announced that they and another plaintiff had reached an historic agreement in principle with Nortel to settle litigation pending against the Company for approximately $2.4 billion in cash and Nortel common stock (all figures in US dollars). The Nortel II portion of the settlement totaled approximately $1.2 billion.  Nortel later announced that its insurers had agreed to pay $228.5 million toward the settlement, bringing the total amount of the global settlement to approximately $2.7 billion, and the total amount of the Nortel II settlement to over $1.3 billion.

***In re McKesson HBOC, Inc. Securities Litigation*** -- (United States District Court, Northern District of California) Securities fraud litigation filed on behalf of purchasers of HBOC, McKesson and McKesson HBOC securities.  On April 28, 1999, the Company issued the first of several press releases which announced that, due to its improper recognition of revenue from contingent software sales, it would have to restate its previously reported financial results.  Immediately thereafter, McKesson HBOC common stock lost $9 billion in market value.  On July 14, 1999, the Company announced that it was restating $327.8 million of revenue improperly recognized in the HBOC segment of its business during the fiscal years ending March 31, 1997, 1998 and 1999.  The complaint alleged that, during the Class Period, Defendants issued materially false and misleading statements to the investing public concerning HBOC's and McKesson HBOC's financial results, which had the effect of artificially inflating the prices of HBOC's and the Company's securities.  On September 28, 2005, the court granted preliminary approval of a $960 million settlement which BLB&G and its client, Lead Plaintiff the **New York State Common Retirement Fund**, obtained from the company.  On December 19, 2006, defendant Arthur Andersen agreed to pay $72.5 million in cash to settle all claims asserted against it.  On the eve of trial in September 2007 against remaining defendant Bear Stearns & Co. Inc., Bear Stearns, McKesson and Lead Plaintiff entered into a three-way settlement agreement that resolved the remaining claim against Bear Stearns for a payment to the class of $10 million, bringing the total recovery to more than $1.04 billion for the Class.

***HealthSouth Corporation Bondholder Litigation*** -- (United States District Court for the Northern District of Alabama {Southern Division}) On March 19, 2003, the investment community was stunned by the charges filed by the Securities and Exchange Commission against Birmingham, Alabama based HealthSouth Corporation and its former Chairman and Chief Executive Officer, Richard M. Scrushy, alleging a "massive accounting fraud." Stephen M. Cutler, the SEC's Director of Enforcement, said "HealthSouth's fraud represents an appalling betrayal of investors." According to the SEC, HealthSouth overstated its earnings by at least $1.4 billion since 1999 at the direction of Mr. Scrushy. Subsequent revelations disclosed that the overstatement actually exceeded over $2.4 billion, virtually wiping out all of HealthSouth's reported profits for the prior five years. A number of executives at HealthSouth, including its most senior accounting officers – including every chief financial officer in HealthSouth's history – pled guilty to criminal fraud charges.  In the wake of these disclosures, numerous securities class action lawsuits were filed against HealthSouth and certain individual defendants.  On June 24, 2003, the Honorable Karon O. Bowdre of the District Court appointed the **Retirement Systems of Alabama** to serve as Lead Plaintiff on behalf of a class of all purchasers of HealthSouth bonds who suffered a loss as a result of the fraud. Judge Bowdre appointed BLB&G to serve as Co-Lead Counsel for the bondholder class.  On February 22, 2006, the RSA and BLB&G announced that it and several other institutional plaintiffs leading investor lawsuits arising from the scandal had reached a class action settlement with HealthSouth, certain of the company's former directors and officers, and certain of the company's insurance carriers. The total consideration in that settlement was approximately $445 million for shareholders and bondholders.  On April 23, 2010, RSA and BLB&G announced that it had reached separate class action settlements with UBS AG, UBS Warburg LLC, Benjamin D. Lorello, William C. McGahan and Howard Capek (collectively, UBS) and with Ernst & Young LLP (E&Y). The total consideration to be paid in the UBS settlement is $100 million in cash and E&Y agreed to pay $33.5 million in cash. Bond purchasers will also receive approximately 5% of the recovery achieved in Alabama state court in a separate action brought on behalf of HealthSouth against UBS and Richard Scrushy. The total settlement for injured HealthSouth bond purchasers will be in excess of $230 million, which should recoup over a third of bond purchaser damages.

10

***Ohio Public Employees Retirement System, et al. v. Freddie Mac, et al.*** -- (United States District Court for the Southern District of Ohio {Eastern Division}) Securities fraud class action filed on behalf of the **Ohio Public Employees Retirement System** and the **State Teachers Retirement System of Ohio** against the Federal Home Loan Mortgage Corporation ("Freddie Mac") and certain of its current and former officers. The Class included all purchasers of Freddie Mac common stock during the period July 15, 1999 through June 6, 2003. The Complaint alleged that Freddie Mac and certain current or former officers of the Company issued false and misleading statements in connection with Company's previously reported financial results. Specifically, the complaint alleged that the defendants misrepresented the Company's operations and financial results by having engaged in numerous improper transactions and accounting machinations that violated fundamental GAAP precepts in order to artificially smooth the Company's earnings and to hide earnings volatility. On November 21, 2003, Freddie Mac restated its previously reported earnings in connection with these improprieties, ultimately restating more than $5.0 billion in earnings. In October 2005, with document review nearly complete, Lead Plaintiffs began deposition discovery. On April 25, 2006, the parties reported to the Court that they had reached an agreement in principle to settle the case for $410 million.  On October 26, 2006, the Court granted final approval of the settlement.

***In re Washington Public Power System Litigation*** -- (United States District Court, District of Arizona) Commenced in 1983, the firm was appointed Chair of the Executive Committee responsible for litigating the action on behalf of the class.  The action involved an estimated 200 million pages of documents produced in discovery; the depositions of 285 fact witnesses and 34 expert witnesses; more than 25,000 introduced exhibits; six published district court opinions; seven appeals or attempted appeals to the Ninth Circuit; and a three-month jury trial, which resulted in a settlement of over $750 million – then the largest securities fraud settlement ever achieved.

***In re Wachovia Preferred Securities and Bond/Notes Litigation*** -- (United States District Court, Southern District of New York) Securities class action, filed on behalf of certain Wachovia bonds or preferred securities purchasers, against Wachovia Corp., certain former officers and directors, various underwriters, and its auditor, KPMG LLP. The case alleges that Wachovia provided offering materials that misrepresented and omitted material facts concerning the nature and quality of Wachovia's multi-billion dollar option-ARM (adjustable rate mortgage) "Pick-A-Pay" mortgage loan portfolio, and that Wachovia violated Generally Accepted Accounting Principles ("GAAP") by publicly disclosing loan loss reserves that were materially inadequate at all relevant times.  According to the Complaint, these undisclosed problems threatened the viability of the financial institution, requiring it to be "bailed out" during the financial crisis before it was acquired by Wells Fargo & Company in 2008.  Wachovia and its affiliated entities settled the action for $590 million, while KPMG agreed to pay $37 million. The combined $627 million recovery is among the 15 largest securities class action recoveries in history and the largest to date obtained in an action arising from the subprime mortgage crisis.  It also is believed to be the largest settlement ever in a class action case asserting only claims under the Securities Act of 1933.  The case also represents one of a handful of largest securities class action recoveries ever obtained where there were no parallel civil or criminal securities fraud actions brought by government authorities.  The settlement is pending subject to final Court approval. The firm represented Co-Lead Plaintiffs **Orange County Employees' Retirement System** and **Louisiana Sheriffs' Pension and Relief Fund** in this action.

***In re Lucent Technologies, Inc. Securities Litigation*** -- (United States District Court for the District of New Jersey) A securities fraud class action filed on behalf of purchasers of the common stock of Lucent Technologies, Inc. from October 26, 1999 through December 20, 2000. In the action, BLB&G served as Co-Lead Counsel for the shareholders and Lead Plaintiffs, the **Parnassus Fund** and **Teamsters Locals 175 & 505 D&P Pension Trust**, and also represented the **Anchorage Police and Fire Retirement System** and the **Louisiana School Employees' Retirement System**. Lead Plaintiffs' complaint charged Lucent with making false and misleading statements to the investing public concerning its publicly reported financial results and failing to disclose the serious problems in its optical networking business. When the truth was disclosed, Lucent admitted that it had improperly recognized revenue of nearly $679 million in fiscal 2000. On September 23, 2003, the Court granted preliminary approval of the agreement to settle this litigation, a package valued at approximately $600 million composed of cash, stock and warrants.  The appointment of BLB&G as Co-Lead Counsel is especially noteworthy as it marked the first time since the 1995 passage of the Private Securities Litigation Reform Act that a court reopened the lead plaintiff or lead counsel selection process to account for changed circumstances, new issues and possible conflicts between new and old allegations.

*In re Refco, Inc. Securities Litigation* -- (United States District Court of the Southern District of New York) Securities fraud class action on behalf of persons and entities who purchased or acquired the securities of Refco, Inc. ("Refco" or the "Company") during the period from July 1, 2004 through October 17, 2005.  The lawsuit arises from the revelation that Refco, a once prominent brokerage, had for years secreted hundreds of millions of dollars of uncollectible receivables with a related entity controlled by Phillip Bennett, the Company's Chairman and Chief Executive Officer. This revelation caused the stunning collapse of the Company a mere two months after its August 10, 2005 initial public offering of common stock, As a result, Refco filed one of the largest bankruptcies in U.S. history as a result. Settlements have been obtained from multiple company and individual defendants, and the total recovery for the Class is expected to be in excess of $407 million.

*In re Williams Securities Litigation* -- (United States District Court for the Northern District of Oklahoma) Securities fraud class action filed on behalf of a class of all persons or entities that purchased or otherwise acquired certain securities of The Williams Companies.   The action alleged securities claims pursuant to Section 10(b) of the Securities Exchange Act of 1934 and Section 11 of the Securities Act of 1933.  After a massive discovery and intensive litigation effort, which included taking more than 150 depositions and reviewing in excess of 18 million pages of documents, BLB&G and its clients, the Arkansas Teacher Retirement System and the Ontario Teachers' Pension Plan Board, announced an agreement to settle the litigation against all defendants for $311 million in cash on June 13, 2006.  The recovery is among the largest ever in a securities class action in which the corporate defendant did not restate its financial results.

*In re DaimlerChrysler Securities Litigation* -- (United States District Court for the District of Delaware) A securities class action filed against defendants DaimlerChrysler AG, Daimler-Benz AG and two of DaimlerChrysler's top executives, charging that Defendants acted in bad faith and misrepresented the nature of the 1998 merger between Daimler-Benz AG and the Chrysler Corporation. According to plaintiffs, defendants framed the transaction as a "merger of equals," rather than an acquisition, in order to avoid paying an "acquisition premium." Plaintiffs' Complaint alleges that Defendants made this representation to Chrysler shareholders in the August 6, 1998 Registration Statement, Prospectus, and Proxy, leading 97% of Chrysler shareholders to approve the merger. BLB&G is court-appointed Co-Lead Counsel for Co-Lead Plaintiffs the **Chicago Municipal Employees Annuity and Benefit Fund** and the **Chicago Policemen's Annuity and Benefit Fund**. BLB&G and the Chicago funds filed the action on behalf of investors who exchanged their Chrysler Corporation shares for DaimlerChrysler shares in connection with the November 1998 merger, and on behalf of investors who purchased DaimlerChrysler shares in the open market from November 13, 1998 through November 17, 2000.  The action settled for $300 million.

*In re The Mills Corporation Securities Litigation* -- (United States District Court, Eastern District of Virginia) On July 27, 2007, BLB&G and **Mississippi Public Employees' Retirement System** ("Mississippi") filed a Consolidated Complaint against The Mills Corporation ("Mills" or the "Company"), a former real estate investment trust, certain of its current and former senior officers and directors, its independent auditor, Ernst & Young LLP, and its primary joint venture partner, the KanAm Group.  This action alleged that, during the Class Period, Mills issued financial statements that materially overstated the Company's actual financial results and engaged in accounting improprieties that enabled it to report results that met or exceeded the market's expectations and resulted in the announcement of a restatement.  Mills conducted an internal investigation into its accounting practices, which resulted in the retirement, resignation and termination of 17 Company officers and concluded, among other things, that: (a) there had been a series of accounting violations that were used to "meet external and internal financial expectations;" (b) there were a set of accounting errors that were not "reasonable and reached in good faith" and showed "possible misconduct;" and (c) the Company "did not have in place fully adequate accounting information systems, personnel, formal policies and procedures, supervision, and internal controls."  On December 24, 2009, the Court granted final approval of settlements with the Mills Defendants ($165 million), Mills' auditor Ernst & Young ($29.75 million), and the Kan Am Defendants ($8 million), bringing total recoveries obtained for the class to $202.75 million plus interest. This settlement represents the largest recovery ever achieved in a securities class action in Virginia, and the second largest ever achieved in the Fourth Circuit Court of Appeals.

***In re Washington Mutual, Inc., Securities Litigation*** -- (United States District Court, Western District of Washington) Securities class action filed against Washington Mutual, Inc., certain of its officers and executive officers, and its auditor, Deloitte & Touche LLP. In one of the largest settlements achieved in a case related to the fallout of the financial crisis, Washington Mutual's directors and officers agreed to pay $105 million, the Underwriter Defendants (consisting of several large Wall Street banks) agreed to pay $85 million, and Deloitte agreed to pay $18.5 million to settle all claims, for a total settlement of $208.5 million. Plaintiffs allege that Washington Mutual, aided by the Underwriter Defendants and Deloitte, misled investors into investing in Washington Mutual securities by making false statements about the nature of the company's lending business, which had been marketed as low-risk and subject to strict lending standards. The action alleges that when Washington Mutual experienced a severe drop in the value of its assets and net worth during the financial crisis, it became evident that the losses were related to its increasing focus on high-risk and experimental mortgages, and their gradual abandonment of proper standards of managing, conducting and accounting for its business. The firm represented the **Ontario Teachers' Pension Plan Board** in this case. The settlement is pending subject to final Court approval.

***Wells Fargo Mortgage Pass-Through Litigation*** -- (United States District Court, Northern District of California) Securities class action filed against Wells Fargo, N.A. and certain related defendants. After extensive litigation and discovery, Wells Fargo agreed to pay $125 million to resolve all claims against all defendants. This is the first settlement of a class action asserting Securities Act claims related to the issuance of mortgage-backed securities. Plaintiffs allege that the Offering Documents related to the issuance of mortgage pass-through certificates contained untrue statements and omissions related to the quality of the underlying mortgage loans and that Wells Fargo had disregarded or abandoned its loan underwriting and loan origination standards. The firm represented **Alameda County Employees' Retirement Association**, the **Government of Guam Retirement Fund**, the **Louisiana Sheriffs' Pension and Relief Fund** and the **New Orleans Employees' Retirement System** in this action. The settlement is pending subject to final Court approval.

***In re New Century Securities Litigation*** -- (United States District Court, Central District of California) Securities class action against New Century Financial Corp., certain of its officers and directors, its auditor, KPMG LLP, and certain underwriters. This action arises from the sudden collapse of New Century, a now bankrupt mortgage finance company focused on the subprime market, and alleges that throughout the Class Period, the defendants artificially inflated the price of the Company's securities through false and misleading statements concerning the significant risks associated with its mortgage lending business. In particular, the Company and the Individual Defendants failed to disclose that New Century maintained grossly inadequate reserves against losses associated with loan defaults and delinquencies. These understated reserves, which detract directly from earnings, caused the Company to significantly overstate its publicly reported earnings. The defendants also falsely represented internal controls relating to loan origination, loan underwriting and financial reporting existed at all or were effective. Following extensive negotiations, the parties settled the litigation for a total of approximately $125 million, a feat characterized by numerous industry observers as "enormously difficult given the number of parties, the number of proceedings, the number of insurers, and the amount of money at stake" (*The D&O Diary*). The firm represented Lead Plaintiff the **New York State Teachers' Retirement System** in this action.

## Corporate Governance and Shareholders' Rights

***UnitedHealth Group, Inc. Shareholder Derivative Litigation*** -- (United States District Court, District of Minnesota) Shareholder derivative action filed on behalf of Plaintiffs the St. Paul Teachers' Retirement Fund Association, the Public Employees' Retirement System of Mississippi, the Jacksonville Police & Fire Pension Fund, the Louisiana Sheriffs' Pension & Relief Fund, the Louisiana Municipal Police Employees' Retirement System and Fire & Police Pension Association of Colorado ("Public Pension Funds"). The action was brought in the name and for the benefit of UnitedHealth Group, Inc. ("UnitedHealth" or the "Corporation") against certain current and former executive officers and members of the Board of Directors of UnitedHealth. It alleged that defendants obtained, approved and/or acquiesced in the issuance of stock options to senior executives that were unlawfully backdated to provide the recipients with windfall compensation at the direct expense of UnitedHealth and its shareholders. The firm recovered nearly $920 million in ill-gotten compensation directly from the former officer defendants – the largest derivative recovery in history. The settlement is notable for holding these individual wrongdoers

13

accountable for their role in illegally backdating stock options, as well as for the fact that the company agreed to far-reaching reforms to curb future executive compensation abuses.  As feature coverage in *The New York Times* indicated, "investors everywhere should applaud [the UnitedHealth settlement]….[T]he recovery sets a standard  of behavior for other companies and boards when performance pay is later shown to have been based on ephemeral earnings."

***Caremark Merger Litigation*** -- (Delaware Court of Chancery - New Castle County)  Shareholder class action against the directors of Caremark RX, Inc. ("Caremark") for violations of their fiduciary duties arising from their approval and continued endorsement of a proposed merger with CVS Corporation ("CVS") and their refusal to consider fairly an alternative transaction proposed by Express Scripts, Inc. ("Express Scripts").  On December 21, 2006, BLB&G commenced this action on behalf of the **Louisiana Municipal Police Employees' Retirement System** and other Caremark shareholders in order to force the Caremark directors to comply with their fiduciary duties and otherwise obtain the best value for shareholders.  In a landmark decision issued on February 23, 2007, the Delaware Court of Chancery ordered the defendants to disclose additional material information that had previously been withheld, enjoined the shareholder vote on the CVS transaction until the additional disclosures occurred, and granted statutory appraisal rights to Caremark's shareholders.  The Court also heavily criticized the conduct of the Caremark board of directors and, although declining to enjoin the shareholder vote on procedural grounds, noted that subsequent proceedings will retain the power to make shareholders whole through the availability of money damages.  The lawsuit forced CVS to increase the consideration offered to Caremark shareholders by a total of $7.50 per share in cash (over $3 billion in total), caused Caremark to issue a series of additional material disclosures, and twice postponed the shareholder vote to allow shareholders sufficient time to consider the new information.  On March 16, 2007, Caremark shareholders voted to approve the revised offer by CVS.

***In re Pfizer Inc. Shareholder Derivative Litigation*** -- (United States District Court, Southern District of New York)  Shareholder derivative action brought by Court-appointed Lead Plaintiffs **Louisiana Sheriffs' Pension and Relief Fund** ("LSPRF") and **Skandia Life Insurance Company, Ltd.** ("Skandia") and fellow shareholders, in the name and for the benefit of Pfizer Inc. ("Pfizer" or the "Company"), against members of the Board of Directors and senior executives of the Company.  On September 2, 2009, the U.S. Department of Justice announced that Pfizer agreed to pay $2.3 billion as part of a settlement to resolve civil and criminal charges regarding the illegal marketing of at least 13 of the Company's most important drugs – including the largest criminal fine ever imposed for any matter and the largest civil health care fraud settlement in history.  The Complaint alleged that Pfizer's senior management and Board breached their fiduciary duties to Pfizer by, among other things, allowing unlawful promotion of drugs to continue after receiving numerous "red flags" that Pfizer's improper drug marketing was systemic and widespread.  The Parties engaged in extensive discovery between March 31, 2010 and November 12, 2010, including discovery-related evidentiary hearings before the Court, the production by Defendants and various third parties of millions of pages of documents.  On December 14, 2010, the Court granted preliminary approval of a proposed settlement.  Under the terms of the proposed settlement, Defendants agree to create a new Regulatory and Compliance Committee of the Pfizer Board of Directors (the "Regulatory Committee") that will exist for a term of at least five years.  The Committee will have a broad mandate to oversee and monitor Pfizer's compliance and drug marketing practices and, together with Pfizer's Compensation Committee, to review the compensation policies for Pfizer's drug sales related employees.  The new Regulatory Committee's activities will be supported by a dedicated fund of $75 million, minus any amounts awarded by the Court to Plaintiffs' Counsel as attorneys' fees and expenses.  The proposed settlement also provides for the establishment of an Ombudsman Program as an alternative channel to address employee concerns about legal or regulatory issues.

***In re ACS Shareholder Litigation (Xerox)*** -- (Delaware Court of Chancery)  Shareholder class action  filed on behalf of the **New Orleans Employees' Retirement System** ("NOERS") and similarly situated shareholders of Affiliated Computer Service, Inc. ("ACS" or the "Company"), against members of the Board of Directors of ACS ("the Board"), Xerox Corporation ("Xerox"), and Boulder Acquisition Corp. ("Boulder"), a wholly owned subsidiary of Xerox.  The action alleged that the members of the ACS Board breached their fiduciary duties by approving a merger with Xerox which would allow Darwin Deason, ACS's founder and Chairman and largest stockholder, to extract hundreds of millions of dollars of value that rightfully belongs to ACS's public shareholders for himself.  Per the agreement, Deason's consideration amounted to over a 50% premium when compared to the consideration paid to ACS's public stockholders. The ACS Board further breached its fiduciary duties by agreeing to certain deal protections in the merger agreement, including an approximately 3.5% termination fee and a no-

solicitation provision.  These deal protections, along with the voting agreement that Deason signed with Xerox (which required him under certain circumstances to pledge half of his voting interest in ACS to Xerox) essentially locked-up the transaction between ACS and Xerox.  Plaintiffs, therefore, sought a preliminary injunction to enjoin the deal.  After intense discovery and litigation, the parties also agreed to a trial in May 2010 to resolve all outstanding claims.  On May 19, 2010, Plaintiffs reached a global settlement with defendants for $69 million.  In exchange for the release of all claims, Deason agreed to pay the settlement class $12.8 million while ACS agreed to pay the remaining $56.1 million.  The Court granted final approval to the settlement on August 24, 2010.

***In re Dollar General Corporation Shareholder Litigation*** -- (Sixth Circuit Court for Davidson County, Tennessee; Twentieth Judicial District, Nashville)  Class action filed against Dollar General Corporation ("Dollar General" or the "Company") for breaches of fiduciary duty related to its proposed acquisition by the private equity firm Kohlberg Kravis Roberts & Co. ("KKR"), and against KKR for aiding and abetting those breaches.  A Nashville, Tennessee corporation that operates retail stores selling discounted household goods, in early March 2007, Dollar General announced that its board of directors had approved the acquisition of the Company by KKR.  On March 13, 2007, BLB&G filed a class action complaint alleging that the "going private" offer was approved as a result of breaches of fiduciary duty by the board and that the price offered by KKR did not reflect the fair value of Dollar General's publicly-held shares.   The Court appointed BLB&G Co-Lead Counsel and **City of Miami General Employees' & Sanitation Employees' Retirement Trust** as Co-Lead Plaintiff.  On the eve of the summary judgment hearing, KKR agreed to pay a $40 million settlement in favor of the shareholders, with a potential for $17 million more for the Class.

***Landry's Restaurants, Inc. Shareholder Litigation*** -- (Delaware Court of Chancery)  A derivative and shareholder class action arising from the conduct of Landry's Restaurants, Inc.'s ("Landry's" or "the Company") chairman, CEO and largest shareholder, Tilman J. Fertitta ("Fertitta").  Fertitta and Landry's board of directors (the "Board") breached their fiduciary duties by stripping Landry's public shareholders of their controlling interest in the Company for no premium and severely devalued Landry's remaining public shares. In June 2008 Fertitta agreed to pay $21 per share to Landry's public shareholders to acquire the approximately 61% of the Company's shares that he did not already own (the "Buyout").  Fertitta planned to finance the Buyout by obtaining funds from a number of lending banks. In September 2008 before the Buyout closed, Hurricane Ike struck Texas and damaged certain of the Company's restaurants and properties.  Fertitta used this natural disaster, and the general state of the national economy, to leverage renegotiation of the Buyout.  By threatening the Board that the lending banks might invoke the material adverse effect clause of the Buyout's debt commitment letter – even though no such right existed – Fertitta drastically reduced his purchase price to $13.50 a share in an amended agreement announced on October 18, 2008 (the "Amended Transaction"). In the wake of this announcement, Landry's share price plummeted, and Fertitta took advantage of Landry's depressed stock price by accumulating shares on the open market.  Despite the Board's recognition of Fertitta's stock accumulation outside the terms of the Amended Transaction, it did nothing to protect the interests of Landry's minority shareholders.  By December 2, 2008, Fertitta owned more than 50% of the Company, and sought to escape his obligations under the amended agreement. Roughly one month later, Fertitta and the lending banks used a routine request of the Company to cause the Board to terminate the Amended Transaction, thereby allowing Fertitta to avoid paying a termination fee. On February 5, 2009, BLB&G filed a lawsuit on behalf of Plaintiff **Louisiana Municipal Police Employees' Retirement System** and other public shareholders, and derivatively on behalf of Landry's, against Fertitta and the Board seeking to enforce the Buyout and various other reliefs.  On November 3, 2009, Landry's announced that its Board approved a new deal with Fertitta, whereby Fertitta would acquire the approximately 45% of Landry's outstanding stock that he does not already own for $14.75 per share in cash (the "Proposed Transaction"). On November 12, 2009, the Court granted Plaintiff's motion to supplement its original complaint to add additional claims involving breaches of fiduciary duty by Fertitta and the Landry's Board related to the Proposed Transaction.

After over a year of intensive litigation in which the Court denied defendants' motion to dismiss on all grounds, settlements were reached resolving all claims asserted against Defendants, which included the creation of a settlement fund composed of $14.5 million in cash.   With respect to the conduct surrounding the 2009 Proposed Transaction, the settlement terms included significant corporate governance reforms, and an increase in consideration to shareholders of the purchase price valued at $65 million.

15

***In re Yahoo! Inc., Takeover Litigation*** -- (Delaware Court of Chancery)  Shareholder class action filed on behalf of the Police & Fire Retirement System of the City of Detroit and the General Retirement System of the City of Detroit (collectively "Plaintiffs") (the "Detroit Funds"), and all other similarly situated public shareholders (the "Class") of Yahoo! Inc. ("Yahoo" or the "Company").   The action alleged that the Board of Directors at Yahoo breached their fiduciary duties by refusing to respond in good faith to Microsoft Corporation's ("Microsoft") non-coercive offer to acquire Yahoo for $31 per share - a 62% premium above the $19.18 closing price of Yahoo common stock on January 31, 2008. The initial complaint filed on February 21, 2008 alleged that Yahoo pursued an "anyone but Microsoft" approach, seeking improper defensive options to thwart Microsoft at the expense of Yahoo's shareholders, including transactions with Google, AOL, and News Corp. The Complaint also alleged the Yahoo Board adopted improper change-in-control employee severance plans designed to impose tremendous costs and risks for an acquirer by rewarding employees with rich benefits if they quit and claimed a constructive termination in the wake of merger.  Following consolidation of related cases and appointment of BLB&G as co-lead counsel by Chancellor Chandler on March 5, 2008, plaintiffs requested expedited proceedings and immediately commenced discovery, including document reviews and depositions of certain third parties and defendants. In December 2008, the parties reached a settlement of the action which provided significant benefits to Yahoo's shareholders including substantial revisions to the two challenged Change-in-Control Employee Severance Plans that the Yahoo board of directors adopted in immediate response to Microsoft's offer back in February of 2008. These revisions included changes to the first trigger of the severance plans by modifying what constitutes a "change of control" as well as changes to the second trigger by narrowing what amounts to "good reason for termination" or when an employee at Yahoo could leave on his own accord and claim severance benefits. Finally, the settlement provided for modifications to reduce the expense of the plan.  The Court approved the settlement on March 6, 2009.

***Ceridian Shareholder Litigation*** -- (Delaware Chancery Court, New Castle County)  Shareholder litigation filed in 2007 against the Ceridian Corporation ("Ceridian" or "the Company"), its directors, and Ceridian's proposed merger partners on behalf of BLB&G client, **Minneapolis Firefighter's Relief Association** ("Minneapolis Firefighters'), and other similarly situated shareholders, alleging that the proposed transaction arose from the board of directors' breaches of their fiduciary duty to maximize shareholder value and instead was driven primarily as a means to enrich Ceridian's management at the expense of shareholders.  Ceridian is comprised primarily of two divisions: Human Resources Solutions and Comdata.  The Company's biggest shareholder pursued a proxy fight to replace the current board of directors. In response to these efforts, the Company disclosed an exploration of strategic alternatives and later announced that it had agreed to be acquired by Thomas H. Lee Partners, LP ("THL") and Fidelity National Financial, Inc. ("Fidelity"), and had entered into a definitive merger agreement in a deal that values Ceridian at $5.3 billion, or $36 per share.   In addition, Ceridian's directors were accused of manipulating shareholder elections by embedding into the merger agreement a contractual provision that allowed THL and Fidelity an option to abandon the deal if a majority of the current board is replaced. This "Election Walkaway" provision would have punished shareholders for exercising the shareholder franchise and thereby coerce the vote. The defendants were also accused of employing additional unlawful lockup provisions, including "Don't Ask Don't Waive" standstill agreements, an improper "no-shop/no-talk" provision, and a $165 million termination fee as part of the merger agreement in order to deter and preclude the successful emergence of alternatives to the deal with THL and Fidelity.  Further, in the shadow of the ongoing proxy fight, Ceridian refused to hold its annual meeting for over 13 months. Pursuant to Section 211 of the Delaware General Corporation Law, BLB&G and Minneapolis Firefighters successfully filed a petition to require that the Company hold its annual meeting promptly which resulted in an order compelling the annual meeting to take place.  BLB&G and Minneapolis also obtained a partial settlement in the fiduciary duty litigation. Pursuant to the settlement terms, the "Election Walkaway" provision in the merger agreement and the "Don't Ask Don't Waive" standstills were eliminated, letters were sent by the Ceridian board to standstill parties advising them of their right to make a superior offer, and the "no-shop/no-talk" provision in the merger agreement was amended to significantly expand the scope of competing transactions that can be considered by the Ceridian board.  On February 25, 2008, the court approved the final settlement of the action.

***McCall v. Scott*** -- (United States District Court, Middle District of Tennessee).  A derivative action filed on behalf of Columbia/HCA Healthcare Corporation – now "HCA" – against certain former senior executives of HCA and current and former members of the Board of Directors seeking to hold them responsible for directing or enabling HCA to commit the largest healthcare fraud in history, resulting in hundreds of millions of dollars of loss to HCA. The firm represented the **New York State Common Retirement Fund** as Lead Plaintiff, as well as the **California**

16

**Public Employees' Retirement System** ("**CalPERS**"), the **New York City Pension Funds**, the **New York State Teachers' Retirement System** and the **Los Angeles County Employees' Retirement Association** ("LACERA") in this action.  Although the district court initially dismissed the action, the United States Court of Appeals for the Sixth Circuit reversed that dismissal and upheld the complaint in substantial part, and remanded the case back to the district court.  On February 4, 2003, the Common Retirement Fund, announced that the parties had agreed in principle to settle the action, subject to approval of the district court.  As part of the settlement, HCA was to adopt a corporate governance plan that goes well beyond the requirements both of the Sarbanes-Oxley Act and of the rules that the New York Stock Exchange has proposed to the SEC, and also enhances the corporate governance structure presently in place at HCA.  HCA also will receive $14 million.  Under the sweeping governance plan, the HCA Board of Directors is to be substantially independent, and would have increased power and responsibility to oversee fair and accurate financial reporting.  In granting final approval of the settlement on June 3, 2003, the Honorable Senior Judge Thomas A. Higgins of the District Court said that the settlement "confers an exceptional benefit upon the company and the shareholders by way of the corporate governance plan."

***Official Committee of Unsecured Creditors of Integrated Health Services, Inc. v. Elkins, et al.*** -- (Delaware Chancery Court) The Official Committee of Unsecured Creditors (the "Committee") of Integrated Health Services ("IHS"), filed a complaint against the current and former officers and directors of IHS, a health care provider which declared bankruptcy in January 2000.  The Committee, on behalf of the Debtors Bankruptcy Estates, sought damages for breaches of fiduciary duties and waste of corporate assets in proposing, negotiating, approving and/or ratifying excessive and unconscionable compensation arrangements for Robert N. Elkins, the Company's former Chairman and Chief Executive Officer, and for other executive officers of the Company. BLB&G is a special litigation counsel to the committee in this action. The Delaware Chancery Court sustained most of Plaintiff's fiduciary duty claims against the defendants, finding that the complaint sufficiently pleaded that the defendants "consciously and intentionally disregarded their responsibilities." The Court also observed that Delaware law sets a very high bar for proving violation of fiduciary duties in the context of executive compensation. Resulting in a multi-million dollar settlement, the Integrated Health Services litigation was one of the few executive compensation cases successfully litigated in Delaware.

## Employment Discrimination and Civil Rights

***Roberts v. Texaco, Inc.*** -- (United States District Court for the Southern District of New York)  Six highly qualified African-American employees filed a class action complaint against Texaco Inc. alleging that the Company failed to promote African-American employees to upper level jobs and failed to compensate them fairly in relation to Caucasian employees in similar positions. Two years of intensive investigation on the part of the lawyers of Bernstein Litowitz Berger & Grossmann LLP, including retaining the services of high level expert statistical analysts, revealed that African-Americans were significantly under-represented in high level management jobs and Caucasian employees were promoted more frequently and at far higher rates for comparable positions within the Company.  Settled for over $170 million. Texaco also agreed to a Task Force to monitor its diversity programs for five years. The settlement has been described as the most significant race discrimination settlement in history.

***ECOA - GMAC/NMAC/Ford/Toyota/Chrysler - Consumer Finance Discrimination Litigation*** (multiple jurisdictions) -- The cases involve allegations that the lending practices of General Motors Acceptance Corporation, Nissan Motor Acceptance Corporation, Ford Motor Credit, Toyota Motor Credit and DaimlerChrysler Financial cause African-American and Hispanic car buyers to pay millions of dollars more for car loans than similarly situated white buyers. At issue is a discriminatory kickback system under which minorities typically pay about 50% more in dealer mark-up which is shared by auto dealers with the defendants.

- NMAC: In March 2003, the United States District Court for the Middle District of Tennessee granted final approval of the settlement of the class action pending against Nissan Motor Acceptance Corporation ("NMAC"). Under the terms of the settlement, NMAC agreed to offer pre-approved loans to hundreds of thousands of current and potential African-American and Hispanic NMAC customers, and limit how much it raises the interest charged to car buyers above the Company's minimum acceptable rate.  The company will also contribute $1 million to America Saves, to develop a car financing literacy program targeted toward minority consumers.  The settlement also provides for the payment of $5,000 to $20,000 to the 10 people named in the class-action lawsuit.

17

- GMAC: In March 2004, the United States District Court for the Middle District of Tennessee granted final approval of a settlement of the litigation against General Motors Acceptance Corporation ("GMAC"), in which GMAC agreed to take the historic step of imposing a 2.5% markup cap on loans with terms up to sixty months, and a cap of 2% on extended term loans. GMAC also agreed to institute a substantial credit pre-approval program designed to provide special financing rates to minority car buyers with special rate financing. The pre-approval credit program followed the example laid down in the successful program that NMAC implemented. The GMAC program extended to African-American and Hispanic customers throughout the United States and will offer no less than 1.25 million qualified applicants "no markup" loans over a period of five years. In addition, GMAC further agreed to (i) change its financing contract forms to disclose that the customer's annual percentage interest rate may be negotiable and that the dealer may retain a portion of the finance charge paid by the customer to GMAC, and (ii) to contribute $1.6 million toward programs aimed at educating and assisting consumers.

- DaimlerChrysler: In October 2005, the United States District Court for the District of New Jersey granted final approval of the settlement of BLB&G's case against DaimlerChrysler. Under the Settlement Agreement, DaimlerChrysler agreed to implement substantial changes to the Company's practices, including limiting the maximum amount of mark-up dealers may charge customers to between 1.25% and 2.5% depending upon the length of the customer's loan. In addition, the Company agreed to (i) include disclosures on its contract forms that the consumer can negotiate the interest rate with the dealer and that DaimlerChrysler may share the finance charges with the dealer, (ii) send out 875,000 pre-approved credit offers of no-mark-up loans to African-American and Hispanic consumers over the next several years, and (iii) contribute $1.8 million to provide consumer education and assistance programs on credit financing.

- Ford Motor Credit: In June 2006, the United States District Court for the Southern District of New York granted final approval of the settlement in this class action lawsuit. Under the terms of the settlement, Ford Credit agreed to make contract disclosures in the forms it creates and distributes to dealerships informing consumers that the customer's Annual Percentage Rate ("APR") may be negotiated and that sellers may assign their contracts and retain their right to receive a portion of the finance charge. Ford Credit also agreed to: (i) maintain or lower its present maximum differential between the customer APR and Ford Credit's "Buy Rate"; (ii) to contribute $2 million toward certain consumer education and assistance programs; and (iii) to fund a Diversity Marketing Initiative offering 2,000,000 pre-approved firm offers of credit to African-American and Hispanic Class Members during the next three years.

- Toyota Motor Credit: In November 2006, the United States District Court for the Central District of California granted final approval of the settlement of BLB&G's case against Toyota. Under the Settlement Agreement, Toyota agreed to limit the amount of mark-up on certain automobiles for the next three years with a cap of 2.50% on loans for terms of sixty (60) months or less; 2.00% on loans for terms of sixty-one (61) to seventy-one (71) months; and 1.75% on loans for terms of seventy-two (72) months or more. In addition, Toyota agreed to: (i) disclose to consumers that loan rates are negotiable and can be negotiated with the dealer; (ii) fund consumer education and assistance programs directed to African-American and Hispanic communities which will help consumers with respect to credit financing; (iii) offer 850,000 pre-approved, no mark-up offers of credit to African-Americans and Hispanics over the next five years; and offer a certificate of credit or cash to eligible class members.

***Alexander v. Pennzoil Company* --** (United States District Court, Southern District of Texas) A class action on behalf of all salaried African-American employees at Pennzoil alleging race discrimination in the Company's promotion, compensation and other job related practices. The action settled for $6.75 million.

***Butcher v. Gerber Products Company* --** (United States District Court, Southern District of New York) Class action asserting violations of the Age Discrimination in Employment Act arising out of the mass discharging of approximately 460 Gerber sales people, the vast majority of whom were long-term Gerber employees aged 40 and older. Settlement terms are confidential.

## Consumer Class Actions

***DoubleClick* --** (United States District Court, Southern District of New York)  Internet Privacy.  A class action on behalf of Internet users who have had personal information surreptitiously intercepted and sent to a major Internet advertising agency.   In the settlement agreement reached in this action, DoubleClick committed to a series of industry-leading privacy protections for online consumers while continuing to offer its full range of products and services.  This is likely the largest class action there has ever been - virtually every, if not every, Internet user in the United States.

***General Motors Corporation*** -- (Superior Court of New Jersey Law Division, Bergen County)  A class action consisting of all persons who currently own or lease a 1988 to 1993 Buick Regal, Oldsmobile Cutlass Supreme, Pontiac Grand Prix or Chevrolet Lumina or who previously owned or leased such a car for defective rear disc brake caliper pins which tended to corrode, creating both a safety hazard and premature wearing of the front and rear disc brakes, causing extensive economic damage.  Settled for $19.5 million.

***Wright v. MCI Communications Corporation*** -- (United States District Court, District of California)  Consumer fraud class action on behalf of individuals who were improperly charged for calls made through MCI's Automated Operator Services.  Class members in this class action received a return of more than 85% of their losses.  Settled for $14.5 million.

***Empire Blue Cross* --** (United States District Court, Southern District of New York)  Overcharging health care subscribers.  BLB&G was lead counsel in a recently approved $5.6 million settlement that represented 100% of the class' damages and offered all the overcharged subscribers 100 cents on the dollar repayment.

***DeLima v. Exxon*** -- (Superior Court of Hudson County, New Jersey)  A class action complaint alleging false and deceptive advertising designed to convince consumers who did not need high-test gasoline to use it in their cars.  A New Jersey class was certified by the court and upheld by the appellate court.  Under terms of the settlement, the class received one million $3 discounts on Exxon 93 Supreme Gasoline upon the purchase of at least 8 gallons of the gasoline.

## Toxic/Mass Torts

***Fen/Phen Litigation ("Diet Drug" Litigation)*** -- (Class action lawsuits filed in 10 jurisdictions including New York, New Jersey, Vermont, Pennsylvania, Florida, Kentucky, Indiana, Arizona, Oregon and Arkansas)  The firm played a prominent role in the nationwide "diet drug" or "fen-phen" litigation against American Home Products for the Company's sale and marketing of Redux and Pondimin.  The suits alleged that a number of pharmaceutical companies produced these drugs which, when used in combination, can lead to life-threatening pulmonary hypertension and heart valve thickening.  The complaint alleged that these manufacturers knew of or should have known of the serious health risks created by the drugs, should have warned users of these risks, knew that the fen/phen combination was not approved by the FDA, had not been adequately studied, and yet was being routinely prescribed by physicians.  This litigation led to one of the largest class action settlements in history, the multi-billion dollar Nationwide Class Action Settlement with American Home Products approved by the United States District Court for the Eastern District of Pennsylvania. In this litigation, BLB&G was involved in lawsuits filed in the 10 jurisdictions and was designated Class Counsel in the Consolidated New York and New Jersey state court litigations. Additionally, the firm was Co-Liaison Counsel in the New York litigations and served as the State Court Certified Class Counsel for the New York Certified Class to the Nationwide Settlement.

## CLIENTS AND FEES

Most of the firm's clients are referred by other clients, law firms and lawyers, bankers, investors and accountants.  A considerable number of clients have been referred to the firm by former adversaries.  We have always maintained a high level of independence and discretion in the cases we decide to prosecute.  As a result, the level of personal satisfaction and commitment to our work is high.

As stated, our client roster includes many large and well known financial and lending institutions and pension funds, as well as privately held corporate entities which are attracted to our firm because of our reputation, particular expertise and fee structure.

We are firm believers in the contingency fee as a socially useful, productive and satisfying basis of compensation for legal services, particularly in litigation.  Wherever appropriate, even with our corporate clients, we will encourage a retention where our fee is at least partially contingent on the outcome of the litigation.  This way, it is not the number of hours worked that will determine our fee but, rather, the result achieved for our client.

# IN THE PUBLIC INTEREST

Bernstein Litowitz Berger & Grossmann LLP is guided by two principles: excellence in legal work and a belief that the law should serve a socially useful and dynamic purpose. Attorneys at the firm are active in academic, community and *pro bono* activities, as well as participating as speakers and contributors to professional organizations. In addition, the firm endows a public interest law fellowship and sponsors an academic scholarship at Columbia Law School.

**The Bernstein Litowitz Berger & Grossmann Public Interest Law Fellowship**, Columbia Law School. BLB&G is committed to fighting discrimination and effecting positive social change. In support of this commitment, the firm donated funds to Columbia Law School to create the Bernstein Litowitz Berger & Grossmann Public Interest Law Fellowship. This newly endowed fund at Columbia Law School will provide Fellows with 100% of the funding needed to make payments on their law school tuition loans so long as such graduates remain in the public interest law field. The Bernstein Litowitz Berger & Grossmann Fellows will be able to leave law school free of any law school debt if they make a long term commitment to public interest law.

**Firm sponsorship of *inMotion***, New York, NY. BLB&G is a sponsor of inMotion, a non-profit organization in New York City dedicated to providing *pro bono* legal representation to indigent women, principally battered women, in connection with the myriad legal problems they face. The organization trains and supports the efforts of New York lawyers, typically associates at law firms or in-house counsel, who provide *pro bono* counsel to these women. Several members and associates of the firm volunteer their time and energies to help women who need divorces from abusive spouses, or representation on legal issues such as child support, custody and visitation. To read more about inMotion and the remarkable services it provides, visit the organization's website at www.inmotiononline.org.

**The Paul M. Bernstein Memorial Scholarship**, Columbia Law School. Paul M. Bernstein was the founding senior partner of the firm. Mr. Bernstein led a distinguished career as a lawyer and teacher and was deeply committed to the professional and personal development of young lawyers. The Paul M. Bernstein Memorial Scholarship Fund is a gift of the firm of Bernstein Litowitz Berger & Grossmann LLP, and the family and friends of Paul M. Bernstein. Established in 1990, the scholarship is awarded annually to one or more second-year students selected for their academic excellence in their first year, professional responsibility, financial need and contributions to fellow students and the community.

**Firm sponsorship of City Year New York**, New York, NY. BLB&G is also an active supporter of City Year New York, a division of AmeriCorps. The program was founded in 1988 as a means of encouraging young people to devote time to public service and unites a diverse group of volunteers for a demanding year of full-time community service, leadership development and civic engagement. Through their service, corps members experience a rite of passage that can inspire a lifetime of citizenship and build a stronger democracy.

**Max W. Berger Pre-Law Program at Baruch College.** In order to encourage outstanding minority undergraduates to pursue a meaningful career in the legal profession, the Max W. Berger Pre-Law Program was established at Baruch College. Providing workshops, seminars, counseling and mentoring to Baruch students, the program facilitates and guides them through the law school research and application process, as well as placing them in appropriate internships and other pre-law working environments.

**New York Says Thank You Foundation.** Founded in response to the outpouring of love shown to New York City by volunteers from all over the country in the wake of the 9/11 attacks, The New York Says Thank You Foundation sends volunteers from New York City to help rebuild communities around the country affected by disasters. BLB&G is a corporate sponsor of NYSTY and its goals are a heartfelt reflection of the firm's focus on community and activism.

**THE MEMBERS OF THE FIRM**

**MAX W. BERGER** supervises the firm's litigation practice and prosecutes class and individual actions on behalf of the firm's clients.

Together, with other partners at the firm, he has litigated many of the firm's most high profile and significant cases, including five of the largest securities fraud recoveries in history – the $6.15 billion settlement of *In re WorldCom, Inc. Securities Litigation*, the $3.3 billion settlement of *In re Cendant Corporation Securities Litigation*, the $1.3 billion recovery in *In re Nortel Networks Corporation Securities Litigation*, the $1.04 billion settlement of *In re McKesson HBOC, Inc. Securities Litigation*, and the over $600 million investor recovery in *In re Lucent Technologies, Inc. Securities Litigation*.  In 2011, Mr. Berger was profiled twice as "Litigator of the Week" by *The American Lawyer* for his role in obtaining a $627 million recovery on behalf of investors in the *In re Wachovia Corp. Securities Litigation* and for his role in negotiating a $516 million recovery in *In re Lehman Brothers Equity/Debt Securities Litigation*.

Mr. Berger's role in the WorldCom case received extensive media attention and has been the subject of feature articles in major publications including *BusinessWeek* and *The American Lawyer*.  For his outstanding efforts on behalf WorldCom investors, *The National Law Journal* profiled Mr. Berger (one of only eleven attorneys selected nationwide) in its special June 2005 "Winning Attorneys" section. Additionally, Mr. Berger was featured in the July 2006 *New York Times* article, "A Class-Action Shuffle," which assessed the evolving landscape of the securities litigation arena.

Mr. Berger is widely recognized for his professional excellence and achievements. For the past six years in a row, he has received the top attorney ranking in plaintiff securities litigation by the *Chambers and Partners' Guide to America's Leading Lawyers for Business*.   He is also consistently recognized as one of New York's "local litigation stars" by *Benchmark Litigation: The Definitive Guide to America's Leading Litigation Firms & Attorneys* (published by *Institutional Investor* and *Euromoney*).  Additionally, since their various inceptions, he has been named a "litigation star" by the *Legal 500 US* guide, one of "10 Legal Superstars" by *Securities Law360*, and one of the "500 Leading Lawyers in America" and "100 Securities Litigators You Need to Know" by *Lawdragon* magazine.  Further, *The Best Lawyers in America* guide has named Mr. Berger a leading lawyer in his field.

Mr. Berger also serves the academic community in numerous capacities as a member of the Dean's Council to Columbia Law School, and as a member of the Board of Trustees of Baruch College.  He has taught Profession of Law, an ethics course at Columbia Law School, and currently serves on the Advisory Board of Columbia Law School's Center on Corporate Governance. In May 2006, he was presented with the Distinguished Alumnus Award for his contributions to Baruch College, and in February 2011, Mr. Berger received Columbia Law School's most prestigious and highest honor, "The Medal for Excellence."  This award is presented annually to Columbia Law School alumni who exemplify the qualities of character, intellect, and social and professional responsibility that the Law School seeks to instill in its students.  Most recently, Mr. Berger was profiled in the Fall 2011 issue of *Columbia Law School Magazine*.

Mr. Berger is currently a member of the New York State, New York City and American Bar Associations, and is a member of the Federal Bar Council.  His is also an advisor to the American Law Institute's Restatement Third: Economic Torts project, and is a member of the Board of Trustees of The Supreme Court Historical Society, a prestigious non-profit organization committed to preserving the history of the Supreme Court of the United States.

Mr. Berger is a past chairman of the Commercial Litigation Section of the Association of Trial Lawyers of America (now known as the American Association for Justice) and lectures for numerous professional organizations. In 1997, Mr. Berger was honored for his outstanding contribution to the public interest by Trial Lawyers for Public Justice (now known as Public Justice), where he was a "Trial Lawyer of the Year" Finalist for his work in *Roberts, et al. v. Texaco*, the celebrated race discrimination case, on behalf of Texaco's African-American employees.

Among numerous charitable and volunteer works, Mr. Berger is an active supporter of City Year New York, a division of AmeriCorps, dedicated to encouraging young people to devote time to public service. In July 2005, he was named City Year New York's "Idealist of the Year," for his long-time service and work in the community. He and his wife, Dale, have also established the Dale and Max Berger Public Interest Law Fellowship at Columbia Law School and the Max Berger Pre-Law Program at Baruch College.

EDUCATION: Baruch College-City University of New York, B.B.A., Accounting, 1968; President of the student body and recipient of numerous awards.  Columbia Law School, J.D., 1971, Editor of the *Columbia Survey of Human Rights Law*.

BAR ADMISSIONS: New York; U.S. District Courts for the Eastern and Southern Districts of New York; U.S. Court of Appeals, Second Circuit; U.S. District Court, District of Arizona; U.S. Supreme Court.

****

**CHAD JOHNSON** is involved in all areas of the firm's litigation practice, with particular emphasis on prosecuting securities fraud actions and patent litigations.

Mr. Johnson has prosecuted several of the largest securities actions in recent years, including:

- the *WorldCom, Inc. Securities Litigation*, which resulted in a recovery for investors of over $6 billion;

- the *Washington Mutual Securities Litigation*, which resulted in a recovery of $208.5 million for investors, including $85 million from the underwriters there, the largest recovery from underwriters in a Section 11 case since the WorldCom case;

- the *UnitedHealth Group* derivative action, which resulted in a recovery of over $900 million from individual defendants – the largest recovery ever in a derivative case;

- the *Williams Securities Litigation* which settled shortly before trial for $311 million;

- the *MFS*, *Pilgrim Baxter*, and *Invesco* securities actions which resulted in recoveries for investors of more than $125 million in connection with the *In re Mutual Funds Investment Litigation*; and

- the *OM Group Securities Litigation* which resulted in a recovery for investors of $92 million.

Mr. Johnson also oversees BLB&G's Intellectual Property Litigation group.  On behalf of patent owners (including inventors, private equity portfolio companies, bankruptcy trustees and others), Mr. Johnson has successfully pursued patent infringement actions against major companies including: Microsoft, Intel, Hewlett-Packard, Texas Instruments, Apple, and others.  Mr. Johnson is currently leading the firm's prosecution of actions concerning the process used overseas to manufacture LCD panels sold into the United States.  These are among the largest patent cases pending in the U.S.  Mr. Johnson is one of only 37 lawyers in the country named by *Benchmark Litigation: The Definitive Guide to America's Leading Litigation Firms & Attorneys* as an IP "national litigation star."

Mr. Johnson is an active member of the New York State and City bar associations, and is a member of the New York City Bar Securities Regulation Committee.

Prior to joining the firm, Mr. Johnson was a partner with Latham & Watkins where he practiced for ten years.  Mr. Johnson is a graduate of Harvard Law School and the University of Michigan.

EDUCATION: University of Michigan, B.A., *with high distinction;* Angell scholar.  Harvard Law School, J.D., *cum laude;* President of Harvard Law School Forum.

BAR ADMISSIONS: Illinois, District of Columbia, New York; U.S. District Court for the Southern District of New York; U.S. Courts of Appeals for the Second, Ninth, Tenth and Federal Circuits.

**GERALD H. SILK**'s practice focuses on representing institutional investors on matters involving federal and state securities laws, accountants' liability, and the fiduciary duties of corporate officials, as well as general commercial and corporate litigation.  He also advises creditors on their rights with respect to pursuing affirmative claims against officers and directors, as well as professionals both inside and outside the bankruptcy context.  Additionally, Mr. Silk is one of the partners who oversee the firm's new matter department, in which he, along with a group of financial analysts and investigators, counsels institutional clients on potential legal claims.  He was the subject of "Picking Winning Securities Cases," a feature article in the June 2005 issue of Bloomberg Markets magazine, which detailed his work for the firm in this capacity. *Lawdragon* magazine has named him one of the "100 Securities Litigators You Need to Know," one of the "500 Leading Lawyers in America," and one of America's top 500 "rising stars" in the legal profession. Mr. Silk has also been selected for inclusion among *New York Super Lawyers* every year since 2006.

Mr. Silk is currently advising institutional investors worldwide on their rights with respect to claims involving transactions in residential mortgage-backed securities (RMBS) and collateralized debt obligations (CDOs).  He is also representing Cambridge Place Investment Management Inc. on claims under Massachusetts state law against numerous investment banks arising from the purchase of billions of dollars of RMBS (see Gretchen Morgenson, "Mortgage Investors Turn to State Courts for Relief," *The New York Times*, July 11, 2010).

Mr. Silk is also representing public pension funds who participated in a securities lending program administered and managed by Northern Trust Company and sustained losses as a result of Northern Trust's alleged breaches of fiduciary duty.  In addition, he is actively involved in the firm's prosecution of highly successful M&A litigation, representing shareholders in widely publicized lawsuits, including the litigation arising from the proposed acquisition of Caremark Rx, Inc. by CVS Corporation—which led to an increase of approximately $3.5 billion in the consideration offered to shareholders.

Mr. Silk was one of the principal attorneys responsible for prosecuting the *In re Independent Energy Holdings Securities Litigation*.  A case against the officers and directors of Independent Energy as well as several investment banking firms which underwrote a $200 million secondary offering of ADRs by the U.K.-based Independent Energy, the litigation was resolved for $48 million.  Mr. Silk has also prosecuted and successfully resolved several other securities class actions, which resulted in substantial cash recoveries for investors, including *In re Sykes Enterprises, Inc. Securities Litigation* in the Middle District of Florida, and *In re OM Group, Inc. Securities Litigation* in the Northern District of Ohio.  He was also a member of the litigation team responsible for the successful prosecution of *In re Cendant Corporation Securities Litigation* in the District of New Jersey, which was resolved for $3.2 billion.

A graduate of the Wharton School of Business, University of Pennsylvania and Brooklyn Law School, in 1995-96, Mr. Silk served as a law clerk to the Hon. Steven M. Gold, U.S.M.J., in the United States District Court for the Eastern District of New York.

Mr. Silk lectures to institutional investors at conferences throughout the country, and has written or substantially contributed to several articles on developments in securities and corporate law, including "The Compensation Game," *Lawdragon*, Fall 2006; "Institutional Investors as Lead Plaintiffs: Is There A New And Changing Landscape?", 75 *St. John's Law Review* 31 (Winter 2001); "The Duty To Supervise, Poser, Broker-Dealer Law and Regulation", 3rd Ed. 2000, Chapter 15; "Derivative Litigation In New York after Marx v. Akers", *New York Business Law Journal*, Vol. 1, No. 1 (Fall 1997).

He is a frequent commentator for the business media on television and in print.  Among other outlets, he has appeared on NBC's *Today*, and CNBC's *Power Lunch*, *Morning Call*, and *Squawkbox* programs, as well as being featured in *The New York Times, Financial Times, Bloomberg, The National Law Journal*, and the *New York Law Journal*.

EDUCATION:  Wharton School of the University of Pennsylvania, B.S., Economics, 1991.  Brooklyn Law School, J.D., *cum laude,* 1995.

BAR ADMISSIONS: New York; U.S. District Courts for the Southern and Eastern Districts of New York.

**DAVID R. STICKNEY** practices in the firm's California office, where he focuses on complex litigation in state and federal courts nationwide at both the trial court and appellate levels. Mr. Stickney regularly represents institutions and individuals in class actions, derivative cases and individual litigation.

Mr. Stickney is currently responsible for a number of the firm's cases, including litigation involving *Lehman Brothers Holding Inc.*; *Merrill Lynch; Goldman Sachs; Wells Fargo*; *Bear Stearns; JP Morgan; SunPower,* and others. He has prosecuted and, together with his partners, successfully resolved a number of the firm's prominent cases. Among such cases are *In re McKesson Securities Litigation*, which settled before trial for a total of $1.023 billion, the largest settlement amount in history for any securities class action within the Ninth Circuit; *Wyatt v. El Paso Corp.*, which settled for $285 million; *BFA Liquidation Trust v. Arthur Andersen LLP*, which settled during trial for $217 million; *Atlas v. Accredited Home Lenders Holding Company*; *In re Connetics Inc.*; *In re Stone Energy Corp.*; *In re WSB Financial Group Sec. Litigation*; *In re Dura Pharmaceuticals Inc. Sec. Litigation*; *In re EMAC Sec. Litigation*, and additional cases.

Mr. Stickney lectures on securities litigation and shareholder matters for seminars and programs sponsored by professional organizations including the Practising Law Institute and Glasser Legalworks. He has also authored and co-authored several articles concerning securities litigation and class actions. He was recognized in 2008, 2009 and 2010 as a Super Lawyer in *San Diego Super Lawyers* and in the Corporate Counsel edition of *Super Lawyers (*published by *Law and Politics*). He was also named as a "Rising Star" in *Benchmark: Litigation Directory of America's Lead Litigation Firms and Attorneys*, one of only 40 attorneys selected to this list in California.

During 1996-1997, Mr. Stickney served as law clerk to the Honorable Bailey Brown of the United States Court of Appeals for the Sixth Circuit.

EDUCATION: University of California, Davis, B.A., 1993. University of Cincinnati College of Law, J.D., 1996; Jacob B. Cox Scholar; Lead Articles Editor of *The University of Cincinnati Law Review*.

BAR ADMISSIONS: California; U.S. Courts of Appeals for the Fifth, Sixth, Eighth and Ninth Circuits; U.S. District Courts for the Northern, Southern and Central Districts of California.

****

**TIMOTHY A. DeLANGE** practices in the firm's California office, where he focuses on complex litigation in state and federal courts nationwide. Mr. DeLange regularly represents institutions and individuals in class actions, derivative cases and direct actions. He is a senior member of the team prosecuting the securities class action against Washington Mutual and certain of its former officers and directors for alleged fraudulent conduct in the thrift's home lending operation. He is also a senior member of the team representing investors who were harmed by the abusive practices of the many players in the mortgage lending arena. Mr. DeLange is currently representing numerous institutions that invested directly in mortgage-backed securities, including mortgage pass-through class actions against Wells Fargo, Bear Stearns, JP Morgan, Merrill Lynch, and Goldman Sachs.

Since joining the firm, Mr. DeLange has prosecuted and successfully resolved a number of prominent securities class actions. Most recently, he served as co-lead counsel on behalf of institutional investors in *In re Maxim Integrated Products, Inc. Securities Litigation,* which settled for $173 million and represents the largest stock option backdating settlement reached in the Ninth Circuit and the third-largest backdating settlement overall. Among other major cases are *In re McKesson Securities Litigation*, which settled before trial for a total of over $1.04 billion, the largest settlement amount in history for any securities class action within the Ninth Circuit; *In re Accredo Health, Inc.,* which settled less than 6 weeks before trial for $33 million; *In re HCA, Inc.,* which settled for $20 million; and *In re Network Associates Securities Litigation*, which settled for $70 million.

Mr. DeLange has also authored and co-authored several articles concerning securities litigation and class actions.

EDUCATION: University of California, Riverside, B.A., 1994. University of San Diego School of Law, J.D., 1997; Recipient of the American Jurisprudence Award in Contracts.

25

BAR ADMISSIONS:  California; U.S. District Courts for the Northern, Eastern, Central and Southern Districts of California.

****

**DAVID L. WALES,** an experienced trial and appellate attorney, prosecutes class and private actions in both federal and state courts, specializing in complex commercial and securities litigation, as well as arbitrations.

He has taken more than 15 cases to trial, including obtaining a jury verdict for more than $11 million in a derivative action against the general partner of a hedge fund, and a multi-million dollar class action settlement with an accounting firm reached during trial.

Mr. Wales has extensive experience litigating residential mortgage backed ("RMBS") securities cases and securities lending cases. He is currently lead or co-lead counsel in the following cases:

- *Public Employees' Retirement System of Mississippi v. Merrill Lynch & Co. Inc.*, a class action on behalf of investors in RMBS ($315 million settlement granted preliminary approval);

- *Public Employees' Retirement System of Mississippi v. Goldman Sachs Group Inc.*, a class action on behalf of investors in RMBS;

- *Dexia Holdings and TIAA-CREF v. Deutsche Bank, A.G.*, two consolidated private actions on behalf of institutional investors in RMBS;

- *Cambridge Place Investment Management Inc. v. Morgan Stanley & Co., Inc.*, a private action on behalf of institutional investors in RMBS;

- *Dexia Holdings, Inc. v. Countrywide Financial Corporation*, a private action on behalf of institutional investors in Countrywide RMBS; and

- *In re Northern Trust Investments, NA.*, a securities lending case, a class action on behalf of government funds that suffered losses in Northern Trust's securities lending program.

As lead trial counsel in numerous securities class actions and derivative actions, he has recovered hundreds of millions of dollars on behalf of institutional investor clients.  Some of his significant recoveries include:

- *In re Pfizer Inc. Shareholder Derivative Action*, a $75 million settlement and substantial corporate governance changes in a derivative action;

- *In re Cablevision Systems Corp. Derivative Litigation*, a $34.4 million settlement in a back dated stock option action;

- *In re Sepracor Corp. Securities Litigation*, a $52.5 million recovery in a securities fraud class action;

- *In re Luxottica Group SpA Securities Litigation*, an $18.25 million recovery in a Williams Act case;

- *In re Marque Partners LP Derivative Action*, an $11 million jury verdict in a derivative action;

- *In re Jennifer Convertibles Securities Litigation*, a $9.55 million recovery, part of the recovery obtained in the middle of trial; and

- *In re Curative Health Services Securities Litigation*, a $10.5 million recovery in a securities fraud action.

His representative clients have included a variety of public pension funds, Taft-Hartley pension funds, insurance companies, banks, hedge funds and private investment funds.

As a former Assistant United States Attorney for the Southern District of New York, Mr. Wales specialized in investigating and prosecuting fraud and white collar criminal cases.

A member of the Federal Bar Council and the Federal Courts Committee of the New York County Lawyers Association, he is rated AV, the highest rating possible from Martindale-Hubbell®, the country's foremost legal directory.

EDUCATION:  State University of New York at Albany, B.A., *magna cum laude*, 1984.  Georgetown University Law Center, J.D., *cum laude*, 1987; Notes and Comments Editor for the *Journal of Law and Technology*.

BAR ADMISSIONS:  New York; District of Columbia; U.S. Courts of Appeals for the Second and Fourth Circuits; U.S. District Courts for the Eastern, Southern and Western Districts of New York; U.S. District Court, Eastern District of Michigan; U.S. District Court, District of Columbia; U.S. District Court, Northern District of Illinois and Trial Bar.

## SENIOR COUNSEL

**ROCHELLE FEDER HANSEN** has handled a number of high profile securities fraud cases at the firm, including *In re StorageTek Securities Litigation*, *In re First Republic Securities Litigation*, and *In re RJR Nabisco Litigation*. Ms. Hansen has also acted as Antitrust Program Coordinator for Columbia Law School's Continuing Legal Education Trial Practice Program for Lawyers.

EDUCATION:  Brooklyn College of the City University of New York, B.A., 1966; M.S., 1976.  Benjamin N. Cardozo School of Law, J.D., *magna cum laude,* 1979; Member, *Cardozo Law Review*.

BAR ADMISSIONS: New York; U.S. District Courts for the Southern and Eastern Districts of New York.

****

**NIKI L. MENDOZA** joined the San Diego office in 2002.  Since joining the firm, Ms. Mendoza has helped obtain hundreds of millions of dollars in recoveries on behalf of defrauded investors. Some of Ms. Mendoza's more notable accomplishments include participating in a full jury trial and achieving a rare securities fraud verdict against the company's CEO in *In re Clarent Corporations Securities Litigation*.  She also conducted extensive fact and expert discovery, full motion practice and completed substantial trial preparation in *In re Electronic Data Systems, Inc. Securities Litigation*, resulting in settlement just prior to trial for $137.5 million; one of the larger settlements in non-restatement cases since the passage of the PSLRA.  Ms. Mendoza also advocates for employee rights, and previously sought to end racial steering through her prosecution of a race discrimination class action lawsuit filed against Bank of America.  Ms. Mendoza also handles many of the firm's settlement matters.

Ms. Mendoza co-authored various articles which have been cited in federal court opinions (including *"Dura Pharm., Inc. v. Broudo-The Least of All Evils,"* 1505 PLI/Corp. 272, 274 (Sept. 2005) and *"Dura-Bull: Myths of Loss Causation,"* 1557 PLI/Corp. 339 (Sept. 2006).  She was also a panel speaker at the Securities Litigation & Enforcement Institute 2007, Practicing Legal Institute (San Francisco, October 2007).  In addition to her practice, Ms. Mendoza previously served as the Co-Chair of the Steering Committee of the San Diego County Bar Association's Children At Risk committee, a committee that works with schools and children's organizations and coordinates literacy and enrichment programs that rely on attorney volunteers.

Ms. Mendoza served as judicial law clerk to the Honorable Chief Judge Michael R. Hogan of the United States District Court for the District of Oregon for three years where she received the Distinguished Service Recognition. While serving as Managing Editor for the Oregon Law Review, Ms. Mendoza authored *"Rooney v. Kulungoski, Limiting The Principle of Separation of Powers?"*

Before joining BLB&G, Ms. Mendoza represented both plaintiffs and defendants in commercial and employment litigation, practicing in both Hawaii and California.  Ms. Mendoza is a member of the State Bar of California and the State Bar of Hawaii (inactive).  She practices out of the firm's California Office.

EDUCATION: University of Oregon, B.A. and J.D.; Order of the Coif; Managing Editor of the *Oregon Law Review.*

BAR ADMISSIONS:  Hawaii; California; U.S. District Courts for the Districts of Hawaii, and Northern, Southern, Central and Eastern Districts of California; U.S. Circuit Courts of Appeals for the Second, Fifth, Ninth, Tenth and Eleventh Circuits.

**AMY MILLER** works in the firm's corporate governance litigation practice. She prosecutes corporate governance and shareholder rights litigation on behalf of the firm's institutional investor clients. Her practice often focuses on merger and acquisition litigation arising from transactions that are structured to unfairly benefit the company's management or directors at the shareholders' expense, and other corporate governance disputes.

She has litigated numerous suits fighting "poison pills," "poison puts," and other defensive measures used by corporate boards to effectively sabotage buyout offers from other companies and infringe upon shareholders' voting rights. As counsel in the *Atmel Corporation Litigation*, she was a member of the team that successfully challenged the Atmel Board's novel extension of the poison pill device and obtained a revision of such pill that clarified its triggering points and provided shareholders with an opportunity to be heard in an advisory vote if Atmel adopts another poison pill in the future.

Ms. Miller also represents institutional clients seeking accountability from corporate management on issues ranging from corporate waste to breach of fiduciary duty. For example, she was a member of the team that successfully prosecuted the *In re Data Domain Shareholder Litigation*, which obtained for Data Domain shareholders an increased purchase price by forcing the Data Domain Board of Directors to negotiate with an additional potential acquirer that the Board previously refused to consider. Ms. Miller further served as a member of the team that successfully litigated breach of fiduciary claims in the *In re J.Crew Group Shareholder Litigation*, by securing an additional monetary payment for shareholders related to the sale of J.Crew and numerous corporate governance reforms to ensure a fair sales process occurred.

She was also a member of the team that successfully prosecuted the *In re ACS Shareholder Litigation*, against the Board of Directors of Affiliated Computer Service, Inc. The case alleged that the Board violated of its fiduciary duties relating to the Company's acquisition by Xerox Corporation and Boulder Acquisition Corp. by allowing the Company's founder and Chairman Darwin Deason to extract for himself millions of dollars of value that rightfully belonged to ACS's public shareholders through the proposed transaction. The firm obtained a settlement of $69 million, which included a personal payment of $12.8 million by Deason.

Ms. Miller also served as counsel in a shareholder class action and derivative suit involving Landry's Restaurants, Inc. and its Board of Directors, which alleged that the Board breached their fiduciary duties by allowing Landry's CEO and Chairman to strip Landry's public shareholders of their controlling interest in the Company for no premium – thereby severely devaluing Landry's remaining public shares. Through litigation, the firm was able to significantly increase the consideration offered to Landry's public shareholders by more than 61%, and to obtain a $14.5 million cash recovery for shareholders.

Ms. Miller is currently involved in a high profile derivative litigation as a member of the team prosecuting the derivative action on behalf of News Corporation against its Board of Directors, including Rupert Murdoch, for breaching its fiduciary duties by failing in its duty of oversight along with other corporate governance failures, which have allowed Murdoch to run the company as his own personal fiefdom and fostered a corrupt corporate culture.

In 2011, Ms. Miller authored "Rebalancing the System – Institutional Investors Fight for Corporate Governance Reform" published in the firm's quarterly newsletter *The Advocate For Institutional Investors*.

Prior to joining the firm, Ms. Miller worked at Cadwalader, Wickersham & Taft, where she participated in a number of securities and corporate governance-related litigations, which included investigations by the S.E.C., Massachusetts United States Attorney's Office and Illinois United States Attorney's Office. Ms. Miller has also participated in an externship with the Honorable George B. Daniels of the U.S. District Court for the Southern District of New York.

EDUCATION: Boston University, B.A., *magna cum laude*, 1995. New York Law School, J.D., *summa cum laude*, 2001; Member and Articles Editor, *New York Law School Law Review*; Merit Based Scholarship.

BAR ADMISSIONS: New York; U.S. District Courts for the Eastern and Southern Districts of New York.

**ASSOCIATES**

**DAVID L. DUNCAN**'s practice concentrates on the settlement of class actions and other complex litigation and the administration of class action settlements.

Prior to joining BLB&G, Mr. Duncan worked as a litigation associate at Debevoise & Plimpton, where he represented clients in a wide variety of commercial litigation, including contract disputes, antitrust and products liability litigation, and in international arbitration.  In addition, he has represented criminal defendants on appeal in New York State courts and has successfully litigated on behalf of victims of torture and political persecution from Sudan, Côte d'Ivoire and Serbia in seeking asylum in the United States.

While in law school, Mr. Duncan served as an editor of the *Harvard Law Review*.  After law school, he clerked for Judge Amalya L. Kearse of the U.S. Court of Appeals for the Second Circuit.

EDUCATION: Harvard College, A.B., Social Studies, *magna cum laude*, 1993.  Harvard Law School, J.D., *magna cum laude*, 1997.

BAR ADMISSIONS: New York; Connecticut; U.S. District Court for the Southern District of New York.

****

**PAUL M. JONNA** practices out of the firm's San Diego office, where he represents institutional investors in complex litigation and securities fraud class actions.  Currently, Mr. Jonna is a member of the teams litigating cases on behalf of clients that invested in mortgage-backed securities, including mortgage pass-through class actions against Wells Fargo, Bear Stearns, JP Morgan, and Merrill Lynch.  Mr. Jonna is also a member of the teams prosecuting *Cambridge Place Investment Management Inc. v. Morgan Stanley & Co., Inc. et al, In re Toyota Motor Corp. Securities Litigation, Barry R. Lloyd v. CVB Financial Corp. et al.*, and *West Virginia Laborers' Trust Fund v. STEC, Inc. et al.*

Mr. Jonna has participated in the prosecution and resolution of a number of the firm's significant recoveries.  For example, Mr. Jonna was a member of the team that litigated *In re Wells Fargo Mortgage-Backed Certificates Litigation*, which settled for $125 million – the first settlement of a class action asserting Securities Act claims related to the issuance of mortgage-backed securities.  Mr. Jonna was also a member of the team that prosecuted *Public Employees' Ret. Sys. of Mississippi, et al. v. Merrill Lynch & Co. Inc., et al.*, which recently settled for $315 million, subject to final court approval, representing the largest settlement of a class action asserting Securities Act claims related to the issuance of mortgage-backed securities.  Mr. Jonna also participated in the prosecution of *In re AXA Rosenberg Investor Litigation*, which settled for $65 million.

Prior to joining BLB&G, Mr. Jonna was an associate at Miller & Milove, where he helped recover millions for investors in Financial Industry Regulatory Authority ("FINRA") securities arbitrations and state court actions.  These cases involved disputes arising from a wide array of deceptive sales practices and fraudulent investments, including boiler room sales, unsuitable trading, life insurance investment schemes, TIC investments, CDOs, and other exotic credit instruments.   While in law school, Mr. Jonna served as Comments Editor of San Diego Law Review and authored "In Search of Market Discipline: The Case for Indirect Hedge Fund Regulation," 45 *San Diego Law Review* 989 (2008).

EDUCATION:  University of Southern California, B.S., Business Administration, 2005; Dean's List.  University of San Diego School of Law, J.D., 2009.  Comments Editor, *San Diego Law Review*; CALI Excellence for the Future Award, Complex Litigation; Certificate of Merit in Recognition of *Pro Bono* Legal Service.

BAR ADMISSIONS:  California; U.S. District Courts for the Central and Southern Districts of California.

**MATTHEW P. JUBENVILLE** represents individual and institutional investors asserting claims under the federal and state securities laws.  While at BLB&G, he has litigated a wide variety of cases resulting in cumulative settlements over $750 million.

Recently, Mr. Jubenville's practice has focused on litigating cases on behalf of clients asserting claims under the Securities Act of 1933 and various state blue sky laws related to mortgage-backed securities offerings.  The matters he is currently prosecuting include *Cambridge Place Investment Management Inc. v. Morgan Stanley & Co., Inc., et al.; Public Employees' Ret. Sys. of Mississippi, et al. v. Merrill Lynch & Co. Inc., et al.; In re Wells Fargo Mortgage-Backed Certificates Litigation;  In re Bear Stearns Mortgage Pass-Through Certificates Litigation; In re Morgan Stanley Mortgage Pass-Through Certificates Litigation; Plumbers' & Pipefitters' Local #562 Supplemental Plan & Trust, et al. v. J.P. Morgan Acceptance Corp., et al.*; and *Public Employees' Ret. Sys. of Mississippi et al. v. Goldman Sachs Group, Inc. et al.*

EDUCATION: University of Colorado, B.A., *with distinction,* Molecular, Cellular and Developmental Biology, 2000; Phi Beta Kappa. University of San Diego School of Law, J.D., 2003; *San Diego Law Review*.

BAR ADMISSIONS: California; U.S. District Courts for the Northern, Central and Southern Districts of California.

\*\*\*\*

**ANN LIPTON**'s practice focuses on complex commercial and appellate litigation. Following law school, Ms. Lipton clerked for the Chief Judge Edward R. Becker of the Third Circuit Court of Appeals and the Associate Justice David H. Souter of the United States Supreme Court. She has also served as an adjunct professor of legal writing at Benjamin N. Cardozo School of Law.

EDUCATION: Stanford University, B.A., *with distinction*, 1995; Phi Beta Kappa.  Harvard Law School, J.D., *magna cum laude*, 2000; Sears Prize for 2nd-Year GPA; Articles and Commentaries Committee of *Harvard Law Review*; Best Brief in 1st-Year Ames Moot Court Competition; Prison Legal Assistance Project.

BAR ADMISSIONS: New York; U.S. District Courts for the Eastern and Southern Districts of New York; U.S. Courts of Appeals for the Second and Third Circuits; U.S. Supreme Court.

\*\*\*\*

**SEAN O'DOWD** was an associate at Latham & Watkins LLP prior to joining BLB&G, where his practice focused on trial and appellate litigation, including civil and criminal investigations by the Department of Justice and the SEC. In addition, Mr. O'Dowd litigated on behalf of torture victims seeking asylum in the United States and represented domestic violence survivors in proceedings under the Violence Against Women Act.

Mr. O'Dowd is the author of "How to Encourage Whistleblowers to Blow the Whistle" and "Whistleblower Hotlines: 11 Steps to Success" (forthcoming) in *White-Collar Crime Fighter* and the co-author, with Alexandra Shapiro, of  "Another Assault on the Attorney-Client Privilege?" in *White-Collar Crime.*

Following law school, Mr. O'Dowd served as a judicial law clerk to the Honorable William M. Acker, Jr., Senior United States District Judge, Northern District of Alabama.

EDUCATION: Cornell University, B.A., *with Distinction in All Subjects*, 2001. Northwestern University, J.D., *cum laude,* 2005; Senior Editor, *Journal of International Law & Business;* Recipient, Francis Kosmerl Merit Scholarship, Rubinowitz Public Interest Fellowship and Public Service Star Award.

BAR ADMISSIONS: New York; U.S. District Courts for the Southern and Eastern Districts of New York; U.S. Court of Appeals, Third Circuit.

**JEROEN VAN KWAWEGEN** has litigated a wide array of securities class actions, derivative actions, and breach of fiduciary duty actions. Most recently, Mr. van Kwawegen was a member of the teams that successfully prosecuted: (i) a securities class action in the Southern District of New York against Merrill Lynch and others in connection with misleading statements concerning mortgage-backed securities; (ii) a securities class action in the Southern District of New York against Wachovia and others in connection with misleading statements in Wachovia's financial statements; (iii) a derivative action in the Southern District of New York against senior management and the board of directors of Pfizer, Inc., alleging that defendants consciously disregarded numerous "red flags" of systemic unlawful marketing practices; and (vi) a securities fraud class action in the U.S. District Court for the Northern District of Illinois against Huron Consulting Group, Inc. and its former senior management, alleging that defendants committed accounting fraud by recording employment expenses as goodwill.

Mr. van Kwawegen is currently prosecuting: (i) common law fraud actions against various investment banks that knowingly and recklessly securitized toxic mortgages before selling securities backed by those mortgages as prudent investments; (ii) a securities class action in the Southern District of New York against SMART Technologies and others in connection with misleading statements in SMART Technologies' financial statements; and (iii) a derivative action in the District of New Jersey against senior management and the board of directors of Johnson & Johnson alleging conscious disregard of systemic unlawful drug manufacturing and drug marketing practices.

Prior to joining BLB&G, Mr. van Kwawegen was a senior associate in the litigation department of Latham and Watkins LLP in New York.  Before pursuing his *Juris Doctor* degree at Columbia Law School, Mr. van Kwawegen worked as a Dutch litigation attorney at Schut & Grosheide in the Netherlands where his practice focused on resolving complex commercial and business disputes.

EDUCATION: University of Amsterdam School of Law, 1998, LLM.  Columbia University Law School, 2003, J.D.; Harlan Fiske Stone Scholar.

BAR ADMISSIONS: New York; U.S. Courts of Appeals for the Second and Third Circuits; U.S. District Courts for the Southern and Eastern Districts of New York.